# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 20-cv-2295 (EGS) |
| UNITED STATES POSTAL SERVICE, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR A PRELIMINARY INJUNCTION

Samuel Spital (D.D.C. Bar No. SS4839)
Rachel Kleinman (NY Bar No. 4417903)
Monique Lin-Luse (NY Bar No. 5671920)
J. Zachery Morris (NY Bar No. 5392196)
John S. Cusick (NY Bar No. 5585245)
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

Allison M. Zieve (DC Bar No. 424786)
Matthew A. Seligman (DC Bar No. 1018889)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Counsel for Plaintiff NAACP

September 16, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................1

ARGUMENT ....................................................................................................................2

I.  Plaintiff is likely to succeed on the merits of its claims. ..........................................2

   A.  Plaintiff is likely to succeed on the merits of its section 3661 claim. ..................2

     1. This Court has jurisdiction over the NAACP's challenge to the Postal Service's
       violation of section 3661. .................................................................................2

     2.  The NAACP's challenge to Defendants' violation of 3661 is reviewable. .................10

     3.  Defendants violated section 3661. .............................................................12

   B.  Plaintiff is likely to succeed on the merits of its claim that Defendants acted arbitrarily,
     capriciously, and contrary to the mandate of section 101(e). ............................17

II.  Plaintiff has standing to bring this challenge and is suffering irreparable harm. ....................20

III.  The balance of the equities weigh heavily in favor of a preliminary injunction. ..................25

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967)...........................................................................................11, 17

*Aid Ass'n for Lutherans v. U.S. Postal Service*,
    321 F.3d 1166 (D.C. Cir. 2003) ...................................................................................18

*America Federation of Government Employees v. Trump*,
    929 F.3d 748 (D.C. Cir. 2019) .......................................................................................9

*America Hospital Ass'n v. Azar*,
    967 F.3d 818 (D.C. Cir. 2020) .......................................................................................7

*America Portland Cement Alliance v. EPA*,
    101 F.3d 772 (D.C. Cir. 1996) .....................................................................................14

*American School of Magnetic Healing v. McAnnulty*,
    187 U.S. 94 (1902)....................................................................................................1, 18

*Avocados Plus Inc. v. Veneman*,
    370 F.3d 1243 (D.C. Cir. 2004) .....................................................................................4

*Baptist Memorial Hospital v. Sebelius*,
    603 F.3d 5 (D.C. Cir. 2010) ...........................................................................................3

*Berkley v. Mountain Valley Pipeline, LLC*,
    896 F.3d 624 (4th Cir. 2018) .........................................................................................8

*Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*,
    502 U.S. 32 (1991)........................................................................................................11

*Borum v. Brentwood Village, LLC*,
    218 F. Supp. 3d 1 (D.D.C. 2016) .................................................................................24

*Buchanan v. U.S. Postal Service*,
    508 F.2d 259 (5th Cir. 1975) .................................................................12, 14, 15, 16, 22

*Buchanan v. U.S. Postal Service*,
    375 F. Supp. 1014 (N.D. Ga. 1974)..............................................................................22

*Carlin v. McKean*,
    823 F.2d 620 (D.C. Cir. 1987) .....................................................................................17

*Chamber of Commerce v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) ..................................................................................11

*Clapper v. Amnesty International USA*,
   568 U.S. 398 (2010) .................................................................................................23

*Dart v. United States*,
   848 F.2d 217 (D.C. Cir. 1988) ..............................................................................1, 18

*Doehla Greeting Cards, Inc. v Summerfield*,
   116 F. Supp. 68 (D.D.C. 1953) ................................................................................18

*Eagle Trust Fund v. U.S. Postal Service*,
   365 F. Supp. 3d 57 (D.D.C. 2019) ...........................................................................17

*Eastern Bridge LLC v. Chao*,
   320 F.3d 84 (1st Cir. 2003) ........................................................................................8

*Elgin v. Department of Treasury*,
   567 U.S. 1 (2012) .......................................................................................................9

*Equal Rights Center v. Post Properties, Inc.*,
   633 F.3d 1136 (D.C. Cir. 2011) ...............................................................................24

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
   561 U.S. 477 (2010) .........................................................................................3, 6, 7, 9

*Foster v. Pitney Bowes Corp.*,
   549 F. App'x 982 (Fed. Cir. 2013) .............................................................................5

*Friedman v. Sebelius*,
   686 F.3d 813 (D.C. Cir. 2012) ...................................................................................4

*INS v. National Center for Immigrants' Rights, Inc.*,
   502 U.S. 183 (1991) ...................................................................................................5

*International Academy of Oral Medicine & Toxicology v. FDA*,
   195 F. Supp. 3d 243 (D.D.C. 2016) ..........................................................................24

*Jarkesy v. SEC*,
   803 F.3d 9 (D.C. Cir. 2015) ................................................................................3, 6, 9

*Kreschollek v. Southern Stevedoring Co.*,
   78 F.3d 868 (3d Cir. 1996) .........................................................................................8

iii

*LeMay v. U.S. Postal Service*,
   450 F.3d 797 (8th Cir. 2006) ....................................................................5

*League of Women Voters of the United States v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ...........................................................8, 22, 24

*Leedom v. Kyne*,
   358 U.S. 184 (1958).........................................................................10, 11

*Lopez v. Davis*,
   531 U.S. 230 (2001) .................................................................................4

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)..................................................................................7

*McNary v. Haitian Refugee Center, Inc.*,
   498 U.S. 479 (1991)..............................................................................7, 9

*Narragansett Indian Tribal Historic Preservation Office v. FERC*,
   949 F.3d 8 (D.C. Cir. 2020).....................................................................23

*National Air Traffic Controllers Ass'n v. Federal Service Impasses Panel*,
   437 F.3d 1256 (D.C. Cir. 2006) ..............................................................11

*National Ass'n of Postal Supervisors v. U.S. Postal Service*,
   602 F.2d 420 (D.C. Cir. 1979) ..........................................................17, 18

*National Fair Housing Alliance v. Travelers Indemnity Co.*,
   261 F. Supp. 3d 20 (D.D.C. 2017) ..........................................................24

*Natural Resources Defense Council v. EPA*,
   383 F. Supp. 3d 1 (D.D.C. 1953) ............................................................22

*Orangeburg, SC v. FERC*,
   862 F.3d 1071 (D.C. Cir. 2017) ..............................................................23

*Peoples Gas, Light & Coke Co. v. U.S. Postal Service*,
   658 F.2d 1182 (7th Cir. 1981) ................................................................18

*Pep-Wku, LLC v. U.S. Postal Service*,
   No. 20-cv-0009-GNS, 2020 WL 2090514 (W.D. Ky. Apr. 30, 2020) ....................5

*Reese Brothers v. U.S. Postal Service*,
   905 F.Supp.2d 223 (D.D.C. 2012) ...........................................................18

*Sears, Roebuck & Co. v. U.S. Postal Service*,
    134 F. Supp. 3d 365 (D.D.C. 2015) ................................................................4, 5

*Sears, Roebuck & Co. v. U.S. Postal Service*,
    844 F.3d 260 (D.C. Cir. 2016) ..........................................................1, 4, 18

*State Farm Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile*
    *Insurance Co.*, 463 U.S. 29 (1983) ................................................................18

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ................................................................................22

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ................................................................3, 6, 7, 8, 9

*United Farm Workers of America v. Chao*,
    227 F. Supp. 2d 102 (D.D.C. 2002) ................................................................16

*United States v. Students Challenging Regulatory Agency Procedures*,
    412 U.S. 669 (1973) ................................................................................22

*Weinberger v. Salfi*,
    422 U.S. 749 (1975) ................................................................................4

**Statutes**

28 U.S.C. § 1331 ................................................................................10

39 U.S.C. § 101(e) ................................................................................18, 19

39 U.S.C. § 409 ................................................................................2, 6, 10

39 U.S.C. § 410 ................................................................................17

39 U.S.C. § 3661 ................................................................................1, 4

39 U.S.C. § 3661(b) ................................................................................3, 12, 14, 15

39 U.S.C. § 3662 ................................................................................4, 9, 11

39 U.S.C. § 3662(a) ................................................................................3

39 U.S.C. § 3662(b) ................................................................................6

39 U.S.C. § 3662(c) ................................................................................3, 4

39 U.S.C. § 3663 ..................................................................................................................3, 9

Postal Reorganization Act of 1970,
    Pub. L. No. 91-375, 84 Stat. 719, §§ 3621–24 ........................................................4


**Miscellaneous**

PRC, Advisory Op. Concerning the Process of Evaluating Closing Stations and Branches,
    N2009-1, Mar. 10, 2010),
        https://www.prc.gov/docs/67/67174/Advisory_Opinion_031010.pdf..............................16

U.S. Postal Service, Congressional Briefing (Aug. 31, 2020),
    https://about.usps.com/newsroom/global/pdf/0831-congressional-service-
    briefing.pdf..........................................................................................................13, 15

## INTRODUCTION

Plaintiff National Association for the Advancement of Colored People (NAACP) has moved for a preliminary injunction on its claims that defendants United States Postal Service and Postmaster General Louis DeJoy violated the mandatory review process of 39 U.S.C. § 3661 and that they acted arbitrarily, capriciously, and contrary to their statutory mandate in implementing changes to postal service that led to predictable mail delays, without taking into account the effect on delivery of important mail during the pandemic and a presidential election year. These claims are well-grounded in the longstanding precedent allowing review of non-statutory claims to hold agencies accountable for their actions. *See Am. School of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988). And the D.C. Circuit has confirmed that such claims can be brought against the Postal Service. *See, e.g.*, *Sears, Roebuck & Co. v. United States Postal Serv.*, 844 F.3d 260 (D.C. Cir. 2016).

Opposing the NAACP's motion, the Postal Service primarily seeks to avoid judicial review. It argues first that Plaintiff lacks standing and, with respect to the violation of section 3661, that the existence of an administrative complaint process bars judicial review of Plaintiff's claim. The NAACP, however, has demonstrated that it suffers not only injury in fact, but irreparable injury because Defendants' actions have resulted in delays of important mail—including prescription medications—that harm the NAACP and its members, and because the NAACP has had to divert resources away from its ordinary voter protection, registration, and turnout efforts in response to these mail delays. As for the administrative review process, it does not create a jurisdictional prerequisite to judicial review of section 3661 claims, particularly because doing so would deny a plaintiff any meaningful judicial review.

The Postal Service next seeks to avoid consideration of the merits by arguing that non-statutory review claims cannot be brought here. As to both of the claims at issue, Supreme Court and D.C. Circuit precedent contradict that argument, which, again, would leave the NAACP without any meaningful opportunity for judicial review.

On the merits, Defendants contend that section 3661 does not apply. To make this argument, they devote much of their brief to aspects of postal operations that the NAACP did not challenge. As for the key change that the NAACP did challenge—the Postal Service's implementation of a new transportation policy—Defendants insist that it was not a meaningful "change" affecting postal customers. In so doing, Defendants are forced to disavow Postmaster DeJoy's testimony and Postal Service documents describing this change as "fundamental" and "transformative," and recognizing that the change led to substantial nationwide delays in mail delivery. The Postal Service's effort to avoid accountability by running from its own characterization of its actions should be rejected. And as for the NAACP's claim that the Postal Service acted arbitrarily and contrary to its mandate, the Postal Service offers no argument at all.

Because the NAACP's claims are properly before this Court, the NAACP is likely to succeed on the merits, it is suffering irreparable harm, and the balance of the equities and public interest weigh in favor of a preliminary injunction, the NAACP's motion should be granted.

## ARGUMENT

### I.  Plaintiff is likely to succeed on the merits of its claims.

#### A.  Plaintiff is likely to succeed on the merits of its section 3661 claim.

##### 1.  This Court has jurisdiction over the NAACP's challenge to the Postal Service's violation of section 3661.

Congress provided for judicial review of actions against the Postal Service. 39 U.S.C. § 409 ("Except as otherwise provided in this title, the United States district courts shall have original but

not exclusive jurisdiction over all actions brought by or against the Postal Service."). Defendants argue, however, that this expansive grant of jurisdiction does not apply here. Rather, they assert, judicial review of a challenge to their failure to follow the mandatory procedure of 39 U.S.C. § 3661(b) is barred by 39 U.S.C. § 3662(a), which permits interested persons to lodge a complaint with the Postal Regulatory Commission about Postal Service operations, and 39 U.S.C. § 3663, which provides for review in the court of appeals of final decisions or orders of the Commission. "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, … and whether the claims can be afforded meaningful review." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (citation omitted). A statutory scheme that begins with a provision for agency review does not restrict judicial review unless both steps in the *Thunder Basin* framework are satisfied: that is, (i) the statutory scheme displays a "'fairly discernable'" intent to limit jurisdiction, and (ii) "the litigant's claims 'are of the type Congress intended to be reviewed within the statutory structure.'" *Jarkesy v. S.E.C.*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Thunder Basin*, 510 U.S. at 207, 212); *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010). Here Defendants' argument fails this test at both steps.

**First**, the statutory scheme enacted by Congress does not display a "fairly discernable intent" to limit jurisdiction over section 3661 claims. The plain text of section 3662(a) uses the permissive "may"; it states that interested persons "may" file a complaint with the Commission. *See Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 63 (D.C. Cir. 2010) ("'[M]ay' is permissive rather than obligatory."). Section 3662(a)'s permissive phrasing contrasts with the mandatory phrasing later in the same section: In section 3662(c), Congress mandated that "[i]f the Postal Regulatory Commission finds the complaint to be justified, it *shall* order that the Postal Service

3

take such action as the Commission considers appropriate." 39 U.S.C. § 3662(c) (emphasis added).

"Congress' use of the permissive 'may' … contrasts with the legislators' use of a mandatory 'shall'

in the very same section" belies Defendants' position that section 3662 conveys the necessary

"fairly discernible" intent to impose a requirement that precludes initial judicial review. *Lopez v.*

*Davis*, 531 U.S. 230, 241 (2001). *Cf. Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C.

Cir. 2004) ("In order to mandate exhaustion, a statute must contain '[s]weeping and direct'

statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the

exhaustion requirement is treated as an element of the underlying claim." (quoting *Weinberger v.*

*Salfi*, 422 U.S. 749, 757 (1975))).

Furthermore, neither the statute's purpose nor drafting history support Defendants'

position. Prior to 2006, section 3661 claims could not be brought before the Commission at all, as

the role of the Commission (then called the Postal Rate Commission) was limited to rates and

services. *See* Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 719, §§ 3621–24.

Although Congress in 2006 revised section 3662 to cover claims "under this chapter," nothing in

its amendment suggests that Congress intended that claims for violation of the procedural

requirement of section 3661 to be raised only through a complaint to the Commission. Indeed,

Congress maintained section 3662's title, "Rate and service complaints." As its title indicates, the

section 3662 complaint process is focused on "claims concerning postal rates and service

standards." *Sears, Roebuck & Co. v. U.S. Postal Serv.*, 134 F. Supp. 3d 365, 382 (D.D.C. 2015),

*aff'd in part, vacated in part, rev'd in part sub nom. Sears, Roebuck & Co. v. U.S. Postal Serv.*,

844 F.3d 260 (D.C. Cir. 2016). "Although the title of a statute and the heading of a section cannot

limit the plain meaning of the text, they remain tools available for the resolution of a doubt about

statutory meaning." *Friedman v. Sebelius*, 686 F.3d 813, 821 (D.C. Cir. 2012) (citation omitted);

*see INS v. Nat'l Ctr. for Immigrants' Rights, Inc*., 502 U.S. 183, 189 (1991) (stating that "the title of a statute or section can aid in resolving an ambiguity in the legislation's text" (citations omitted)). Regardless of whether Congress intended to channel claims about postal "rate and service complaints"—areas at the core of the Postal Regulatory Commission's expertise—through section 3662, nothing in the statutory purpose suggests an intent to channel section 3661 claims through that process.

Consistent with this understanding, no case cited by Defendants concerns failure to follow the procedural requirements of section 3661. *See* Defs. Opp. 31–32, ECF 21. Instead, every case cited considered a complaint about Postal Service prices and the manner in which the Postal Service provides delivery services. *See, e.g.*, *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 984 (Fed. Cir. 2013) (holding that § 3662(a) applied to an alleged violation of 39 U.S.C. § 404a(a)(3), which bars the postal service from "offer[ing] any postal service that uses or is based [on confidential] information"); *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 798 (8th Cir. 2006) (holding that § 3662(a) applied to a complaint that "Postal Service contracts with its patrons to provide preferred handling and expedited treatment of Priority Mail, but fails to do so"); *Pep-Wku, LLC v. U.S. Postal Serv.*, No. 20-cv-0009-GNS, 2020 WL 2090514, at *1 (W.D. Ky. Apr. 30, 2020) (holding that § 3662(a) applied to a challenge to a change in the "method of delivery from placing individual tenants' mail into those tenants' individual mail receptacles to delivering bins of unsorted mail to Plaintiffs' apartment complex offices, thereby forcing Plaintiffs to do the sorting"); *Sears*, 134 F. Supp. at 369 (holding that § 3662(a) applied to a complaint concerning "U.S. Postal Service's Pricing Classification Service Center disqualify[ing] [plaintiff's] mailings" from "most discounted automation rate").

In short, section 3662 fails to evince that Congress had the "fairly discernable intent" to override 39 U.S.C. § 409 and oust district courts of jurisdiction to review claims for violations of the procedural requirement of section 3661.

**Second**, although analysis of the statutory language and purpose is enough to defeat Defendants' jurisdictional theory, that theory also fails at the second step of *Thunder Basin*: "whether the claims can be afforded meaningful review." 510 U.S. at 207. The second step, which Defendants address only in a footnote, *see* Defs. Opp. 34 n.10, requires considerations of three factors: (1) whether preclusion of initial judicial review "'could foreclose all meaningful judicial review,'" (2) whether the suit is "wholly collateral to a statute's review provisions"; and (3) whether the claims are "outside the agency's expertise." *Free Enter. Fund*, 561 U.S. at 489. The D.C. Circuit has explained that these considerations do not form "three distinct inputs into a strict mathematical formula," but rather "are general guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design." *Jarkesy*, 803 F.3d at 17.

Here, if required to go through the Commission complaint process, the NAACP would be denied the opportunity to obtain meaningful relief. That process allows the Commission 90 days— well after the November 2020 election and after the NAACP and its members have suffered continuing mail delays—just to "begin proceedings on [a] complaint" brought to it. 39 U.S.C. § 3662(b). Indeed, Defendants themselves concede that the Commission "cannot provide 'immediate relief'" to the NAACP. Defs. Opp. 34 n.10. Absent immediate relief, however, the harm facing the NAACP and its members—the diversion of the organization's resources and the delays in receipt of important mail, *see infra* at II—cannot be redressed.

The inability of the Commission complaint process to provide immediate relief defeats Defendants' argument that section 3662 presents a jurisdictional hurdle to judicial review, because the "strong presumption that Congress intends judicial review of administrative action" may be overcome only by "clear and convincing evidence that Congress intended" to preclude review. *Am. Hosp. Assoc. v. Azar*, 967 F.3d 818, 823–24 (D.C. Cir. 2020) (citation and internal quotation marks omitted). Defendants cannot meet that standard here. In *Free Enterprise Fund*, for example, the Supreme Court upheld the plaintiff's right to seek initial district court review of a challenge to rules of the Public Company Accounting Oversight Board, notwithstanding a statutory scheme channeling review of Board rules and sanctions to the courts of appeals. To require the plaintiff first to go through that administrative review process, the plaintiff would have had to incur a sizable sanction before the Board and then raise its challenge in seeking review of that sanction, which the Court did "not consider … a 'meaningful' avenue of relief." 561 U.S. at 490–91 (quoting *Thunder Basin*, 510 U.S. at 212).

Similarly, in *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), the Court held that a non-citizen could challenge Immigration and Naturalization Service amnesty determination procedures, notwithstanding a statutory provision limiting judicial review of amnesty determinations to deportation or exclusion proceedings, where "if not allowed to pursue their claims in the District Court, [plaintiffs] would not as a practical matter be able to obtain meaningful judicial review." *Id.* at 496, *quoted in Thunder Basin*, 510 U.S. at 214; *see also Mathews v. Eldridge*, 424 U.S. 319, 331 (1976) (holding that a statute requiring exhaustion of administrative remedies before challenging the denial of social security benefits did not bar federal jurisdiction over a due process challenge, in part because the petitioner had made a colorable showing that full post-deprivation relief could not be obtained), *cited in Thunder Basin*, 510 U.S. at 231

Defendants insist that the deprivation of any opportunity to obtain prompt relief is irrelevant because "the fact that there may *eventually* be relief is sufficient as a matter of law." Defs. Opp. 34 n.10. That argument, however, assumes its conclusion: that delay would not preclude meaningful relief. But the harm being experienced now cannot meaningfully be remedied "eventually." As a result of Defendants' violation of section 3661, the NAACP's members are *now* facing delays in the delivery of important mail, including prescription drugs, and the NAACP is *now* diverting resources from its voter engagement and turnout efforts for the November 2020 election. *See* Watkins Decl. ¶¶ 6–12, ECF 8-2; *see also infra* at II. That harm cannot be remedied by the section 3662 process, which has a 90-day initial review period. As the D.C. Circuit has explained in finding similar harms to constitute irreparable injury, after the election "'there can be no do over and no redress.'" *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (citation omitted). And in light of the irreparable injury that would result from the delay caused by exhausting an administrative review process, the "absence of any effective judicial review," even if "not necessarily the absence of any judicial review at all," is sufficient to demonstrate the lack of meaningful judicial review. *Kreschollek v. S. Stevedoring Co.*, 78 F.3d 868, 874 (3d Cir. 1996); *see Berkley v. Mountain Valley Pipeline, LLC*, 896 F.3d 624, 631 (4th Cir. 2018) (stating that "plaintiffs are denied meaningful review when they are subject to 'some additional and irremediable harm beyond the burdens associated'" with the administrative dispute resolution process (citation omitted)); *E. Bridge LLC v. Chao*, 320 F.3d 84, 90 (1st Cir. 2003) (recognizing that "even with ultimate judicial review, deferred review may not it reality be effective," including, where deferred review would "cause irreparable harm" (citing *Thunder Basin*, 510 U.S. at 212–18). Defendants cite no case in which a court held that initial judicial review was precluded although the plaintiff would suffer irreparable injury as a result of the delay

in obtaining judicial review. That the NAACP "would not as a practical matter be able to obtain meaningful judicial review" if "not allowed to pursue [its] claims in the District Court" weighs heavily in favor of review in this case. *McNary*, 498 U.S. at 496; *see Thunder Basin*, 510 U.S. at 213.

The remaining two considerations under *Thunder Basin*'s second step also support the Court's jurisdiction over the section 3661 claim. The second consideration—whether the claims are wholly collateral to the statutory scheme—"is 'related' to whether 'meaningful judicial review' is available, and the two considerations are sometimes analyzed together." *Am. Fed'n of Gov't Employees v. Trump*, 929 F.3d 748, 759 (D.C. Cir. 2019) (quoting *Jaresky*, 803 F.3d at 22). In *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), the Supreme Court determined whether the plaintiffs' challenge was "wholly collateral" to a statutory scheme by asking whether the plaintiffs "aimed to obtain the same relief they could seek in the agency proceeding." *Id*. at 22. As explained above, here, the NAACP seeks immediate relief to redress an irreparable harm that cannot be meaningfully redressed through a section 3662 complaint.

As to the third consideration—whether the claim is "beyond the expertise" of the Commission—nothing in the nature of a section 3661 claim for failure to follow required statutory procedures requires the Commission's expertise. As Defendants acknowledge, the section 3662 complaint process is "designed to permit agency expertise to be brought to bear on particular problems." Defs. Opp. 32–33 (quoting *Free Enter. Fund*, 561 U.S. at 589). But a complaint that the Postal Service violated section 3661 by failing to seek an advisory opinion is neither a "rate and service complaint," 39 U.S.C. § 3662, nor a complaint "about postal services," Defs. Opp. 31 (stating that "[c]ourts have repeatedly held that 39 U.S.C. §§ 3662 and 3663 constitute the exclusive jurisdictional remedy for complaints about postal services"). Agency expertise is not

called for to assess the procedural violation. Indeed, Defendants' defense on the merits of the claim, which does not rely on agency expertise, Defs. Opp. 36–39, proves the point.

* * *

In sum, whether or not Defendants are correct that the Commission has "exclusive jurisdiction over complaints related to [the] service issues" for which a complaint may be submitted under section 3662, Defs. Opp. 30, the NAACP's section 3661 claim is not a complaint about "service issues." Under the test set forth in *Thunder Basin*, the section 3661 claim challenging the Postal Service's violation of a statutory procedural requirements is not within the exclusive jurisdiction of the Commission. Sections 3662 and 3662 do not override this Court's jurisdiction under 39 U.S.C. § 409 and 28 U.S.C. § 1331.

### 2. The NAACP's challenge to Defendants' violation of section 3661 is reviewable.

According to Defendants, the Court should also decline to review plaintiff's claim that Defendants violated section 3661 because a claim for non-statutory review cannot be brought to remedy such a violation. Defendants assert that a non-statutory review claim can be brought only where (1) the agency acted in excess of its delegated powers and contrary to a specific statutory provision and (2) the plaintiff otherwise lacks the ability to obtain meaningful relief. Defs. Opp. 34, 35. These limitations on non-statutory review do not apply here and, in any event, are satisfied.

The two criteria listed by Defendants derive from *Leedom v. Kyne*, 358 U.S. 184 (1958). In *Leedom*, the Supreme Court allowed a challenge to a National Labor Relations Board (NLRB) decision that violated a specific statutory prohibition, although review of NLRB actions outside of the National Labor Relations Act's exclusive review provisions (which did not allow review in the circumstances of the case) is generally precluded. Citing *McAnnulty*, the Court held that non-statutory review was available: "This Court cannot lightly infer that Congress does not intend

10

judicial protection of rights it confers against agency action taken in excess of delegated powers." *Leedom*, 358 U.S. at 190. Thus, *Leedom* "stands for the familiar proposition that 'only upon a showing of "clear and convincing evidence" of a contrary legislative intent should the courts restrict access to judicial review.'" *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc*., 502 U.S. 32, 43 (1991)) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 141 (1967)). As discussed above, *supra* at I.A.1., such evidence is lacking here.

Moreover, considering NAACP's section 3661 claim in terms of the two criteria Defendants identity confirms that the claim is reviewable. Defendants begin with the second criterion—the availability of "meaningful and adequate" relief, Defs. Opp. 35 (quoting *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006)). Addressing it only briefly, Defendants state that review of the section 3661 claim is available under section 3662. As explained above, the Commission complaint process would not provide a meaningful or adequate remedy here because—even if the provision for "rate and service complaints," 39 U.S.C. § 3662, were available—it would not provide redress for the NAACP's irreparable injury. *See also Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) (applying non-statutory review, notwithstanding "what appear[ed] to [the court] to be an available statutory cause of action"); *see also id*. (describing *Leedom* as an "application of the general presumption of reviewability").

As for the first criterion—whether the agency has acted in violation of a specific statutory mandate—Plaintiff's claim plainly alleges such a violation of a "clear and mandatory duty." *Nat'l Air Traffic Controllers*, 437 F.3d at 1263. Defendants argue that the section 3661 claim is not reviewable because, in their view, they have not violated that provision. Defs. Opp. 36 (arguing that "Plaintiff's claim also fails under the first prong of the ultra vires analysis, because it cannot

show that the Postal Service has violated section 3661(b)").The NAACP disagrees, of course, *see infra* at I.A.3., but, in any event, whether Defendants have violated the statute is the issue on the merits of the claim. Defendants cannot properly bootstrap their view that they will prevail on the merits into a basis for avoiding judicial review.

### 3.  Defendants violated section 3661.

As Defendants acknowledge, section 3661 requires the Postal Service to request an advisory opinion from the Postal Regulatory Commission—which then must provide an opportunity for public comment—before implementing a "change in the nature of postal services" that "will have nationwide or substantial nationwide effect." 39 U.S.C. § 3661(b); *see* Defs. Opp. 36. Although Defendants devote many pages of their opposition memorandum and exhibits to matters that the NAACP has not raised, the essential facts relevant to the NAACP's section 3661(b) claim are undisputed and demonstrate Defendants' violation of section 3661(b).

**First**, Defendants' exhibits confirm that they adopted changes that had a "meaningful impact on service." *See Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262 (5th Cir. 1975). Within weeks of Postmaster DeJoy's taking office, the Postal Service implemented a national policy sharply limiting the use of late or extra trips by mail delivery trucks, resulting in service delays, as Postmaster DeJoy has repeatedly acknowledged. Postmaster DeJoy testified before the Senate that, as a result of the "change" he implemented, late truck trips dropped from 3,500 a day to 600 a day, and that because "our production processing within the plants was not fully aligned" with this truck schedule, "we had some delays … in the mail." Defs. Exh. 5, ECF 21-1 at 104; *see also* Defs. Opp. 19 (stating that, "in the last two months, there has been a sharp decrease in late and extra trips"). Similarly, in an August 13 internal email, Postmaster DeJoy wrote that "we must make a number of significant changes that will not be easy, but are necessary," and that "as you know, we began

those efforts right away" by limiting extra and late mail routes. Zieve Decl., Exh. A (email from DeJoy to All Employees, dated Aug. 13, 2020). He further stated that this "transformative initiative" reduced extra trips by 71 percent, which "impacted our overall service levels." *Id*. Specifically, the new limitations in extra and late mail service, implemented the second week of July, *see* Defs. Exh. 14, ECF 21-1 at 456–57; Supp. Cintron Decl. ¶¶ 2–4, ECF 24-1, coincided with a nationwide reduction of approximately 8–10 percent in the on-time delivery of first-class mail nationwide. *See* U.S. Postal Service, Congressional Briefing at 8–10 (Aug. 31, 2020), https://about.usps.com/newsroom/global/pdf/0831-congressional-service-briefing.pdf   (USPS Congressional Briefing), *cited in* Defs. Opp. 19; Defs. Exh. 14, ECF 21-1 at 349, 402, 453.

Postmaster DeJoy has acknowledged that the "impact on service," indeed a "deterioration" in the form of delays, resulted from his "transformative initiative" to limit late and extra truck delivery routes. Defs. Exhs. 5 & 15, ECF 21-1 at 104, 309, 323, 350, 454; Zieve Decl., Exh. A (DeJoy email). When asked whether "as a transformative initiative," it was "fair to say these changes [limiting extra and late mail routes] were intended to hav[e] a meaningful impact," DeJoy testified unequivocally: "Yes." Defs. Exh. 14, ECF 21-1 at 451–52. Although Defendants' exhibits indicate improvement at the end of August, Defendants do not dispute that delays persist. *See* Defs. Opp. 26 (referring to evidence that mail delays "have been mitigated"); USPS Congressional Briefing, *supra*, at 9–10. Indeed, for the week of August 22 to 26, the most recent week for which Defendants submitted data to Congress, the percent of presorted and single-piece first-class mail was respectively still 5.58 percent and 4.26 percent lower than it was during the baseline period of March 13 to July 3. *See id*.

Despite all this evidence from their own exhibits, Defendants make the remarkable assertion that the sharp reductions in extra and late delivery routes do not constitute a "change"

but simply a "renewed focus on ensuring the Postal Service complies with its *existing policies*," specifically its existing "operational plan." Defs. Opp. 38. Notably, Defendants do not identify which part of the Postal Service's operational plan imposes such limitations on extra or late delivery routes. *See id.*; *see also* Cintron Decl. ¶¶ 7, 12, 23, ECF 21-2 at 14, 16–17, 19 (repeatedly referring to the "operational plan" without identifying any portion of that plan that limits extra or late delivery routes). Moreover, by Defendants' own account, the Postal Service implemented new instructions on "whether various circumstances presented acceptable or unacceptable reasons for scheduling extra trips," *Id.* ¶ 24, ECF 21-2 at 19, resulting in a dramatic decline in the number of late and extra delivery trips. Indeed, in an email transmitting these new instructions, the Postal Service's Vice President of Logistics explained that "our focus is to eliminate unplanned extra transportation" and required that "trips must depart on time." Zieve Decl., Exh. B.

Postmaster DeJoy described the new instructions as a "change," Defs. Exhs. 5 & 14, ECF 21-1 at 104, 434, 456–57, that was "transformative," Defs. Exh. 14, ECF 21-1 at 451–52; Zieve Decl., Exh. A at 2, a "fundamental change," *id.* at 309, and one of the two "big actions I've taken," *id.* at 129. Defendants' counsel now brush aside Postmaster DeJoy's own characterization of the changes he implemented, *see* Defs. Opp. 38, but it is his statements, not his counsel's post-hoc characterization, that matters. *See Am. Portland Cement Alliance v. EPA*, 101 F.3d 772, 778 (D.C. Cir. 1996) ("Just as judicial review of agency action must be based on the administrative record rather than *post hoc* rationales proffered during litigation, a determination of reviewability must be predicated on the nature of an agency action when undertaken, not on the agency's characterization after the fact.")

**Second**, the change was "in the nature of postal services," 39 U.S.C. § 3661(b), because it affected the "manner in which postal services [are] available to the user." *Buchanan*, 508 F.2d at

262–63. Contrary to Defendants' assertion, *see* Defs. Opp. 2, section 3661(b) does not ask whether the Postal Service made a "major change." Its asks whether the "change" affects users of the postal service on a "nationwide or substantially nationwide basis." 39 U.S.C. § 3661(b). Before making such a change, the Postal Service must seek an advisory opinion from the Commission, and the public must have an opportunity to weigh in, regardless of whether the Postal Service characterizes the change as "major." Here, as explained above, Postmaster DeJoy's "transformative initiative" in reducing extra and late mail delivery routes, Defs. Exh. 14, ECF 21-1 at 451–52; Zieve Decl., Exh. A at 2, undeniably impacted users of the postal service by causing the delays that Defendants concede.

**Third**, Postmaster Dejoy's transformative initiative affected service for a "broad geographic area." *Buchanan*, 508 F.2d at 263. Defendants' own data reflect significant reductions in on-time mail delivery. *See* USPS Congressional Briefing, *supra*. And when asked whether the "transformative … changes" with respect to truck routes "happened across several states," Postmaster DeJoy responded: "Every state a truck moves in, yes." Defs. Exh. 14, ECF 21-1 at 452–53.

Defendants do not seriously engage with the statutory text or with *Buchanan*. Instead, they contend that the two documents on which the NAACP principally relied as evidence of the Postal Service's change were unofficial documents that do not constitute official agency policy. *See* Defs. Opp. 37. Defendants have since clarified that one of those documents did, in part, reflect statements from headquarters and was distributed throughout a significant area. *See* Supp. Cintron Decl. ¶¶ 2–3; Supp. Curtis Decl. ¶ 3, ECF 24-2. Most important, Defendants' exhibits confirm the change at the heart of the NAACP's claim and the basis of its request for preliminary injunctive relief: sharp reductions in late and extra mail delivery routes. Because Defendants' new transportation policy

constituted: (1) a change with a meaningful impact on mail service (2) that affects users (3) across a substantial geographic area, they were required to submit the proposed change for an advisory opinion, thus providing an opportunity for public comment, before implementing it. *See Buchanan*, 508 F.2d at 261–63.

As explained in Plaintiff's opening memorandum, ECF No. 8-1 at 20, this conclusion is confirmed by the prior instances in which the Postal Service has followed the section 3661 procedure to seek an advisory opinion from the Commission in advance of making a change. Defendants agree that past practice is relevant to the "interpretation of a statute by the agency charged with its enforcement.'" Defs. Opp. 38 (quoting *United Farm Workers of Am. v. Chao*, 227 F. Supp. 2d 102, 107 n.11 (D.D.C. 2002)). Nonetheless, quoting an earlier Commission advisory opinion out of context, they suggest a limitation on the nature of changes that fall within section 3661: "a 'change in the nature of postal services can be broadly defined as changes to a customer's ability to access essential postal services that require a visit to a postal retail facility.'" *Id.* 39 (quoting PRC, Advisory Op. Concerning the Process of Evaluating Closing Stations and Branches, N2009-1, at 11, Mar. 10, 2010).[1] In fact, the Commission quoted opinion is not describing the scope of "a" change under section 3661; rather, it is addressing "the" change at issue in that opinion.[2] And as shown by the recent advisory opinions described in Plaintiff's memorandum, the changes to transportation policy, which had an undisputed effect on mail delivery nationwide, fit

---

[1] *Available at* https://www.prc.gov/docs/67/67174/Advisory_Opinion_031010.pdf.

[2] The full paragraph states: "Following the guidance offered by *Buchanan*, the Commission finds that the Postal Service's Initiative falls under the ambit of 39 U.S.C. § 3661. *The change* in the nature of postal services broadly can be defined as changes to a customer's ability to access essential postal services that require a visit to a postal retail facility. As an indication of the scope of the Initiative, the Postal Service asserts that the Initiative is a nationwide program, that the policies and procedures established under the Initiative may be expanded and continue to be applied into the future, and that stations and branches no longer under consideration may in the future be reconsidered." (Emphasis added; footnotes omitted.)

comfortably within the scope of section 3661. *See* Pltf. Mem. 39–40, ECF 8-1 (discussing 2014 advisory opinion addressing a proposed change that would delay standard delivery times for a discrete category of mail by one day).

## B. Plaintiff is likely to succeed on the merits of its claim that Defendants acted arbitrarily, capriciously, and contrary to the mandate of section 101(e).

Defendants' opposition to the motion for a preliminary injunction makes no effort to contest the NAACP's showing that they acted arbitrarily and capriciously by making the changes that they have described as "fundamental" and "transformative." They do not contest that they acted without considering the effects of the changes on the delivery of medications, checks, bills, ballots, and other important mail, in the midst of a global pandemic and during a presidential election year. Instead, Defendants argue that the Court should not consider the merits of the NAACP's claim. Their arguments are incorrect.

**First**, Defendants argue that, under 39 U.S.C. § 410, the actions of the Postal Service are exempt from judicial review under the APA and, therefore, that the NAACP cannot challenge arbitrary and capricious action by the Postal Service. *See* Defs. Opp. 41. But both as a general matter and specifically regarding the Postal Service, Defendants err in asserting that the D.C. Circuit has held that where APA review is unavailable, "no cause of action remains." *Id*.[3] "That the Postal Service has broad discretion ... does not mean ... that its decisions are entirely insulated from judicial surveillance." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 602 F.2d 420,

---

[3] Defendants rely primarily on *Eagle Trust Fund v. U.S. Postal Service*, 365 F. Supp. 3d 57, 66 (D.D.C. 2019). Yet the D.C. Circuit case on which the district court relied in *Eagle Trust Fund*, *Carlin v. McKean*, 823 F.2d 620 (D.C. Cir. 1987), did "not decide that issue." *Id*. at 623. Instead, recognizing that "Congress' intent to foreclose review must be shown by 'clear and convincing evidence,'" *id*. (quoting *Abbott Labs*., 387 U.S. at 141), the court looked to other specific provisions that made it "quite explicit" that Congress intended to bar judicial review of the challenged action of the Postal Service Board of Governors. *Id*. Defendants point to no such evidence here.

432 (D.C. Cir. 1979). Instead, "Postal Service decisions are still subject to non-APA judicial review in some circumstances." *Sears*, 844 F.3d at 265. And in fact, the D.C. Circuit has reviewed Postal Service decisions in several cases. *See, e.g.*, *id.*; *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003); *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 602 F.2d at 432; *see also Peoples Gas, Light & Coke Co. v. U.S. Postal Serv.*, 658 F.2d 1182, 1191 (7th Cir. 1981) ("It can be reasonably assumed, therefore, that an agency's exemption from the provisions of the Administrative Procedure Act does not negate the applicability of common law review principles that preexisted and operate apart from the subsequent codification.").[4]

The "scope of non-APA review," although "narrow," *Sears*, 844 F.3d at 265, encompasses the claim at issue here—a claim that Defendants acted arbitrarily and capriciously by failing to consider important aspects of the problem and failing to give the "highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail." 39 U.S.C. § 101(e). In *Sears*, for instance, the D.C. Circuit entertained a similar type of claim—a claim that the agency action "should be set aside as unreasonable," 844 F.2d at 262—by applying a "reasoned decision-making" standard that, the court noted, is in essence the standard for APA review of arbitrary and capricious agency action set forth in *State Farm Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, (1983). *See Sears*, 844 F.3d at 265; *see also Reese Bros. v. U.S. Postal Serv.*, 905 F. Supp. 2d 223, 254 (D.D.C. 2012) (reviewing challenged action to determine "whether the Postal Service engaged in reasoned decision-making"); *Doehla Greeting Cards, Inc. v Summerfield*, 116 F. Supp. 68, 74 (D.D.C. 1953)

---

[4] More generally, as the D.C. Circuit  has explained, "[n]othing in the subsequent enactment of the APA altered the *McAnnulty* doctrine of review," *Dart*, 848 F.2d at 224, under which, "[w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Id.* "[O]therwise" the plaintiff would be "left to the absolutely uncontrolled *and arbitrary action* of a public and administrative officer." *Id.* (quoting *McAnnulty*, 187 U.S. at 110 (emphasis added)).

(reviewing allegation that Postmaster General acted arbitrarily and capriciously in setting postal zone rates). The non-statutory review plaintiff seeks here is similarly and comfortably within the limits that courts have recognized.

**Second**, Defendants again pick a fight with a strawman in arguing that section 101(e) is not "susceptible to ultra vires review." Defs. Opp. 42. The NAACP has not argued that section 101(e) imposes a "restriction on the content" of Postal Service policies. Rather, that statutory provision—which directs the Postal Service, "[i]n determining all policies for postal services," to "give the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail"—directs Defendants to take into account certain considerations that Congress determined were critical in the setting of Postal Service policies. Defendants' failure to do so is arbitrary and contrary to the important role delegated to them by Congress.

Defendants' declarations and exhibits show that, in adopting the changes implemented in July, Defendants did not honor the mandate of section 101(e). They instead placed other priorities, namely, cost savings, above expeditious transportation and delivery of important mail. *See* Defs. Exh. 5, ECF 21-1 at 104 (testimony of DeJoy that the changes were driven by cost considerations).

Defendants seek to rely on an audit report to justify their sharp reductions in late and extra trips. That report, however, by Defendants' own account, demonstrates why late and extra trips were necessary: When "mail processing operations [are] not completed on time," the mail "missed its last scheduled transportation trip," which caused management to "either delay[] the scheduled transportation trip or call[] for an extra trip" so that the mail would be delivered on time. Defs. Opp. 18 (quoting audit report). By largely prohibiting those trips, without addressing the need for timely delivery that prompted them, Defendants employed a cost-cutting measure that foreseeably

resulted in delays in mail service. In addition, the audit report was based on findings completed before March 13 and, therefore, necessarily did "not reflect" changes that "occurred as a result of the pandemic." Defs. Exh. 13 at 1, ECF 21-1 at 260. In his congressional testimony, Postmaster DeJoy made clear how little analysis of these important issues he engaged in before directing the new transportation policy, saying that he consulted with the management team, but "I don't know how much analysis we would need" to justify the change because "no big complex problem-solving [was] necessary." Defs. Exh. 14, ECF 21-1 at 444, 494–95.[5]

Section 101(e) thus confirms the NAACP's position: By making changes that indisputably caused disruptions to mail delivery throughout the country, during a pandemic and an election year, when people, including NAACP members, were relying more than ever on the Postal Service to bring them medications, ballots, and other important mail, Defendants acted arbitrarily and capriciously and (stated in the terms of the similar standard that the Postal Service conceded was applicable in *Sears*) contrary to the requirement of reasoned decisionmaking.

## II.  Plaintiff has standing to bring this challenge and is suffering irreparable harm.

In its opening memorandum, the NAACP demonstrated that both its members and the organization itself are experiencing concrete and irreparable injuries warranting the issuance of a preliminary injunction. *See* Pltf. Mem. 26–30. The NAACP presented a declaration from NAACP member Earl Graham, a disabled veteran who relies on the Postal Service "for important mail, including for mail-order medications to treat backpain, headaches, arthritis, sciatica, and cholesterol." Graham Decl. ¶¶ 1, 35, ECF 8-3. Mr. Graham explained that his mail-order

---

[5]  Although Mr. Cintron's declaration suggests Postmaster DeJoy had a limited role in implementing these changes, *see* Clinton Decl. ¶ 24, ECF 21-2 at 19, Postmaster DeJoy testified repeatedly that he directed his team to implement them. *See, e.g.*, Defs. Exhs. 5 & 14, EC1 21-1 at 137, 305, 321, 431.

medications used to arrive a few days after his doctor approved any prescriptions, but "[s]ince mid-July … my medications have taken much longer to arrive." *Id.* ¶ 6. He reached out to the Department of Veterans Affairs (VA) about the issue in mid-August, and after a VA representative spoke with his prescription provider, "the representative informed [him] that the delays were due to mail service delays." *Id.*

The NAACP also submitted a declaration from Carmen Watkins, its Interim Vice President of Field Operations. In her declaration, Ms. Watkins explained that the NAACP relies on mail service "for a variety of important purposes, including communicating with members," and that its over 200,000 members nationwide rely on the postal service "to receive medications, pay bills, receive NAACP materials, send and receive mail-in ballots, and other purposes." Watkins Decl. ¶¶ 3, 5, ECF 8-2. As such, "[d]elays in mail service are of significant concern to the NAACP and to NAACP members." *Id.* ¶ 5. Ms. Watkins further described the NAACP's civic engagement program, which seeks to advance the NAACP's mission of ensuring political, educational, social and economic equality for communities of color by increasing turnout among Black voters in federal, state and local elections. *Id.* ¶¶ 2, 6. Ms. Watkins then explained how recent delays in mail service "have required the NAACP, and will continue to require the NAACP, to divert resources that it would have otherwise expended on other aspects of its civic engagement program." *Id.* ¶ 7. Ms. Watkins discussed this point in detail, providing specific examples of how those mail delays have caused the NAACP to divert resources from the civic engagement program's ordinary activities—such as registering voters, contacting voters to ensure they have accurate voting information and encouraging them to vote, and conduct voter protection activities during early voting—to instead disseminate information and plan transportation for voters to drop off absentee ballots at local election supervisors or drop boxes. *See id.* ¶¶ 8-12.

21

Under controlling precedent, the injuries described are "certain and great' and "beyond remediation" absent immediate relief, thereby constituting the irreparable injury necessary to justify a preliminary injunction. *League of Women Voters*, 838 F.3d 7–8 (citations omitted). It follows *a fortiori* that these injuries satisfy the lower burden necessary for Article III standing. *See, e.g.*, *Nat. Res. Def. Council v. EPA*, 383 F. Supp. 3d 1, 11 (D.D.C. 2019) ("[A]n indentifiable trifle is enough for standing.") (quoting *United States v. Students Challenging Reg'y Agency Procedures*, 412 U.S. 669, 689 n.14 (1973)).

**First**, the delays in the delivery of important mail, including prescription drugs, that the NAACP and its members are experiencing constitute certain and great harm that cannot be remedied absent immediate relief. *See League of Women Voters*, 838 F.3d at 8. As the Fifth Circuit recognized in *Buchanan*, a plaintiff demonstrates irreparable injury by establishing that the Postal Service has implemented changes that are likely to impact mail delivery without undertaking the procedures mandated by section 3661. *See Buchanan v. U.S. Postal Serv.*, 508 F.2d at 266, *aff'g in relevant part* 375 F. Supp. 1014, 1012 (N.D. Ga. 1974). The injury in such cases is not the Postal Service's "mere failure to comply with a procedural rule," Defs. Opp. 42, ECF 21, or denial of a "procedural right *in vacuo*," *id.* at 28. Rather, the "procedural right" exists to "protect [its] concrete interests" in reliable mail service. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Defendants are also incorrect in asserting that Mr. Graham has identified only "past injury." Defs. Opp. 25, ECF 21. Mr. Graham describes persisting delays: "Since mid-July … my medications have taken much longer to arrive." Graham Decl. ¶ 6, ECF 8-3. The fact that he confirmed in mid-August that the source of those delays was the mail service—a point stressed by Defendants, *see* Defs. Opp. 25—does not change the persisting nature of the delays described in Mr. Graham's declaration. Moreover, although Defendants insist there is "evidence that mail

delays have been mitigated," *id.* at 26, they do not dispute that delays persist. Nonetheless, in light of Defendants' assertion view that Mr. Graham's declaration, dated August 28, is stale, Plaintiff are filing, concurrently with this reply memorandum, a supplemental declaration from Mr. Graham. As his declaration states, delay in the delivery of his prescription drugs persists, and recently caused him to endure extreme pain and arrange for an alternate delivery of those drugs. Second Graham Decl. ¶¶ 3–6.[6]

Defendants also contend that the NAACP "does not, and cannot, allege what exactly caused the delays of Mr. Graham's medications" given the potential impact of COVID-related staffing shortages. Defs. Opp. 25–26, 43–44. But Mr. Graham does not live near one of the "hotspots" where Defendants identified COVID-related staffing shortages. *Compare* Graham Decl. ¶ 1, *with* Porkity Decl. ¶¶ 10–11, ECF 21-3. Further, Postmaster DeJoy has repeatedly acknowledged that the mid-July transportation policy change is a source of mail delays. *See* Defs. Exhs. 5 & 15, ECF 21-1 at 104, 309, 323, 350, 454; Zieve Decl., Exh. A (DeJoy email). A plaintiff need not demonstrate that challenged agency action is the sole cause of its injury in order to challenge that action. *See, e.g., Orangeburg, SC v. FERC*, 862 F.3d 1071, 1080 (D.C. Cir. 2017).

**Second**, because of the impact of mail delays, the NAACP is diverting resources away from its ordinary voter registration activities, voter protection activities, and education activities designed to promote voter turnout, which constitutes irreparable injury. *See* Watkins Decl. ¶¶ 11–12. In *League of Women Voters*, the D.C. Circuit held that, where the challenged government

---

[6] Because Mr. Graham describes ongoing injuries, he has standing to seek injunctive relief. *Narragansett Indian Tribal Historic Preservation Office v. FERC*, 949 F.3d 8, 12 (D.C. Cir. 2020). But even if his injuries were not persisting, Defendants misstate the law when they assert that a future injury must be "certainly impending" to justify injunctive relief. Defs. Opp. 26, ECF 21-1 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2010)). Injunctive relief is also justified when there is a "'substantial risk' that the harm will recur." *Narragansett*, 949 F.3d at 12 (quoting *Clapper*, 568 U.S. at 414 n.5).

actions made "it more difficult for the Leagues to accomplish their primary mission of registering voters, they provide injury for purposes of both standing and irreparable harm." 838 F.3d at 9. That harm is irreparable, the Court explained, "because after the registration deadlines for the November election pass, 'there can be no do over and no redress.'" *Id.* (citation omitted). That reasoning is equally applicable here. The mail delays that have resulted from Defendants' actions are requiring the NAACP to divert resources away from its ordinary voter protection, registration, and turnout activities—which are a central part of its mission—so that the NAACP can instead disseminate information and organize events for voters to submit absentee ballots at drop boxes or elections officials' offices. *See* Watkins Decl. ¶¶ 7-12. Although the NAACP pointed to this part of *League of Women Voters* in its opening memorandum, *see* ECF 8-1 at 30, Defendants ignore it.

Defendants mischaracterize the diversion of resources described by the NAACP here as involving pure issue advocacy. *See* Defs. Opp. 27. On the contrary, the NAACP describes, in concrete terms, how it has diverted resources away from its voter protection, turnout, and registration activities in order to educate voters and organize transportation for voters "'in response to, and to counteract, the effects of'" Defendants' conduct. *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 20 (D.D.C. 2016) (quoting *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011)). Unlike lobbying or litigation, this kind of diversion of resources for the purpose of public education and engagement constitutes a cognizable injury under the law of this Circuit. *See id.*; *Nat'l Fair Housing Alliance v. Travelers Indemnity Co.*, 261 F. Supp. 3d 20, 27 (D.D.C. 2017) (discussing case law). Defendants are likewise wrong in asserting that the NAACP lacks standing because it is simply engaging in the same public education activities as it was already engaging in. *See* Defs. Opp. 27. Unlike the situation where a plaintiff did not "divert or modify its activities in any meaningful way from its standard programmatic efforts," *Int'l Acad. of Oral*

24

*Medicine & Toxicology v. FDA*, 195 F. Supp. 3d 243, 259 (D.D.C. 2016), here the NAACP has explained in specific and concrete terms how mail delays are causing it to divert resources away from its ordinary voter protection, registration, and turnout activities. *See* Watkins Decl. ¶¶ 7–12. As Defendants recognize, Defs. Opp. 27, a perceptible impairment in an organization's daily operations creates a cognizable injury. The NAACP has shown precisely such an injury here.

## III.  The balance of the equities weigh heavily in favor of a preliminary injunction.

Plaintiff's opening memorandum explained why the balance of the equities and the public interest weigh in favor or a preliminary injunction. Defendants do not respond to Plaintiff's points that the Postal Service would not be harmed by an order requiring it to follow the law and that the public interest is served when administrative agencies comply with their statutory obligations. Instead, they argue, first, that they are making efforts to deliver election mail on time. However, the delays caused by the July changes will affect delivery of election mail, just as they continue to affect delivery of other important mail. Second, Defendants assert half-heartedly that an injunction "could" put the Court in the position of acting as "an overseer the agency's day-to-day activities." Defs. Opp. 45. This assertion is baseless. An injunction requiring Defendants to restore service practices followed before mid-July, so that the Postal Service could follow the mandatory procedures set forth in section 3661 and engage in reasoned decisionmaking, would not require daily oversight by this Court.

### CONCLUSION

For the foregoing reasons and the reasons set forth in plaintiff NAACP's memorandum in support of its motion for a preliminary injunction, the motion should be granted.

Dated: September 16, 2020        Respectfully submitted,

                        /s/ Allison M. Zieve

Samuel Spital (D.D.C. Bar No. SS4839)    Allison M. Zieve (DC Bar No. 424786)
Rachel Kleinman (NY Bar No. 4417903)    Matthew A. Seligman (DC Bar No. 1018889)
Monique Lin-Luse (NY Bar No. 5671920)    PUBLIC CITIZEN LITIGATION GROUP
J. Zachery Morris (NY Bar No. 5392196)    1600 20th Street NW
John S. Cusick (NY Bar No. 5585245)    Washington, DC 20009
NAACP LEGAL DEFENSE &    (202) 588-1000
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

Counsel for Plaintiff NAACP

26