UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 20-cv-2295 (EGS) |
| v. | ) ) | |
| UNITED STATES POSTAL SERVICE, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO CLARIFY OR MODIFY THE PRELIMINARY INJUNCTION**

**INTRODUCTION**

In July 2020, defendants United States Postal Service and Postmaster General Louis DeJoy (collectively, USPS) adopted transportation policy changes that led to a significant reduction in the number of late and extra trips by USPS employees delivering mail. *See* ECF 31; ECF 32 at 6. On October 10, 2020, this Court entered a preliminary injunction prohibiting USPS from enforcing those changes. The Court recognized that plaintiff National Association for the Advancement of Colored People (NAACP) was likely to succeed on its claim that USPS had violated 39 U.S.C. § 3661 in implementing those changes, because, although the changes were likely to have a meaningful impact on service, USPS had not first submitted them to the Postal Regulatory Commission (PRC). *See* ECF 32 at 32–33.

This Court had entered a similar preliminary injunction in other cases beginning on September 27, 2020. A USPS official acknowledged on October 15, 2020, however, that USPS had made no effort to comply. In USPS's view, because it had not completely banned late or extra

1

trips, "there wasn't anything to change" as a result of this Court's orders. *See* ECF 35-1 at 5 (summarizing testimony). As a result of USPS's non-compliance, Plaintiff filed a motion to enforce and monitor compliance. *See* ECF 35. This Court granted the motion and ordered USPS to inform its employees that "USPS personnel are instructed to perform late and extra trips to the maximum extent necessary to increase on-time mail deliveries, particularly for Election Mail." Minute Order, 10/27/2020. The Court further ordered USPS to instruct USPS personnel that "late and extra trips should be performed to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries." *Id*.

Despite the clarity of the Court's orders, the number of late and extra trips continues to be significantly depressed compared to pre-July 10, 2020, levels. *Compare* ECF 35-8 & 35-9, *with* ECF 154-3. USPS has offered no explanation for these continuing depressed levels of late and extra trips. Nonetheless, USPS now seeks to have this Court authorize USPS to adopt a new USPS policy, which it implemented last month between April 14 and April 23, that would allow USPS to disallow extra trips in two additional circumstances. USPS, however, has not met its burden for a modification of the Court's injunction and orders. Accordingly, the Court should deny USPS's motion. Alternatively, in advance of ruling on the motion, the Court should schedule a hearing at which a USPS official would testify about both its current proposal and about the continuing depressed levels of late and extra trips notwithstanding this Court's injunctions.

## ARGUMENT

I. **Defendants are seeking to modify the preliminary injunction.**

As a threshold matter, although USPS has styled its motion as one "for clarification or, in the alternative, to modify" the preliminary injunction, the motion plainly seeks modification because its new policy is inconsistent with the preliminary injunction and related Court orders.

The policy would permit USPS to deny extra trips when doing so would, by USPS's own account, delay the delivery of what it deems a "small volume" of mail (apparently with no exception for election mail). *See* ECF 154-1 at 6, 8. Importantly, USPS's April 30 Randel Declaration makes clear that the policy was not in place prior to July 10, 2020. *See* ECF 153-1 ¶¶ 7–9 (referring to USPS's "implementation of a new process" in April 2021 and describing the elements of that process). The new policy would therefore be inconsistent with this Court's order that, under the October 10, 2020, preliminary injunction, USPS suspend transportation policy changes that reduce the use of late and extra trips; that its personnel be instructed to "perform late and extra trips to the maximum extent necessary to increase on-time deliveries, particularly for Election Mail"; and that its personnel further be instructed to perform such trips "to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries." Minute Order, 10/27/2020.[1] USPS is thus seeking to modify, not clarify, this Court's preliminary injunction and October 27, 2020, order enforcing it.

## II. Defendants cannot meet their burden to justify modification of the preliminary injunction.

As the party seeking to modify the preliminary injunction, USPS bears "the burden of establishing that a significant change in circumstances warrants" such revision. *Hudson v. Am. Fed. of Gov't Employees*, 281 F. Supp. 3d 11, 13–14 (D.D.C. 2017) (quoting *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017) (additional citation and internal quotation

---

[1] The second part of USPS's proposed policy would allow USPS to deny an extra trip whenever doing so is not "service responsive." ECF 154-1 at 6. Under this proposal, if mail is already late, it would always be permissible to deny an extra trip to deliver that mail sooner rather than later. From USPS's perspective, either way the piece of mail has already missed the service standard so the extra trip cannot be "service responsive." *See id.* (discussing how USPS defines "service responsive"). But, contrary to USPS's characterization, extra trips are not "pointless" simply because they are not "service responsive." *See id.* at 7. Rather, it can matter greatly to a customer whether a piece of mail is one day late or two or more days late.

marks omitted)). "It is appropriate to modify an injunction only when there has been a change in the facts or law between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable." *Id*. (citation and internal quotation marks omitted). USPS has not met its burden here.

In its motion, USPS presents no new facts or law that would justify a modification of the preliminary injunction. Instead, it begins by repeating the untenable argument, which this Court already rejected in granting the motion to enforce the preliminary injunction, that the Court's preliminary injunction was directed only at a "ban on late and extra trips." ECF 154-1 at 12 (USPS Motion); *see* ECF 36 at 1–3 (USPS opposition to the motion to enforce); ECF 37 at 2–4 (Plaintiff's reply, explaining why the argument was untenable). In fact, in granting the motion for a preliminary injunction, the Court recognized that the transportation policy changes it was enjoining had reduced, not banned, the use of late and extra trips. *See* ECF 32 at 6. And in granting Plaintiff's motion to enforce, the Court required USPS to instruct its employees to perform late and extra trips to "the maximum extent necessary to increase on-time deliveries, particularly for Election Mail," and "to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries." Minute Order, 10/27/2020.

Notwithstanding this Court's unambiguous orders that extra trips should continue to be used at least as much as they were prior to July 10, 2020, and to the maximum extent necessary to ensure on-time mail delivery, *see* October 27, 2020 Minute Order, USPS's own data show that extra trips are not being used at even close to the levels used prior to July 10, 2020. The data generally show between 1,500 and 3,000 extra trips every day between April 1, 2020 and July 10, 2020; the lowest number in any single day was 1,285. *See* Ex. 35-8. Extra trips dropped off sharply beginning July 11, 2020, *see id*., and remain depressed today. Indeed, between April 1, 2021, and

4

May 5, 2021, the highest number of extra trips in any single day was 926. *See* ECF 154-3 at 7–8. A comparison of March 2020 and March 2021 similarly reveals a steep decline in the number of extra trips. *Compare* ECF 35-8 at 2 *with* ECF 154-3 at 6. USPS does not acknowledge—much less attempt to explain—its own data demonstrating that extra trips remain substantially below pre-July 10, 2020, levels.[2]

USPS asserts that the new extra-trips policy would have minimal impact on service. *See* ECF 154-1 at 13–14. The impact of the new policy, however, must be considered in light of the already reduced number of extra trips, which suggests a consistent failure to comply with the preliminary injunction. Furthermore, USPS's data raise questions about how it has been communicated to USPS personnel or what USPS is doing to ensure that the new policy does not discourage requests for extra trips. *See generally* ECF 153-1, ECF 154-2. The data show that, from April 14 to April 23, 2021 (the period during which USPS implemented its new policy), a total of 8,221 extra trips were performed (an average of 822.1 per day). *See* ECF 154-3. That number is less than both the 8,663 trips performed between April 3 and April 13, and the 8,537 performed from April 24 to May 3, 2021. And in the same ten-day period from April 14 to April 23, 2020, a total of 20,423 extra trips were performed (an average of 2,042.3 each day). *See* ECF 35-8.

---

[2] As USPS notes, *see* ECF 154-1 at 3, the number of late and extra trips increased during the peak holiday season, especially in December 2020. *See* ECF 154-3. But USPS has not produced data about the use of late and extra trips during the peak 2019–2020 holiday season to allow comparison with the use of late and extra trips during prior holiday seasons. The limited data USPS has produced about the 2020 holiday season does not support USPS's remarkable assertion that "the use of late and extra trips does not appear to have a correlational or causational relationship with improved service performance." ECF 154-1 at 3. Without the additional late and extra trips USPS used during the 2020 holiday season, service scores would have presumably been even worse. USPS has previously recognized that the reduction in late and extra trips implemented beginning in July 2020 played a role in causing delays in mail delivery. *See* ECF 32 at 7 & n.1 (opinion granting preliminary injunction, citing Postmaster General DeJoy's testimony and an internal USPS document).

Similarly, between July 1 and July 10, 2020 (when the new transportation policy changes were announced), a total of 21,930 extra trips were performed (an average of 2,193 each day). *See id*. Thus, the number of extra trips being performed during the ten days when this new proposal was in place is well less than 50 percent of the levels of extra trips that were performed prior to the implementation of the transportation policy changes on July 10, 2020.[3]

Moreover, the depressed number of extra trips, as well as late trips, cannot be explained away on the ground that USPS has been meeting its service standards without the need for late and extra trips. To the contrary, from January 10, 2020, to July 10, 2020, the lowest service score was 89.62 percent; since then, service scores have not reached that number even once. *See* Exhibit A hereto (chart produced by USPS in Pennsylvania litigation). Thus, the data bely USPS's suggestion that the injunction is not needed because the 2020 election is over. ECF 154-1 at 14. Just as people in 2020 relied on USPS for delivery of important mail, including ballots but also checks, bills, and medications, *see* ECF 149 ¶¶ 85, 88 (first amended complaint); ECF 32 at 12–13 (memorandum opinion on preliminary injunction), they continue to rely on USPS for delivery of important mail today.

In sum, USPS has not provided evidence to support the assertion that the effect of the new policy will be de minimis and has failed to meet its burden to justify modification of the preliminary injunction. Unless and until USPS shows substantial compliance with this Court's injunction requiring a return to pre-July 10, 2020, levels of late and extra trips—or some

---

[3] The number of late trips likewise remains well below pre-July 10, 2020 levels. *Compare* ECF 35-9 at 1–3 (showing a total of 124,281 late trips in April 2020, for an average of 4,143 per day, and a total of 124,854 late trips in June 2020, for an average of 4,162 per day) with ECF 154-3 at 14–16 (showing a total of 95,459 late trips in April 2021, for an average of 3,182 per day).

explanation as to why late and extra trips remain so far below pre-July levels—it should not be permitted to modify the injunction to allow it to deny extra trip requests.

## CONCLUSION

USPS's motion should be denied. In the alternative, the Court should hold a hearing at which USPS would be required to address its persistent failure to return to pre-July 10, 2020, levels of late and extra trips, notwithstanding this Court's injunction.

Dated: May 20, 2021                                    Respectfully submitted,

 /s/ Sam Spital                                        Allison M. Zieve
Sam Spital                                             (DC Bar No. 424786)
(D.D.C. Bar No. SS4839)                                PUBLIC CITIZEN LITIGATION
NAACP LEGAL DEFENSE &                                  GROUP
EDUCATIONAL FUND, INC.                                 1600 20th Street NW
40 Rector Street, 5th Floor                            Washington, DC 20009
New York, NY 10006                                     (202) 588-1000
(212) 965-2200

Counsel for Plaintiff NAACP