**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, *et al.*,<br><br>　　　　　　　Defendants. |

Civ. Action No. 20-2295
(EGS)

**MEMORANDUM OPINION AND ORDER**

On October 10, 2020, the Court preliminarily enjoined Defendants from enforcing the Transportation Policy Changes that the United States Postal Service ("USPS" or "Postal Service") announced and implemented in July 2020. *See* Mem. Op., ECF No. 32 at 40; Order, ECF No. 31 at 1.[1] Now pending before the Court is Defendants' Motion for Clarification or, in the Alternative, to Modify the Preliminary Injunction. *See* Defs.' Mem. Supp. Mot. Clarification ("Defs.' Mot."), ECF No. 154-1. Defendants request that the Court "clarify that the preliminary injunction does not prohibit the Postal Service from declining to approve extra network trips" in two circumstances: (1) "where an extra trip would not be service responsive"; and (2) "where not using the

---

[1] When citing electronic filings throughout this Order, the Court cites to the ECF page number, not the page number of the filed document.

1

extra trip would result in delay of only a small volume of mail, specifically, less than 15% of the truck's capacity." *Id.* at 5. Plaintiff opposes the motion. *See* Pl.'s Opp'n Defs.' Mot. Clarify Modify Prelim. Inj. ("Pl.'s Opp'n"), ECF No. 156.

Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court **GRANTS** Defendants' motion.

## I. Background

### A. Defendants' Proposed Process

On April 30, 2021, Defendants filed a Notice describing "recent actions by the Postal Service to implement a process to improve supplier selection and data collection for extra trips in its network surface transportation system." Notice, ECF No. 153 at 1. According to Defendants, USPS generally contracts with third-party Highway Contract Route suppliers, rather than postal employees, to perform the work for network surface transportation. Defs.' Mot., ECF No. 154-1 at 8. The contracts "require suppliers to transport mail according to specific schedules and service levels," as well as permit USPS to request extra trips that are billed at a pre-negotiated rate. *Id.* The new process—which USPS tested from April 14, 2021 to April 23, 2021—"required field network facilities seeking an extra trip for network surface transportation to submit a transportation request to the Surface Planner Group, which is a team of

Headquarters logistics personnel." Notice, ECF No. 153 at 3. Once the request was submitted, the Surface Planner Group would then "review[] the request, check[] data systems to identify available local trips, and ma[k]e a decision based on service needs and costs as to which supplier should be used." *Id.*

Following the test run, USPS implemented two aspects of the new process, involving a new vendor selection tool and better tracking and collection of logistics data, on May 17, 2021. Defs.' Mot., ECF No. 154-1 at 10 n.4. However, Defendants seek clarification regarding two other aspects of the new process that permit the Surface Planner Group to deny extra trips in certain situations. First, Defendants seek clarification that the preliminary injunction does not prohibit denial of extra trips "where an extra trip would not be service responsive."[2] *Id.* at 5. Second, Defendants seek clarification that the preliminary injunction does not prohibit denial of extra trips "where not

---

[2] "'Service responsive' is a term used by the Postal Service 'to describe trips that deliver mail within the published service standards approved by the Postal Regulatory Commission.'" Defs.' Mot., ECF No. 154-1 at 10. "Service standards, in turn, reflect the target goal for the time a mailpiece or package is expected to take from origin to the final destination." *Id.* "The Postal Service further defines 'service responsive' as requiring that mail must arrive at the ultimate destination processing facility, which is the facility that will process the mail for delivery, by the 'critical entry time' (CET)" which is "the time by which the mail needs to be received by a facility to be included in that day's processing and then transported to delivery units (e.g. post offices) for delivery by letter carriers the next day." *Id.* at 11.

using the extra trip would result in delay of only a small volume of mail, specifically, less than 15% of the truck's capacity." *Id.*

## B. Procedural History

On October 10, 2020, the Court preliminarily enjoined Defendants from enforcing the Transportation Policy Changes that the Postal Service announced and implemented in July 2020. *See* Mem. Op., ECF No. 32 at 40; Order, ECF No. 31 at 1. Almost two weeks later, on October 22, 2020, Plaintiff filed an emergency motion to enforce and monitor compliance with the Court's preliminary injunction. *See* Pl.'s Emergency Mot. Enforce Monitor Compliance Prelim. Inj., ECF No. 35. Following the completion of briefing on Plaintiff's emergency motion, but prior to the Court's ruling, the parties provided a joint proposed order purporting to resolve the issues raised in the motion. *See* Notice Proposed Order (Joint), ECF No. 39. On October 27, 2020, the Court granted Plaintiff's emergency motion, largely adopting the parties' joint proposed order. *See* Min. Order (Oct. 27, 2020). Among other things, the Court ordered Defendants to issue a one-page notice regarding the use of late and extra trips to certain employees, noting the following:

> (1) "The guidelines issued on July 14, 2020, by USPS Vice President of Logistics, Robert Cintron, regarding the use of late and extra trips are rescinded;" and

4

> (2) "USPS personnel are instructed to perform late and extra trips to the maximum extent necessary to increase on-time mail deliveries, particularly for Election Mail. To be clear, late and extra trips should be performed to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries. Any prior communication that is inconsistent with this instruction should be disregarded."

*Id.* The Court also ordered Defendants to issue a one-page notice, or deliver a Stand-Up Talk, to "all USPS personnel who may have job responsibilities related in any way to late and extra trips," stating the following:

> Late and extra trips will be approved to the maximum extent necessary to increase on-time mail deliveries, particularly for Election Mail. Any prior communication that is inconsistent with this should be disregarded. To be clear, late and extra trips will be approved to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries.[3]

*Id.*

On May 12, 2021, Defendants filed a motion for clarification or, in the alternative, to modify the preliminary injunction. *See* Defs.' Mot., ECF No. 154-1. Plaintiff filed its

---

[3] The Court granted over objection Plaintiff's request to include the following sentence in the Court's Order to "all USPS personnel who may have job responsibilities related in any way to late and extra trips": "To be clear, late and extra trips will be approved to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries." *See* Notice Proposed Order (Joint), ECF No. 39.

opposition on May 20, 2021, *see* Pl.'s Opp'n, ECF No. 156; and Defendants filed their reply on June 9, 2021, *see* Reply Supp. Defs.' Mot. Clarification Modify Prelim. Inj. ("Defs.' Reply"), ECF No. 159. The motion is now ripe for the Court's adjudication.

## II. Legal Standard

"[T]here is no Federal Rule of Civil Procedure specifically governing 'motions for clarification.'" *United States v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168 (D.D.C. 2011). "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Id.* "Although such a motion cannot open the door to 're-litigat[ing] a matter that the court has considered and decided,' *Sai v. Transp. Sec. Admin.*, No. 14-cv-403, slip op. at 5 (D.D.C. Aug. 19, 2015), ECF No. 74 (citation omitted)[;] courts in this Circuit have encouraged parties to file motions for clarification when they are uncertain about the scope of a ruling, *see United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 344 (D.C. Cir. 2014); *Barnes v. Dist. of Columbia*, 289 F.R.D. 1, 12-13 (D.D.C. 2012)[;] and entertaining such motions seems especially prudent if the parties must implement the ruling at issue at subsequent stages of the litigation." *All. of Artists & Recording Cos. v. Gen. Motors Co.*, 306 F. Supp. 3d 413, 418-19 (D.D.C. 2016). By clarifying the scope of a

previously issued preliminary injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *See N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984).

In addition, a court may modify an injunction in its "equitable discretion." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). In determining whether such relief is warranted, "[i]t is ultimately necessary . . . to balance the equities—to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Id.* (citation omitted). "The party seeking modification bears the burden of establishing that a significant change in circumstances warrants its revision." *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1117 (D.C. Cir. 2017) (quotation marks omitted). "A party may meet this initial burden by showing a significant change either in factual conditions or in law. In particular, modification is appropriate when enforcement without modification would be detrimental to the public interest." *Id.* (cleaned up). "Ultimately, the court must, in its discretion, decide 'whether the requested modification effectuates or thwarts the purpose behind the injunction.'" *Hudson v. Am. Fed'n of Gov't Emps.*, 281 F. Supp. 3d 11, 14

7

(D.D.C. 2017) (quoting *Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d 253, 257 (2d Cir. 1984)).

## III. Analysis

As a threshold matter, the Court must determine which standard of review applies to Defendants' motion, a question that largely depends on whether the Court enjoined a ban or a reduction on late and extra trips. In Defendants' view, the Court's preliminary injunction enjoined a "ban" on late and extra trips. Defs.' Mot., ECF No. 154-1 at 16. While they insist that they have met their burden under either standard, Defendants argue that their proposed changes do not implicate the preliminary injunction, and thus they seek clarification "out of an abundance of caution." *Id.* at 6. Plaintiff, on the other hand, argues that the Court should treat Defendants' motion as a motion to modify the preliminary injunction because the "new policy is inconsistent with the preliminary injunction and related Court orders" enjoining a reduction in late and extra trips. Pl.'s Opp'n, ECF No. 156 at 2-3. The Court's prior opinion thus warrants clarification because it is reasonably susceptible to differing interpretations as to whether the preliminary injunction enjoined a ban on or a reduction in late and extra trips. *See Alliance of Artists & Recording Cos., Inc.*, 2016 WL 9963947, at *4.

8

The Court agrees with Defendants and clarifies that its preliminary injunction enjoins a ban on late and extra trips. Plaintiff is correct that certain statements in the Court's Memorandum Opinion could be read to suggest that the Court intended to enjoin only a reduction. For example, in its Opinion, the Court acknowledged that Defendants had clarified that "late and extra trips are not 'banned,'" and found that Plaintiff's evidence indicated that a significant reduction in such trips had resulted in nationwide delays in mail delivery. *See, e.g.*, Mem. Op., ECF No. 32 at 6-7, 32. However, the Court did not intend for these statements to create uncertainty. To the contrary, the Court's Order entering the preliminary injunction against Defendants enjoined them "from enforcing the Transportation Policy Changes," Order, ECF No. 31; which was explicitly defined within the Memorandum Opinion as the "prohibition on 'late trips' and 'extra trips,'" Mem. Op., ECF No. 32 at 6-7. At the time, the Court relied on USPS data showing the significant decline in the number of late and extra trips as evidence of the impact that USPS's calls to eliminate such trips had on mail delivery—and, at the very least, as evidence of the confusion following USPS's conflicting messaging regarding whether such trips were fully authorized. *Compare* Cintron Decl., ECF No. 21-2 at 23 (describing guidelines "for Elimination of Extras and Lates"), *and* Postal Service, *Mandatory*

9

*Stand-Up Talk: All Employees: Pivoting for Our Future* (July 10, 2020), https://federalnewsnetwork.com/wp-content/uploads/2020/07/071020-standup-talk.pdf (stating that extra trips and late trips "are no longer authorized or accepted"), *with* Defs.' Opp'n, ECF No. 21 at 27 n.6 (stating that the July 10, 2020 USPS memorandum stating that late and extra trips were not authorized "does not represent official USPS policy" and "mischaracterizes USPS policy and the USPS's initiative to encourage compliance with transportation schedules").

The Court's October 27, 2020 Minute Order also does not support Plaintiff's position. In granting Plaintiff's emergency motion to enforce and monitor compliance with the preliminary injunction, the Court implemented the joint proposed order that Plaintiff and Defendants largely agreed upon. *See* Notice Proposed Order (Joint), ECF No. 39. As is relevant here, the Court's Minute Order instructed Defendants to issue a notice or deliver a Stand-Up Talk to certain employees clarifying that (1) the Cintron Guidelines, which regarded efforts to eliminate late and extra trips, were rescinded; and (2) "late and extra trips should be performed to the same or greater degree than they were performed prior to July 2020 when doing so would increase on-time mail deliveries." Min. Order (Oct. 27, 2020). The Minute Order is therefore consistent with the Court's injunction

10

enjoining the elimination of late and extra trips, a directive that had been announced in July 2020. *See* Pls.' Mot. Prelim. Inj., ECF No. 8-1 at 22-23. In view of the above, the Court shall thus construe Defendants' motion as one seeking clarification, not modification.

Defendants request that the Court "clarify that the preliminary injunction does not prohibit the Postal Service from declining to approve extra network trips (i.e., unscheduled, usually long-distance trips, as opposed to local trips, which would not be affected by this motion)" in two situations: (1) "where an extra trip would not be service responsive"; and (2) "where not using the extra trip would result in delay of only a small volume of mail, specifically, less than 15% of the truck's capacity." Defs.' Mot., ECF No. 154-1 at 5. Defendants argue that the Court should grant their motion because the new process "does not constitute a ban on late and extra trips." *Id.* at 16. They also contend that the process is consistent with the "text and purpose of 39 U.S.C. § 3661, the statutory basis for the Court's preliminary injunction," because "Section 3661(b) does not apply to '[m]inor alterations which have a minimal effect on the general class of postal users,' or where there is no 'meaningful impact on service.'" *Id.* at 17 (quoting *Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262 (5th Cir. 1975)). Plaintiff does not dispute that the proposed actions would be consistent

11

with a preliminary injunction that enjoins a ban on late and extra trips. *See* Pl.'s Opp'n, ECF No. 156 at 2-7.

In view of the Court's above clarification that the preliminary injunction enjoins a ban on late and extra trips, as well as the lack of opposition from Plaintiff, the Court concludes that the injunction does not prohibit the Postal Service from implementing its proposed changes. As stated above, the Court entered its Order on October 10, 2021, enjoining Defendants from enforcing the Transportation Policy Changes. Order, ECF No. 31. The Court determined at that time that it was likely that Plaintiff could show that the Transportation Policy Changes "ha[d] resulted in changes to service standards nationwide because it ha[d] resulted in nationwide delays." Mem. Op., ECF No. 32 at 32; *see also* 39 U.S.C. § 3661(b) (requiring the Postal Service to seek an advisory opinion from the Postal Regulatory Commission when the Postal Service determines that a plan represents "a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis"). Thus, in view of the Court's conclusion that the "broad scope of the Transportation Policy Changes demonstrates on its face that it is precisely the kind of change that is to be the subject of the public-participation and independent review safeguards provided by Section 3661," the Court held that the Postal Service could not proceed with the

policy without first seeking an advisory opinion from the Postal Regulatory Commission. Mem. Op., ECF No. 32 at 34.

Here, Defendants' proposed changes do not constitute a prohibition on late and extra trips, nor does it appear that they would have a meaningful impact on service that would be felt on a nationwide basis. First, regarding the denial of extra trips that would not be service responsive, Defendants have explained that in such a situation, "mail would not arrive at its final destination any later than if the Postal Service had run an extra trip," and, "[i]f there is insufficient capacity on the next regularly scheduled trip, and no reasonable means of delivering the mail only one day later, then the Postal Service would run the extra trip, *regardless of capacity*." Defs.' Reply, ECF No. 159 at 11 (emphasis added). Therefore, declining to authorize an extra trip in this situation would not result in slower mail delivery times.

Second, regarding the denial of extra trips where the transporting truck is at less than 15 percent capacity, Defendants have asserted that this would be a rare occurrence, Defs.' Reply, ECF No. 159 at 13 (noting that during the "April 2021 initial implementation, less than 0.2 percent of requested trips were denied due to low volume"); and that to allow trips in such a situation would be, in USPS's view, "financially irresponsible," *see* Defs.' Mot., ECF No. 154-1 at 12. Based on

13

Defendants' representations, implementing this proposal would therefore likely have a "minimal effect on the general class of postal users" and no "meaningful impact on service." *Buchanan*, 508 F.2d at 262 (explaining that Section 3661(b) does not apply to "[m]inor alterations which have a minimal effect on the general class of postal users," or where there is no "meaningful impact on service"). Moreover, Defendants assert that, prior to July 2020, USPS managers had the discretion to decline extra trips in this type of situation. *See* Defs.' Reply, ECF No. 159 at 15. Nonetheless, the Court is mindful that the Postal Service's recent testing of the proposed changes was limited in both duration and scope, and there is little to no concrete evidence regarding the new process's future impact on a nationwide scale. *See* Defs.' Mot., ECF No. 154-1 at 7, 9 (stating that the new process was tested over a period of nine days, with 736 trips impacted). Therefore, to ensure that the proposed changes do not unintentionally grow to meaningfully affect service on a nationwide or substantially nationwide basis, the Court shall require Defendants to file a status report in 90 days with updated data on the number of extra trips denied based on the two grounds described here.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for clarification. Accordingly, it is **ORDERED** that the

Court's Order, ECF No. 31, is clarified to reflect the following:

The preliminary injunction does not prohibit the Postal Service from declining approval for extra network trips pursuant to the following principles: (1) where an extra trip would not be service responsive, and (2) where not using an extra trip would delay a volume of mail that is no greater than 15 percent of the truck's total capacity.

It is **FURTHER ORDERED** that the parties shall file a joint status report by no later than August 30, 2021, proposing the parameters of a data request—to be due 90 days from the date of this Order—identifying the number of extra trip requests denied on the grounds that the trip would not be service responsive and the number of extra trip requests denied on the grounds of low volume of mail.

The preliminary injunction otherwise remains in effect.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **August 23, 2021**

15