**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| National Association for the Advancement of Colored People, <br><br>    *Plaintiff*, <br><br> v. <br><br> United States Postal Service, et al., <br><br>    *Defendants*. | Civil Action No. 1:20-cv-02295-EGS |

**PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH
SETTLEMENT AGREEMENT AND COURT ORDER**

Plaintiff National Association for the Advancement of Colored People ("NAACP") brought this lawsuit in August 2020 to challenge various changes made by defendant United States Postal Service ("USPS") shortly before the 2020 election. In December 2021, the parties entered into a settlement agreement addressing USPS's practices with respect to Election Mail, including mail-in ballots. Stipulation of Settlement & Proposed Order (Dec. 17, 2021), Dkt. No. 170 [hereinafter "Stipulation"]. At the parties' request, this Court retained jurisdiction to enforce key provisions of the Agreement. *See id*. ¶ 2; Minute Order (Dec. 20, 2021).

In the Agreement, USPS made a judicially enforceable commitment to "prioritiz[e] . . . the timely delivery of Election Mail" for every national election through 2028. Exhibit A to Stipulation ¶ 1 [hereinafter "Agreement"]. Consistent with this commitment, USPS has understood its obligations under the Agreement to require the timely delivery of Election Mail to all voters without exception and without regard to any administrative determination about a voter's purported eligibility to receive or return a mail-in ballot. Now, as directed by an Executive Order issued by President Trump on March 31, 2026, *see* Exec. Order No. 14399, 91 Fed. Reg. 17125

(Mar. 31, 2026) [hereinafter "the Executive Order"], USPS plans to displace that understanding and USPS's commitment, implementing a new gatekeeping function for the USPS's universal timely delivery commitment that would violate the Agreement and federal law. On June 2, 2026, USPS published a proposed rule, titled "Ballot Mail for Federal Elections," that sets forth requirements and procedures that would violate its obligations under the Agreement. *See* 91 Fed. Reg. 32915 (June 2, 2026) [hereinafter "Proposed Rule"] (attached as Ex. A). The Proposed Rule manifests USPS's intent not to deliver certain mail-in ballots, establishing a process that directly violates its obligations under the Agreement.

Pursuant to paragraph 10 of the parties' Agreement, Plaintiff moves this Court to: (1) declare that standards and procedures set forth in the Proposed Rule would violate the Agreement; and (2) enjoin USPS from implementing those standards and procedures.[1] This matter is time sensitive. The comment period on the USPS's Proposed Rule ends by July 2, 2026; the President has directed USPS to finalize it expeditiously, and the 2026 general election cycle is imminent. As USPS has itself emphasized, fulfilling its commitment to the proper handling and timely delivery of Election Mail for this election cycle requires extensive internal trainings, as well as communication with state and local election officials, which began in January and February. Unless this Court acts promptly, USPS's Proposed Rule—even before it is finalized—will disrupt this process and interfere with USPS's commitment to the timely delivery of ballots by causing confusion within USPS, and among election officials and voters, about what procedures will be in place for mail-in ballots in November. And implementation of the Proposed Rule would threaten to prevent millions of eligible voters from receiving mail-in ballots to which they are entitled and

---

[1] Defendants oppose this motion.

that USPS is obligated by the Agreement, this Court's Order, and federal law to make its best efforts to deliver.

In light of the exigencies in this election season, including the confusion and uncertainty for election officials, Plaintiff, and voters, along with the substantial resources that would need to be invested to prepare for implementing the changes required by the Proposed Rule on an expedited timeline, Plaintiff respectfully asks this Court to issue its ruling as expeditiously as possible and by no later than June 22, 2026. Plaintiff proposes that this Court set a deadline by June 10 for Defendants' response and June 12 for any reply. Plaintiff is also available for a hearing at the Court's convenience, if a hearing would be helpful to this Court.

## BACKGROUND

**A.** The Postal Reorganization Act of 1970 requires USPS to "provide prompt, reliable, and efficient services to patrons in all areas and render postal services to all communities," 39 U.S.C. § 101(a), as well as give "the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail," *id*. § 101(e). The statute also states clearly that USPS "shall not . . . make any undue or unreasonable discrimination among users of the mails." *Id*. § 403(c).

During the midst of a pandemic and a presidential election cycle, when prompt mail delivery mattered more than ever, USPS made significant changes that resulted in unreliable service and widespread delays. *See* Mem. Op. at 4–7 (Oct. 10, 2020), Dkt. No. 32. On July 10, 2020, the Postmaster General announced a major operational "Pivot," which imposed significant restrictions on the timing and nature of letter carrier routes. *See* Am. Compl. ¶¶ 5, 78 (Mar. 5, 2021), Dkt. No. 149. In so doing, he acknowledged that employees would "see mail left behind or on the workroom floor or docks" as a result. *Id*. ¶ 80. In the month after, there were substantial

delays in mail service across the nation, with entire towns in rural areas not receiving their mail on certain days and people in some cities going days or weeks without receiving any mail at all. *Id*. ¶¶ 84–89. Among other consequences, the delays threatened to prevent eligible Americans from voting by mail in their primary elections. *Id*. ¶ 89.

Plaintiff first filed suit to require the USPS to suspend these changes, to restore prompt and reliable mail delivery, and to ensure that mail-in ballots are accorded priority status, as they have been in past years. *See* Compl. (Aug. 20, 2020), Dkt. No. 1. On September 1, 2020, this Court granted Plaintiff's motion for a preliminary injunction, ruling that it was likely to succeed on the merits of its claim that the USPS made changes to transportation policy without following procedures required by law. Mem. Op.

Two weeks later, in light of USPS's admission in a parallel case that it had not taken steps to implement this Court's injunction, Cintron Dep. Tr. at 158:24–59:15, Exhibit B to Pl.'s Emergency Mot. (Oct. 22, 2020), Dkt. No. 35-5 (USPS 30(b)(6) deponent testifying that USPS made no effort to comply with this Court's injunction), Plaintiff filed an emergency motion to enforce the injunction and to establish daily monitoring of USPS's service, Emergency Mot. (Oct. 22, 2020), Dkt. No. 35. This Court granted that motion on October 27, 2020. *See* Minute Order (Oct. 27, 2020).

This Court then held daily hearings for nearly two weeks. During that time, USPS officials repeatedly testified that special measures, including those identified as "Extraordinary Measures," were necessary to ensure the prompt and reliable delivery of ballots. *See* Oct. 20 Tr. at 12:10–13:13; 15:14–17; Oct. 31 Tr. at 3:17, 4:18–20, 7:14–15, 10:15; Nov. 4 Tr. at 66:3–68:2.

To ensure timely processing and delivery of mailed ballots so that citizens' votes could be counted, the Court granted several motions for additional emergency relief. *See* Minute Order (Oct.

30, 2020) (ordering "Extraordinary Measures" for districts with processing scores below 90%, along with other relief); Order (Nov. 1, 2020), Dkt. No. 62 (ordering redistribution of "Extraordinary Measures" and other relief to ensure timely processing of mailed ballots); Minute Order (Nov. 3, 2020) (ordering sweeps of certain processing facilities to ensure delivery of ballots). As a result of the litigation and this Court's orders, the vast majority of mailed ballots were delivered in time to be counted. *See* Am. Compl. ¶¶ 7–8.

The "Extraordinary Measures" that USPS implemented in October 2020 applied only to the November 2020 election. For that reason, in March 2021, Plaintiff amended its complaint to address changes to transportation policy and the Postal Service's failure to adopt procedures to ensure prompt and reliable mail-in ballot delivery in future elections. *See id.*

On December 17, 2021, the parties filed a Stipulation of Settlement and Proposed Order, Stipulation and Agreement, which this Court incorporated in its final order, Minute Order (Dec. 20, 2021). The Agreement includes several judicially enforceable provisions. Among other things, it requires the USPS to meet with Plaintiff in the months before each national primary and general election through 2028, Agreement ¶ 4(a), and to provide weekly reports on service performance during the six weeks leading up to general elections, Agreement ¶ 5(a). The Agreement also requires the Postal Service to issue "National Guidance Documents" in every national election cycle through 2028 that reflect "policies for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle," Agreement ¶¶ 1–2. In addition, paragraph 2, "as further clarified in paragraph[] 3," requires that the posted guidance documents reflect "good faith efforts to prioritize monitoring and delivery of Election Mail" consistent with "statutory requirements," Agreement ¶¶ 2–3. Consistent with the parties' Agreement, the Court retained jurisdiction to enforce paragraph 2. Stipulation ¶ 2; Minute Order (Dec. 20, 2021).

5

**B.** On March 31, 2026, President Trump issued Executive Order 14399, titled "Ensuring Citizenship Verification and Integrity in Federal Elections."[2] Among other things, the Executive Order directed USPS, within sixty days, to initiate a rulemaking to impose numerous requirements on delivery of mailed ballots, including requirements for the envelope to enable USPS to identify the specific voter who mailed each ballot, Exec. Order 14399 § 3(b)(i), and provisions specifying that USPS shall not transmit mail-in or absentee ballots from any voter who is not enrolled on a State-specific list of eligible voters, *id*. § 3(b)(iii).

Consistent with the meet-and-confer obligation of paragraph 10 of the Agreement, Plaintiff on April 2 reached out to counsel for USPS, to raise concerns that the rulemaking directed by Executive Order 14399 would cause the USPS to violate the Agreement and to ask USPS to investigate and cure. USPS responded that, in advance of the rulemaking, Plaintiff's concerns were premature and that USPS was not in violation of the Agreement. On April 16, Plaintiff then asked USPS to confirm that USPS maintains its commitment to complying with the terms of the Agreement and Order. Defendants acknowledged receipt but did not substantively respond.

On June 2, USPS published the Proposed Rule, the terms of which track the directives of the Executive Order. Among the changes, USPS would create a state-specific "Mail-in Absentee Participation List" process through a "Federal Ballot Mail Portal." Proposed Rule, 91 Fed. Reg. at 32916. States, including authorized election officials and their mail service providers, would notify USPS of individuals to whom they are mailing a mail-in or absentee ballot, along with the unique barcode applied to the outbound and return ballot mail envelope for such individuals so that the name and barcode of the voter will be included on a Mail-in and Absentee Ballot List. *Id.* at 32916–

---

[2] Plaintiff has separately challenged sections of the Executive Order in *NAACP v. Trump*, No. 1:26-cv-01151-CJN (D.D.C.), consolidated with *DSCC v. Trump*, No. 1:26-cv-01114-CJN (D.D.C.) (lead case).

18. USPS would then compile and return a final state-specific Mail-in and Absentee Ballot List to the state's chief election official. *Id.* at 32916. A state may make supplemental submissions and modifications to its list until the last day that ballots may be mailed out to individuals under state law. *Id.* at 32918.

The only way for an individual to be enrolled on USPS's Mail-In and Absentee Participation List is to be included on the list offered to USPS through these processes. *Id.* at 32916–18. USPS would then use that information to verify outbound federal ballot mail—that is, ballots sent from election officials to voters, before accepting them for mailing. *Id.* at 32918. Specifically, USPS would review whether the mailing complies with new envelope standards also included in the Proposed Rule and whether it matches the state-submitted Mail-In and Absentee Participation List and associated barcodes. *Id.* Noncompliant mailings would not be accepted and transmitted; instead, they would be returned to state or local election officials or vendors for correction before resubmission. *Id.* If a state declines to certify a Mail-In and Absentee Participation List, ***USPS will not transmit*** any outbound federal ballot mail to that state's voters. *Id.* Plaintiff is unaware of any point in USPS's history in which it chose not to deliver properly addressed, stamped, lawful, nonhazardous mail from a government entity. Thus, contrary to its obligation under the Agreement, rather than taking "Extraordinary Measures" to ensure timely processing of mailed ballots, USPS is promising unprecedented measures to prevent such processing. The result of the new procedures will inevitably be disenfranchisement of large numbers of qualified voters.

**ARGUMENT**

Under the Stipulation, ¶ 2, and this Court's Minute Order (Dec. 20, 2021), this Court retains jurisdiction to enforce compliance with the relevant provisions of the Agreement and Order.[3] *See also Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (stating when a judicial decree is based on an agreement between the parties, it is "enforceable as . . . a judicial decree that is subject to the rules generally applicable to other judgments and decrees" (citation modified)); *Potter v. District of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (recognizing courts' "inherent power to enforce compliance with their lawful orders" (citation modified)). It also may issue declaratory relief that USPS's proposals would violate the Agreement and Order. *Cf. United States v. W. Elect. Co., Inc.*, 907 F.2d 160, 161 (D.C. Cir. 1990) (affirming district court's declaratory ruling that a party's proposal would violate a consent decree).

Here, because the 2026 general election is imminent—with planning by USPS and officials well underway; the ongoing confusion and uncertainty for election officials and voters; and the substantial resources that will have to be devoted by Plaintiff, voters, and election officials while the Proposed Rule is pending—Plaintiff requests that this Court act as expeditiously as possible to issue a declaration and injunctive relief to enforce the Agreement and Order no later than June 22, 2026.[4]

---

[3] *See* Stipulation ¶ 2 ("The Court shall have jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement, subject to the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and 10 of the Settlement Agreement, which are incorporated into this Stipulation and Order as if fully set forth herein.").

[4] The principle that a proposed rule is not final agency action and is ordinarily not subject to suit under the Administrative Procedure Act ("APA"), *see In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015), does not impede this Court's consideration of this motion. This motion does not assert a claim under the APA; rather, it seeks to enforce the Agreement and the Court's Order. And USPS's issuance of a proposed rule within the time directed and with the content directed by the Executive Order, with a short comment period that will allow the rule to be finalized before

**I.      USPS's proposals are inconsistent with the plain language of the Agreement.**

In entering into the Agreement, USPS made a judicially enforceable commitment to prioritize the timely delivery of mail-in ballots for every national election through 2028. Specifically, in paragraph 2 of the Agreement, USPS agreed to publicly disseminate "officially issued National Guidance Documents related to Election Mail," in advance of the 2022, 2024, 2026, and 2028 elections. *See* Agreement ¶¶ 2, 10. And the Agreement defines "National Guidance Documents" as "official materials issued by Postal Service Headquarters that will reflect the Postal Service's formal nationwide Election Mail practices and policies **for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle taking place every two years**." *Id.* ¶ 1 (emphasis added). "Election Mail" is defined as "any item mailed to or from authorized election officials that enables citizens to participate in the voting process—**including ballots**." *Id.* (emphasis added). The "plain and unambiguous meaning of [the] instrument is controlling." *Nat'l Ass'n of Realtors v. United States*, 97 F.4th 951, 957 (D.C. Cir. 2024).

**A.** Notwithstanding that the plain language of the Agreement requires USPS to prioritize the timely delivery of Election Mail, including ballots, in 2026, USPS under the standards of the Proposed Rule would refuse to deliver many ballots, including potentially for all voters in an entire state. Specifically, USPS would refuse to transmit mail-in ballots in states that did not use specific envelopes with specific codes, and would refuse to deliver ballots for voters not included on a state-specific Mail-In and Absentee Participation List. Proposed Rule, 91 Fed. Reg. at 32918. In addition to not delivering Election Mail altogether for states that do not use USPS's preferred envelopes and barcodes, there is a grave risk that USPS will fail to timely deliver Election Mail

---

the deadline set by the Executive Order, make clear that USPS will proceed. The Proposed Rule is already causing significant harms, *infra* Arg. II, and the exigencies require prompt resolution of the issue presented in this motion.

for voters who, through no fault of their own, may not be on the USPS's new Mail-In and Absentee Participation Lists because their state has not certified its List, *id*. at 32918, or inaccuracy, Prelim. Inj. Hr'g Tr. at 78:1–2, *DSCC v. Trump*, No. 1:26-cv-1114-CJN (D.D.C. May 14, 2026) (attached as Ex. B) (government defendants conceding that no list is "perfect").[5]

The probability of errors and omissions of voters in these lists is significant. The Proposed Rule requires that a state-specific Mail-in Absentee Participation List must be certified at least 30 days before federal Election Day, to the extent practicable, or by the date on which mail-in or absentee ballots may begin to be mailed under state law. Proposed Rule, 91 Fed. Reg. at 32916. But because that deadline precedes the voter registration deadline in almost all states, the lists will necessarily be underinclusive. *See Voter Registration Deadlines: Number of Days Before an Election Voters Must Register*, Nat'l Conf. of State Legis. (May 20, 2026), https://www.ncsl.org/elections-and-campaigns/voter-registration-deadlines (cataloguing voter registration deadlines by state). State-specific lists, for example, will not include voters who moved to a new state within 30 days of the federal Election Day and properly registered to vote. For these and other reasons, several states have warned about the risk that qualified voters will not appear on the lists. *See* Mem. in Supp. of Pl. States' Mot. for Summ. J. at 10–11, *California v. Trump*, No. 1:26-cv-11581-IT, (D. Mass. Apr. 23, 2026). Although the Proposed Rule includes a procedure that would allow states to modify and update these lists, state and county officials have warned that administrative, financial, and technical issues will make it difficult for them to do so under the Proposed Rule's timeframes. Pl. States' Statement of Undisputed Facts ¶¶ 23–41, 49–59, *California v. Trump*, No. 1:26-cv-11581-IT (D. Mass Apr. 23, 2026) (cataloguing the

---

[5] Plaintiff's counsel Mr. Cusick represents that, at a hearing on June 2 in *League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT (D. Mass. June 2, 2026), counsel for the government made similar concessions that the lists would be underinclusive.

administrative, financial, technical issues based on declarations by state and county election officials throughout the country).

These inevitable consequences of the Proposed Rule are directly contrary to the judicially enforceable commitments USPS made in the Agreement, which require USPS to disseminate National Guidance Documents reflecting its commitment "to prioritiz[e] … the timely delivery of Election Mail," including "ballots." Agreement ¶ 1. Neither the Agreement nor USPS's obligation to "timely deliver Election Mail" permits USPS to pick and choose which ballots to deliver and which to discard. Such picking and choosing is inconsistent with both paragraph 2 and the entire purpose of the Agreement, which is premised on the parties' mutual recognition that "mail-in voting requires that voters who choose to use the mail to vote be able to do so effectively." *Id.* at 1.

Paragraph 3 of the Agreement, which "clarifie[s]" and elaborates on the guidance documents to which USPS committed under paragraph 2, reinforces that the Proposed Rule is inconsistent with USPS's obligation under the Agreement and Order. Paragraph 3 states that the "guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail, provided that such efforts will not be inconsistent with any relevant and then current statutory requirements and then-current regulations of or orders of the Postal Regulatory Commission." *Id*. ¶ 3. The Proposed Rule, however, is inconsistent with "good faith efforts to prioritize monitoring and timely delivery of Election Mail." *Id.* ¶ 3. A proposal to deliver only *some* Election Mail flies in the face of the Agreement and the parties' mutual goal of ensuring that "voters who choose to use the mail to vote be able to do so effectively." *Id*. at 1.

It also flies in the face of "current statutory requirements." *Id.* ¶ 3. The Postal Reorganization Act expressly prohibits USPS from picking and choosing which recipients should

receive mail. The Postal Reorganization Act of 1970 mandates USPS to "provide prompt, reliable, and efficient services to patrons in all areas and [to] render postal services to all communities" and "to bind the Nation together" through universal transmission of mail, 39 U.S.C. § 101(a), and to give "the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail," *id*. § 101(e). Consistent with that universal-service mandate, USPS "shall not . . . make any undue or unreasonable discrimination among users of the mails." *Id*. § 403(c). The Proposed Rule runs directly contrary to these statutory directives.

**B.** Although the plain language of the Agreement is dispositive here, the commitments embodied in the Agreement are confirmed by the parties' implementation of it, "which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." *In re United States*, 143 F.4th 411, 463 (D.C. Cir. 2025) (citation modified). In both 2022 and 2024, USPS implemented "National Guidance Documents" that reflected its commitment to the monitoring and timely delivery of Election Mail, including mail-in ballots, without in any way excluding certain voters from receiving those ballots. *See* 2022 USPS Post-Election Analysis (attached as Ex. C); 2024 USPS Post-Election Analysis (attached as Ex. D) (collectively explaining the National Guidance Documents and guidance USPS implemented for the 2022 and 2024 elections). And at the February 1, 2026 meeting between USPS officials and Plaintiff—a meeting which itself is required by paragraph 4(a) of the Agreement—USPS reaffirmed its commitment to prioritizing the timely delivery of Election Mail both orally and in a

12

slide presentation for the 2026 elections. *See* Adrienne Marshall, *NAACP Election & Gov't Mail Serv. Update*, USPS (Feb. 2, 2026) (attached as Ex. E) [hereinafter "the Presentation"].[6]

In the Presentation, USPS committed to "fulfilling [its] role in the electoral process [to] provide a secure, efficient and effective way for citizens to participate when policymakers decide to use mail as part of their elections or when voters choose to use our services to participate in an election," and to have "a robust and tested process for proper handling and timely delivery of Election Mail." *Id*. at 2. As part of its commitment to ensure the timely delivery of Election Mail, USPS also committed to implementing both ongoing election mail procedures throughout the year, and Extraordinary Measures—consistent with those employed for the 2022 and 2024 elections— to prioritize the delivery of ballots starting October 27, 2026. *See id*. at 2, 4–5, 8, 16. These commitments are incompatible with a rule under which USPS chooses which mailed ballots to deliver—and which not to deliver.

II.     **This Court's expedited action is necessary to ensure USPS satisfies its commitment to timely deliver mailed ballots.**

To fulfill its commitment to timely delivery of Election Mail, USPS engages in robust preparations that include internal and external trainings, dissemination of educational materials, and testing of processes and procedures, among other steps, conducted year-round beginning in early January. *See id*. at 2, 4–5, 8–9, 16. For this 2026 election cycle, the year-round process began with early internal trainings and ongoing outreach to election officials throughout the country. *Id*. at 4–5, 9. As part of these extensive preparation efforts, USPS published its 2026–2027 Official Election Mail Guide (Kit 600) in February 2026, which election officials have relied on for the

---

[6] Defendants shared Exhibit E, which is a PowerPoint presentation they relied on during the parties' first outreach meeting for the 2026 election. Without waiving any rights, Plaintiffs have redacted PowerPoint slides 7, 11–14, and 20 because Defendants marked them as "Attorney Work Product."

ongoing primary elections, and, consistent with the Guide's encouragement, to plan and implement Election Mail practices for the 2026 election cycle. *2026-2027 Official Election Mail Guide Kit 600*, USPS (Feb. 2026), https://about.usps.com/kits/kit600.pdf [hereinafter "Kit 600"]. The Kit 600 and the preparation efforts reflect reliance on longstanding election processes and procedures. *See* Ex. E at 16. And USPS acknowledges that it is critical for increased public understanding and election preparedness that voters and election officials have clarity regarding any USPS proposed changes early in the election cycle, including a clear understanding around the scope and impact of any changes. *See* Kit 600 at 2, 27.

The pendency of the Proposed Rule, however, creates confusion and uncertainty. USPS, for example, cannot conduct internal or external trainings to plan for a rule that is not yet finalized. Nor can it provide answers or guidance to election officials and voters to mitigate confusion or uncertainty. Kit 600, for example, has guidance and recommendations for how election officials should handle and process Election Mail, which would need to be fundamentally overhauled if the Proposed Rule is adopted. Indeed, the Executive Order has already sown confusion and apprehension among Plaintiff's members and the constituents it serves surrounding mail-ballot eligibility. *See* Decl. of Tyler Sterling for NAACP ¶ 16, *DSCC v. Trump*, No. 1:26-cv-1114-CJN (D.D.C. Apr. 17, 2026), Dkt. No. 54-1 (attached as Ex. F). Because of the uncertainty, Plaintiff, for example, had to revise its educational materials, retrain volunteers, and respond to widespread confusion surrounding mail-ballot eligibility, among other ongoing harms. *Id.* That confusion and uncertainty will increase as the Proposed Rule remains pending while preparation for the 2026 election continues for USPS, election officials, organizations like Plaintiff, and voters nationwide.

**CONCLUSION**

For the reasons above, this Court should grant Plaintiff's Motion, declare that standards and procedures set forth in the Proposed Rule would violate the Agreement, and to enjoin USPS from implementing those standards and procedures.

In light of the exigencies, Plaintiff requests a ruling by June 22, and suggests that the Court set a deadline of June 10 for Defendants' response and June 12 for any reply.

Date: June 3, 2026                                     Respectfully submitted,

/s/ *Sam Spital*                                      Allison M. Zieve (DC Bar No. 424786)
Sam Spital (D.D.C. Bar No. SS4839)                    Wendy Liu (DC Bar No. 1600942)
John S. Cusick*                                       PUBLIC CITIZEN LITIGATION GROUP
Brittany Carter*                                      1600 20th Street NW Washington, DC 20009
NAACP LEGAL DEFENSE AND EDUCATIONAL                   (202) 588-1000
FUND, INC.                                            azieve@citizen.org
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
sspital@naacpldf.org

                                                      *Counsel for Plaintiff NAACP*

*Motion for Admission *Pro Hac Vice* forthcoming

15

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 3, 2026, I electronically transmitted the motion above using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.

<u>/s/ Sam Spital</u>
Sam Spital