TABLE 1 TO § 165.943—Continued

[Datum NAD 1983]

| Event | Location [1] | Enforcement date and time |
|---|---|---|
| [Reserved]. | | |

**(I) December Safety Zones**

| [Reserved]. | | |

[1] Any variation in location will be published in the Notification(s) of Enforcement released in advance of these events.

**John P. Botti,**
*Commander, U.S. Coast Guard, Captain of the Port Marine Safety Unit Duluth.*
[FR Doc. 2026–10976 Filed 6–1–26; 8:45 am]
**BILLING CODE 9110–04–P**

---

# POSTAL SERVICE

## 39 CFR Part 111

## Ballot Mail for Federal Elections

**AGENCY:** Postal Service.
**ACTION:** Proposed rule.

**SUMMARY:** The Postal Service is proposing to amend the *Mailing Standards of the United States Postal Service,* Domestic Mail Manual (DMM), regarding the transmission of mail-in or absentee ballots for federal elections pursuant to its rulemaking authority.
**DATES:** Comments must be received on or before July 2, 2026.
**ADDRESSES:** Mail or deliver written comments to Director, Product Classification, U.S. Postal Service, 475 L'Enfant Plaza SW, Room 4446, Washington, DC 20260–5015. Email comments, containing the name and address of the commenter, may be sent to: *PCFederalRegister@usps.gov,* with a subject line of "Ballot Mail." Faxed comments will not be accepted.

You may inspect and photocopy all written comments, by appointment only, at USPS® Headquarters Library, 475 L'Enfant Plaza SW, 11th Floor North, Washington, DC 20260. These records are available for review Monday through Friday, between 8 a.m. and 4 p.m. by calling 202–268–2906.

**FOR FURTHER INFORMATION CONTACT:** Dale Kennedy, (202) 268–6592.

**SUPPLEMENTARY INFORMATION:** All submitted comments and attachments are part of the public record and subject to disclosure. Do not enclose any material in your comments that you consider to be confidential or inappropriate for public disclosure.

The Postal Service is proposing to amend the *Mailing Standards of the United States Postal Service,* Domestic Mail Manual (DMM) regarding the transmission of mail-in or absentee ballots for federal elections through the mail, pursuant to its authority under 39 U.S.C. 401 and 404, and consistent with Section 3 of Executive Order 14399, Ensuring Citizenship Verification and Integrity in Federal Elections.

## Background

On March 31, 2026, the President issued Executive Order 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections,* 91 FR 17125 (2026) ("Order"). The Executive Order discusses the importance of additional measures concerning the use of the mails to vote in federal elections, in order to facilitate enforcement of federal law, reduce the risk of fraud, and help protect the integrity of federal elections. Following the issuance of the Order, the Postal Service submitted this proposed rule to the Office of Management and Budget (OMB) for interagency review. Subsequent to that review process, the Postal Service issues this proposed rule regarding the preparation of ballot mail for federal elections to facilitate the enforcement of federal law. The proposed rule would also implement best practices for Postal Service operations regarding ballot mail.

## Legal Authority and Rationale

The Postal Service is initiating this rulemaking pursuant to its authority to regulate the mails, including under 39 U.S.C. 401 and 404. Section 401 authorizes the Postal Service "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." Section 401 further grants the Postal Service "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." Section 404 grants the Postal Service specific powers, including the power "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail."

The proposed rule would apply uniform standards for the mailing of absentee ballots to and from voters, which the Postal Service understands will facilitate the faithful execution of federal law. The Postal Service has the authority to change its regulations to achieve this purpose. *See* 39 U.S.C. 401(2) (noting that the Postal Service can issue regulations as necessary to execute functions assigned to it by law); *see, e.g.,* 52 U.S.C. 10307; 52 U.S.C. 20511; *cf.* 18 U.S.C. 3061(b) (authorizing the Postal Service to investigate crimes regarding "the use of the mails" and other appropriate crimes as determined by agreement with the Attorney General). The regulations as proposed accord with that authority, because as detailed below they set forth mailpiece preparation and data reporting standards that can provide information regarding the sending of ballots through the mails that would be available for use by law enforcement, and are consistent with title 39 of the U.S. Code. Additionally, the proposed changes would implement best practices for Postal Service ballot mailing operations, thereby advancing execution of a key Postal Service function.

The Postal Service therefore proposes to amend DMM Section 705 with the provisions described herein. The DMM is incorporated by reference into 39 CFR 111.1 and 111.3.

## Proposed Rule

The Postal Service is proposing to add a section to DMM 705, *Advanced Preparation and Special Postage Payment Systems,* that contains the following preparation conditions when mailing ballots for general, special, or run-off federal elections, except that these conditions do not apply to ballots covered under the Uniformed and Overseas Citizens Absentee Voting Act (52 U.S.C. 20301 *et seq.*):

*Envelope Design and Review Standards*

• DMM 705.24.3 would identify new standards for the envelope design and review for outbound and return ballot

envelopes, which are consistent with the Postal Service's existing recommended best practices. These standards include the use of the official Election Mail logo, automation compatibility, placement of a uniquely serialized Intelligent Mail barcode (IMb) on each outbound and return ballot envelope, and a mailpiece design review.

The mail preparation standards improve the visibility of ballots in the mailstream and are consistent with the Postal Service's current ballot mail preparation recommendations as provided in DMM 703.8.4. The Postal Service currently has resources available to assist with compliance with these standards, which it will continue to make available. An example of a resource currently provided to election officials regarding mailpiece preparation is the ''2026–2027 Official Election Mail Guide (Kit 600)'', which is available at *https://about.usps.com/kits/kit600.pdf.*

The Election Mail Logo is an important tool for mailpiece visibility. It allows voters to recognize Election Mail as important and distinct from other mailings, and also serves to identify official Election Mail for Postal Service employees and distinguishes it from the millions of other mailpieces that are processed daily. Certain long-standing Postal Service practices—including the use of Extraordinary Measures during the period of time before elections that are designed to return ballots from voters to election officials faster than the ordinary mail processes would permit—require the Postal Service to be able to visually identify ballots, which the Election Mail Logo facilitates. Incorporating this logo will thus further facilitate the identification of such ballots.

Ensuring ballot mail is ''automation compatible'' and meets mailpiece design standards means that ballot mail can be processed effectively on the Postal Service's mail processing equipment without unexpected complications or delays in operations, and that the relevant barcodes can be scanned as the piece moves through the mailstream.

Uniquely serialized IMbs facilitate the tracking of individual pieces of Ballot Mail to and from individual voters as the barcodes are scanned on the Postal Service's mail processing equipment. The barcode simplifies data by consolidating information for multiple Postal Service identifiers into one comprehensive location.

### Pre-Election Notification of Intent To Use Postal System for Ballot Delivery

• DMM 705.24.2 would provide for an optional pre-mailing notice that

states may provide to the Postal Service, and facilitate the process for states to enroll individuals with the Postal Service for inclusion on state-specific lists for mail-in and absentee ballot participation.

This provision would allow states to notify the Postal Service of their intent to use the mail to facilitate their election processes. By disclosing relevant points of contact, it will allow the Postal Service to more expeditiously provide technical and other assistance in advance of the election. It will also facilitate the adoption of the new elements of ballot mailing that are proposed in this regulation.

### Mail-In and Absentee Participation List

• DMM 705.24.4 would establish a process by which (1) states (including authorized election officials and their mail service providers) will notify the Postal Service of the individuals to whom they are mailing a mail-in or absentee ballot, along with the unique barcode applied to the outbound and return ballot mail envelope for such individuals such that the name and barcode of the voter will be included on a Mail-In and Absentee Participation List; (2) states (including authorized election officials and their mail service providers) may thereafter add to or modify the list of enrollees until the last day that ballots may be mailed out to individuals under state law; and (3) the Postal Service will provide to each state's chief election official a final State-Specific Mail-In and Absentee Participation List for each state compiling the names of all enrolled individuals in such state, along with the barcodes associated with such individuals' mail-in or absentee ballots.

This provision will help determine adherence to federal law and facilitate law enforcement efforts. For example, the provided lists will evidence how many ballots have been mailed, and allow law enforcement officials to compare the total number of mailed ballots to the total number of received ballots to detect potential issues meriting further investigation. This is accomplished by ensuring that individuals who receive a mail-in or absentee ballot are included on the State-Specific Participation Lists. It is further accomplished by associating the specific barcodes on the ballot envelopes with the intended recipients of ballot mail. As noted above, these barcodes provide visibility into ballot mail transmission based on scan data that is generated as the ballots move through the mail.

Under this proposal, states would retain full control over who would (or

would not) be able to vote by mail in federal elections within each state, as states would control enrollment with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List. States would provide the Postal Service with this information via the Federal Ballot Mail Portal. Once a state has completed its ballot mailings, the Postal Service would compile the information provided by that state and then provide the compiled list to the state as that state's Mail-In and Absentee Participation List. The Postal Service would not change the information provided by the state when compiling the lists. As noted below, the Postal Service would provide technical assistance to states and localities regarding the secure submission of this data.

### Ensuring Compliance With New Standards

• DMM 705.24.5 would establish a verification standard to support transmission of compliant mail-in or absentee ballots.

The proposed rule also implements a verification procedure for compliance with the proposed standards prior to acceptance by the Postal Service of the outbound ballot mailpiece and the blank return ballots included within such mailings. The verification process by the Postal Service would confirm that a state submitted a list consistent with the conditions laid out in the proposed rule, and that the outbound ballot mail, and thus the blank ballot that could be returned by mail, is destined to individuals on the list, by checking the barcodes. The Postal Service would not verify whether individuals should or should not be included on a State's Mail-In and Absentee Participation List. States will retain full control over the content of that list.

The Postal Service is not proposing to apply these standards to primary elections or to UOCAVA ballots. Primary elections largely involve political parties selecting nominees through their chosen procedures, rather than direct election of federal officials, and thus implicate different considerations that bear on the necessity for these provisions. Moreover, UOCAVA is a separate federal statutory scheme with its own requirements, including different timing constraints and deadlines. The Postal Service welcomes comments on these issues, however.

As required under existing postal regulations, mailers must comply with all applicable postal laws and regulations governing mailability and preparation for mailing, as well as

nonpostal laws and regulations on the possession, treatment, transmission, or transfer of particular matter. Coinciding with publication of any final rule, to facilitate compliance by officials mailing ballots to voters, the Postal Service intends to provide further technical instructions regarding barcode creation, service type identifiers, acceptance processes, file preparation, documentation submission, and entry of data into the proposed portal.

The Postal Service will also take steps necessary for the creation of a new system of records notice (''SORN'') in accordance with the Privacy Act. Notice regarding the new SORN is forthcoming.

### Election Mail Practices

The Postal Service will continue to engage with state and local election officials to advise on mailing conditions and best practices. The Postal Service will also continue to offer technical support to election officials and their mail service providers.

Additional information about the Postal Service's Election Mail practices and procedures, as well as other resources, are available at *https:// about.usps.com/what/government- services/election-mail/.*

The proposed rule would not make changes to the Postal Service's longstanding Election Mail practices concerning the processing and delivery of ballots that enter the mailstream, including completed ballots mailed by voters to election officials. In fact, consistent use of our best practices recommendations will enhance these efforts. For example, the Postal Service will, consistent with prior elections, continue to perform extraordinary measures to deliver completed ballots, and, as previously announced, will issue further guidance on such extraordinary measures prior to the general election on November 3, 2026. Extraordinary measures include steps taken by the Postal Service to accelerate the delivery of Return Ballot Mail beyond the Postal Service's typical operations and service expectations.

### Request for Comments

Consistent with the Order, the Postal Service is issuing this notice of proposed rulemaking and invites comments on any and all provisions of the proposed DMM addition. During the comment period, the Postal Service plans to work with stakeholder groups to discuss the proposed rule and its implementation.

Although exempt from the notice and comment requirements of the Administrative Procedure Act (5 U.S.C. 553(b), (c)) regarding proposed

rulemaking by 39 U.S.C. 410(a), the Postal Service invites public comment on the proposed revisions to Mailing Standards of the United States Postal Service, Domestic Mail Manual (DMM), incorporated by reference in the Code of Federal Regulations.

We will publish an appropriate amendment to 39 CFR part 111 to reflect these changes if our proposal is adopted.

### List of Subjects in 39 CFR Part 111

Administrative practice and procedure, Postal Service.

Accordingly, the Postal Service proposes the following changes to Mailing Standards of the United States Postal Service, Domestic Mail Manual (DMM), incorporated by reference in the Code of Federal Regulations (see 39 CFR 111.1):

### PART 111—[AMENDED]

■ 1. The authority citation for 39 CFR part 111 continues to read as follows:

**Authority:** 5 U.S.C. 552(a); 13 U.S.C. 301– 307; 18 U.S.C. 1692–1737; 39 U.S.C. 101, 401, 403, 404, 414, 416, 3001–3011, 3201– 3219, 3403–3406, 3621, 3622, 3626, 3632, 3633, and 5001.

■ 2. Revise the following sections of *Mailing Standards of the United States Postal Service,* Domestic Mail Manual (DMM), as follows:

### Mailing Standards of the United States Postal Service, Domestic Mail Manual (DMM)

\*    \*    \*    \*    \*

### 705    Advanced Preparation and Special Postage Payment Systems

\*    \*    \*    \*    \*

[Insert after 705.23 the following:]

### 24.0    Ballot Mail for Federal Elections

### 24.1    Definitions

For the purposes of Section 705.24, the following definitions apply:

a. *Authorized ballot mailer* means an election official of a state or a political subdivision thereof who is responsible for sending mail-in or absentee ballots to eligible voters of that state or political subdivision; or an individual or entity, such as a mail service provider, that an election official has authorized to send mail-in or absentee ballots by mail on the election official's behalf.

b. *Ballot Portal User* means the chief election official of each state and any individual or entity, such as a mail service provider or an election official of that state or a political subdivision thereof, authorized by the chief election official to provide information through

the Postal Service Federal Ballot Mail Portal as described in 24.4.2.b.

c. *Mail-in or absentee ballot* means a physical ballot, other than a ballot provided at a designated polling place, that may be used to cast a vote in a federal election. For the purposes of Section 705.24, a mail-in or absentee ballot does not include a ballot mailed under 703.8.8 or 703.8.9.

d. *Outbound Federal Ballot Mail* means any mailpiece containing a mail- in or absentee ballot for a federal election sent from an authorized ballot mailer to an individual voter.

e. *Return Federal Ballot Mail* means any mailpiece containing a mail-in or absentee ballot for a federal election sent from an individual voter to an election office, or an authorized recipient of ballot mail, of a state or a political subdivision thereof.

f. *Federal election* means any general, special, or runoff election for the office of President or Vice President; or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress. This definition does not include primary elections.

g. *State* includes all 50 states, as well as the District of Columbia, Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Northern Mariana Islands.

h. *Intelligent Mail barcode (IMb)* has the meaning provided in 204.1.2.1.

i. *Official Election Mail logo* is a unique registered trademark designed exclusively for inclusion in the design of Official Election Mail. The conditions of use are provided in Publication 631, *Official Election Mail—Graphic Guidelines and Logos.*

### 24.2    Optional 90-Day Pre-Mailing Notice

A state's chief election official may notify the Postal Service, no fewer than 90 days prior to a federal election, of its intent to allow for mail-in or absentee ballots in the federal election to be transmitted by the Postal Service. This notification should indicate whether the state intends to submit to the Postal Service the information described in 24.4.2.b to the Postal Service Federal Ballot Mail Portal as set forth in 24.4.2.d.

A state's failure to provide the optional 90-day notice to the Postal Service under 24.2 will not prevent enrollment under 24.4.

### 24.3    Federal Ballot Mail

*24.3.1    Outbound Federal Ballot Mail Envelope Standards*

Outbound Federal Ballot Mail must be mailed in an envelope that:

a. Includes the official Election Mail logo;

b. Is automation compatible;

c. Bears a unique IMb with the Delivery Point ZIP Code embedded and a Federal Ballot Mail Service Type Identifier (STID); and

d. Has undergone review by the Postal Service for mailpiece design and barcode placement.

*24.3.2    Return Federal Ballot Mail Envelope Standards*

Return Federal Ballot Mail must be mailed in an envelope that:

a. Includes the official Election Mail logo;

b. Is automation compatible;

c. Bears a unique IMb with the Delivery Point ZIP Code embedded and a Federal Ballot Mail STID; and

d. Has undergone review by the Postal Service for mailpiece design and barcode placement.

*24.3.3    Authorized Ballot Mailer Responsibility*

Authorized ballot mailers are responsible for barcode creation under 24.3.1 and 24.3.2 as well as envelope design and printing for all ballot mail.

*24.3.4    Additional Recommendations*

For additional information on the Postal Service's recommendations for all ballot mail, see DMM 703.8.4.

**24.4    State-Specific Mail-In and Absentee Participation Lists**

*24.4.1    Postal Service Federal Ballot Portal User Registration*

To access the Postal Service Federal Ballot Mail Portal, each Ballot Portal User must have a registered account. Registration must be completed no later than two business days before an Outbound Federal Ballot mailing. The chief election official of each state is responsible for authorizing the Ballot Portal Users for their state including political subdivisions thereof.

*24.4.2    Enrollment*

a. Any state that intends to receive mail-in or absentee ballots from individual voters through the Postal Service must ensure that such individuals have been enrolled with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List.

b. In order for an individual to be enrolled with the Postal Service for inclusion on a state's Mail-In and Absentee Participation List, a Ballot Portal User in that state must provide the following information through the Postal Service Federal Ballot Mail Portal:

1. Name of individual receiving a mail-in or absentee ballot;

2. Address of individual receiving a mail-in or absentee ballot;

3. Unique IMb on the Outbound Federal Ballot Mail envelope sent to the individual;

4. Unique IMb on the Return Federal Ballot Mail envelope sent to the individual; and

5. Originating election office state.

c. An individual will be deemed enrolled with the Postal Service for inclusion on a state's Mail-In and Absentee Participation List as of the date that the information in 24.4.2.b is provided.

d. Ballot Portal Users must provide the information in 24.4.2.b at least 30 days before the date of the federal election, to the extent practicable, or by the date on which mail-in or absentee ballots may begin to be mailed under state law. Ballot Portal Users may make supplemental submissions to enroll additional individuals or modify prior submissions until the last day that ballots may be mailed out to individuals under state law. A separate submission is required in connection with each Outbound Federal Ballot mailing, regardless of the number of mailpieces in the mailing.

e. The information provided in 24.4.2.b must meet the Postal Service's technical specifications for the Federal Ballot Mail Portal.

f. Ballot Portal Users must certify to the Postal Service that any mail-in or absentee ballots their state's authorized ballot mailers provide to the Postal Service for mailing meet the standards in 24.3.1 and 24.3.2.

*24.4.3    Provision of State-Specific Lists*

On or about the date of the federal election, the Postal Service will provide a state-specific Mail-In and Absentee Participant List to each state's chief election official that contains the name and address of each individual in that state who was enrolled through the process set forth in 24.4.2, along with the unique IMb associated with the Outbound and Return Federal Ballot Mail sent to each such individual.

**24.5    Outbound Federal Ballot Mail Verification**

*24.5.1    Procedure*

Using the information provided in 24.4.2, the Postal Service will review mailings identified as Outbound Federal Ballot Mail prior to acceptance to evaluate whether the mailing meets the standards in 24.3.1 and is being sent to individuals who have been enrolled with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List, consistent with the technical specifications for the Federal Ballot Mail Portal.

*24.5.2    Authorized Verification*

Mailings identified as Outbound Federal Ballot Mail are verified by Postal Service employees when presented for acceptance. Consistent with existing Postal regulations regarding commercial postage categories, mailings of Outbound Federal Ballot Mail with 200 or more pieces of Marketing Mail or 500 or more pieces of First-Class Mail must be entered at a facility that performs business mail acceptance functions. Mailings of Outbound Federal Ballot Mail that do not meet this volume threshold must be entered either at a facility that performs business mail acceptance functions or at a Postal Service retail counter. Postal Service personnel are not authorized to open mail sealed against inspection, except under circumstances described in ASM 274. The Postal Service's acceptance of Outbound Federal Ballot Mail does not constitute verified compliance.

*24.5.3    Noncompliance*

a. Mailings that do not comply with 24.5.1 and 24.5.2 will not be accepted and will be returned to the authorized ballot mailer. The authorized ballot mailer or Ballot Portal User must address the error(s) before resubmitting the mailing.

b. Mailings from any authorized ballot mailer for any state that has not submitted a certification pursuant to 24.4.2.f will not be accepted and will be returned to the authorized ballot mailer.

c. An authorized ballot mailer may request further review by the Postal Service if Outbound Federal Ballot Mail is not accepted.

d. The Postal Service assumes no responsibility for any outbound ballot mailing presented until it is accepted into the mail. The Postal Service is not responsible for service delays when the Ballot Portal User or authorized ballot mailer does not meet the applicable preparation or entry standards.

e. Authorized ballot mailers must comply with all applicable postal laws and regulations governing mailability and preparation for mailing, as well as nonpostal laws and regulations on the possession, treatment, transmission, or transfer of particular matter.

**24.6    Non-Interference With State or Federal Election Laws**

This rule relates only to the use of the U.S. Mail. The Postal Service does not purport to alter the eligibility of any

individual to vote under state or federal law. The Postal Service does not have any legal responsibility for management of state voter rolls or administration of federal elections within each state. States are fully responsible for the contents of each State's Mail-In and Absentee Participation List.

**Daria Valan,**

*Attorney, Ethics & Legal Compliance.*

[FR Doc. 2026–10968 Filed 5–29–26; 12:15 pm]

**BILLING CODE 7710–12–P**

---

**DEPARTMENT OF TRANSPORTATION**

**Pipeline and Hazardous Materials Safety Administration**

**49 CFR Part 195**

[Docket No. PHMSA–2025–1271]

**RIN 2137–AG22**

**Pipeline Safety: Breakout Tank Inspection Rule**

**AGENCY:** Pipeline and Hazardous Materials Safety Administration (PHMSA), Department of Transportation (DOT).

**ACTION:** Notice of proposed rulemaking (NPRM).

**SUMMARY:** Breakout tanks are used to ''relieve surges in a hazardous liquid pipeline system'' or to ''receive and store hazardous liquid transported by a pipeline for reinjection and continued transportation by pipeline.'' American Petroleum Institute Standard 653 (API Std 653) sets industry standards for the inspection, repair, alteration, and reconstruction of aboveground storage tanks. PHMSA currently incorporates the 3rd edition of API Std 653 (issued December 2001) by reference into its regulations for breakout tanks. In this rulemaking, PHMSA is proposing to update its regulations for breakout tanks to incorporate the 5th edition of API Std 653 (issued November 2014) by reference. As a key part of this, PHMSA is proposing to authorize the use of risk-based inspection (RBI) procedures for establishing the inspection intervals of in-service breakout tanks.

**DATES:** Comments on this NPRM must be submitted by August 3, 2026. A public meeting of PHMSA's statutory advisory committees will be held on a date to be announced in the **Federal Register**.

**ADDRESSES:** You may submit comments by one of the following methods, identifying docket number PHMSA–2025–1271 on the top of the first page:

• Electronically at *https://www.regulations.gov.* Follow the ''submit a comment'' instructions.

• Mail and hand delivery to Docket Management System, U.S. Department of Transportation, 1200 New Jersey Avenue SE, West Building Ground Floor, Room W12–140, Washington, DC 20590–0001. Hand delivery is available to this address between 9:00 a.m. and 5:00 p.m., Monday through Friday (except Federal holidays). Include two copies if submitting by mail. To receive confirmation that PHMSA has received your comments, include a self-addressed stamped postcard.

• By fax to 1–202–493–2251.

Comments may be viewed at *https://www.regulations.gov/docket/PHMSA-2025-1271.* Comments are posted without changes or edits, including any personal information provided. DOT's privacy statement can be reviewed at *https://www.dot.gov/privacy.*

*Confidential Business Information:* 49 CFR 190.343 provides for the submission of Confidential Business Information (CBI) to PHMSA. If your comment contains commercial or financial information that is customarily treated as private and that you actually treat as private, you must clearly designate the submitted comments as CBI, by taking the following steps: (1) mark as ''confidential'' each page of the original document submission containing CBI; (2) along with the original document, send PHMSA a redacted copy of the original document with the CBI deleted; and (3) explain why the information you are submitting is CBI. Send submissions containing CBI to Sayler Palabrica at the contact information listed below. Any comment PHMSA receives that is not specifically designated as CBI will be placed in the public docket.

**FOR FURTHER INFORMATION CONTACT:** Sayler Palabrica, Standards and Rulemaking Division, by phone at 202–744–0825 or by email at *sayler.palabrica@dot.gov.*

**SUPPLEMENTARY INFORMATION:**

**I. Executive Summary**

API Std 653 sets standards for the inspection, repair, alteration, and reconstruction of aboveground storage tanks. PHMSA currently incorporates the 3rd edition of API Std 653, as issued in December 2001 with addenda and errata through April 2008, by reference into its part 195 regulations for breakout tanks. Breakout tanks are tanks that operators use to ''relieve surges in a hazardous liquid pipeline system'' or to ''receive and store hazardous liquid transported by a pipeline for reinjection

and continued transportation by pipeline.'' (49 CFR 195.2).

In this rulemaking, PHMSA is proposing to update its part 195 regulations for breakout tanks to incorporate the 5th edition of API Std 653, as issued in November 2014 with addendums and errata through July 2025, by reference. PHMSA is also proposing to revise § 195.432 to authorize the use of RBI procedures for establishing the inspection intervals of in-service breakout tanks. PHMSA estimates that adopting this proposal will result in cost savings of between $24.5 to $125.7 million per year using a three percent discount rate or between $29.3 to $150.1 million per year using a seven percent discount rate.

**II. Background**

PHMSA's Federal safety standards at part 195 apply to breakout tanks. Breakout tanks are used by pipeline operators to ''relieve surges in a hazardous liquid pipeline system'' or to ''receive and store hazardous liquid transported by a pipeline for reinjection and continued transportation by pipeline.'' (49 CFR 195.2). Breakout tanks are subject to certain specific requirements in part 195, including (1) § 195.205, which prescribes requirements for the repair, alteration, and reconstruction of in-service breakout tanks; (2) § 195.307, which prescribes requirements for pressure testing aboveground breakout tanks; and (3) § 195.432, which prescribes requirements for the inspection of in-service breakout tanks. While not relevant to the proposals at issue in this proceeding, the general requirements in part 195 for pipeline systems and pipeline facilities also apply to breakout tanks, subject to a conflict preemption provision.[1]

PHMSA's regulations for breakout tanks date to the 1969 final rule that prescribed the original version of the part 195 regulations.[2] One of those regulations, codified at § 195.432, established requirements for the inspection of storage vessels. It stated that ''[e]ach carrier shall, at intervals not exceeding 12 months, inspect each

---

[1] 49 CFR 195.1(c) ''Breakout tanks that are subject to this part must comply with requirements that apply specifically to breakout tanks and, to the extent applicable, with requirements that apply to pipeline systems and pipeline facilities. If a conflict exists between a requirement that applies specifically to breakout tanks and a requirement that applies to pipeline systems or pipeline facilities, the requirement that applies specifically to breakout tanks prevails.''

[2] *Requirements for Design, Construction, Operation, and Maintenance,* 34 FR 15473 (Oct. 4, 1969).