## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| National Association for the Advancement of Colored People, <br><br> *Plaintiff*, <br><br> v. <br><br> United States Postal Service, *et al.*, <br><br> *Defendants*. | Case No. 1:20-cv-02295-EGS |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE COMPLIANCE WITH SETTLEMENT AGREEMENT AND COURT ORDER

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................... 1

**BACKGROUND** ..................................................................................................................... 3

**ARGUMENT** ........................................................................................................................... 7

**I.**      Plaintiff's Motion Should Be Denied on Procedural Grounds. ......................................... 7

      **A.**      Only Paragraphs 2 and 4 of the Agreement are enforceable, none of which
are applicable to the relief Plaintiff seeks. .............................................................. 7

      **B.**      Plaintiffs' challenge to Proposed Rule is unripe as the Proposed Rule has no
legal effect and its impact on the future guidance documents is unclear.............. 11

      **C.**      Plaintiff failed to properly invoke paragraph 10 of the Agreement. ..................... 12

      **D.**      Plaintiff is engaging in impermissible claim splitting. ......................................... 13

**II.**     Plaintiff's Motion Should Be Denied Because the Proposed Rule Does Not Hamper
the Timely and Accurate Delivery of Election Mail. ........................................................ 15

**CONCLUSION** .................................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Bristol-Myers Co. v. F.T.C.*,
424 F.2d 935 (D.C. Cir. 1970)...................................................................................... 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...................................................................................................... 12

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
710 F.2d 842 (D.C. Cir. 1983)................................................................................ 11, 12

*DSCC v. Trump*,
No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026)........................... 1, 11, 14

*FDIC v. Bank of Am., N.A.*,
783 F. Supp. 3d 1 (D.D.C. 2025) .................................................................................. 11

*In re Bluewater Network*,
234 F.3d 1305 (D.C. Cir. 2000)..................................................................................... 11

*In re Murray Energy Corp.*,
788 F.3d 330 (D.C. Cir. 2015)....................................................................................... 11

*Keepseagle v. Vilsack*,
815 F.3d 28, 33 (D.C. Cir. 2016).................................................................................. 10

*NAACP v. Trump*,
No. 26-cv-1151 (D.D.C. Apr. 3, 2026) ................................................................. 5, 6, 11, 13, 14

*Pigford v. Veneman*,
292 F.3d 918 (D.C. Cir. 2002)....................................................................................... 10

*Pigford v. Vilsack*,
777 F.3d 509 (D.C. Cir. 2015)......................................................................................... 9

*Zerilli v. Evening News Association*,
628 F.2d 217, 222 (D.C. Cir. 1980) .............................................................................. 14

**CONSTITUTION**

U.S. Const. art. III, § 2 ................................................................................................... 11

**STATUTES**

Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), P.L. 99-410, 52 U.S.C. §§ 20301–20311, 39 U.S.C. § 3406, 18 U.S.C. §§ 608–609 ...................................................... 1

**REGULATIONS**

*Ballot Mail for Federal Elections*, 91 Fed. Reg. 32,915 (June 2, 2026) ..................................................................... 6, 7, 15, 16, 17

*Ensuring Citizenship Verification and Integrity in Federal Elections*, ("Order") Exec. Order No. 14,399, 91 Fed. Reg. 17,125 (Mar. 31, 2026)......................................... *passim*

**OTHER AUTHORITIES**

BallotTrax, *Tracking the Vote: Insights and Analysis from the 2020 Election* 1 (2021), https://www.nass.org/sites/default/files/2021-01/ballottrax-white-paper-nass-winter21.pdf... 15

D.C. Bd. of Elections, *Frequently Asked Questions*, https://www.dcboe.org/faqs/early-voting-and-election-day (last visited June 10, 2026)......... 15

*Vote-by-Mail Envelope Design for California*, https://elections.cdn.sos.ca.gov/vote-by-mail/pdf/guidance.pdf............................................... 15

**INTRODUCTION**

Plaintiff and Defendants entered into a settlement agreement in December 2021 ("Agreement") that, in relevant part, requires the United States Postal Service ("USPS" or "Postal Service") to publicly disclose its policies regarding the delivery of election mail applicable to the 2026 general election no later than October 1, 2026.  On March 31, 2026, President Trump issued Executive Order 14,399.  Section 3 of the Executive Order directs USPS to initiate a notice of proposed rulemaking ("Proposed Rule" or "NPRM") regarding ballot mail for Federal elections, which USPS did in early June.  The NPRM, if ultimately adopted in its current form into a final rule, would require state and local election officials to use envelopes that meet certain design requirements, such as including trackable barcodes and the Election Mail logo, to transmit ballots for Federal elections and would also require those officials, or their authorized designees, to provide a list to USPS of voters who are mailed ballots for Federal non-primary elections.  State and local election officials would maintain full control over who they send ballots to.  Under the proposal, they merely would need to provide to the Postal Service the names and addresses of those individuals along with barcode information on the outgoing and return ballot envelopes they prepared.[1]

Plaintiff challenged the Executive Order immediately after it was issued, and Judge Nichols recently denied their motion for a preliminary injunction.  *See DSCC v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026).  Plaintiff now changes tack, seeking to challenge the NPRM—which, of course, itself has no legal effect—as violative of the 2021 Agreement,

---

[1] The USPS does not propose to apply those standards to ballots subject to the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), P.L. 99-410, 52 U.S.C. §§ 20301–20311, 39 U.S.C. § 3406, 18 U.S.C. §§ 608–609.

and seeking an injunction enjoining the implementation of the NPRM into a final rule. This challenge fails many times over.

First, it is far beyond the scope of the Agreement. As of this date, the Agreement explicitly only provides for continuing court jurisdiction to enforce the obligations set out in two paragraphs: Paragraph 2, which requires the Postal Service to post guidance documents applicable to the general election by October 1, 2026, and Paragraph 4, which requires the Postal Service to hold an outreach meeting with Plaintiff in August or September 2026. The Agreement's enforceable provisions simply do not dictate the content of the Postal Service's guidance documents—just the opposite, it makes clear that the "Postal Service retains discretion over the . . . substantive contents of any such document." Agreement ¶ 2. While there is a separate provision of the Agreement that says that the guidance documents shall "reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail," that provision is in Paragraph 3 of the Agreement—a paragraph this Court lacks jurisdiction to enforce. What's more, by its plain terms, nothing in the "Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail in any given year." *Id.* ¶ 6(b).

Second, even if the Agreement did impose an enforceable, substantive restriction on the content of any Postal Service guidance, any challenge is doubly premature. By its terms, the Postal Service is only obligated to issue guidance documents for the 2026 general election by October 1, 2026. That deadline, needless to say, has yet to occur. Nor is it clear what that guidance will ultimately be. The NPRM is just that, a *proposed* rule, and it may change in any number of ways, assuming a final rule is even issued.

Third, even if this dispute is ripe, and even if the substance of the Postal Service's future rulemaking is reviewable, any forthcoming guidance would be consistent with the Agreement. The NPRM requires state and local election officials to visually (through the Election Mail logo) and electronically (through the intelligent mail barcodes) identify ballots for Federal elections as ballots. This will allow the Postal Service to track and expedite delivery of ballots—including through the use of Extraordinary Measures in the few days before the election, as the NPRM explicitly acknowledges. Such requirements *promote* the "monitoring and timely delivery of Election Mail"; they do not frustrate it. And while the Postal Service has proposed requiring state and local election officials to identify the names and addresses of the persons to whom they send ballots and to provide the barcodes for the ballot envelopes, requiring this information—which officials already, by definition, have—would not compromise the lawful delivery of any mail.

Whatever Plaintiff's concerns about the Proposed Rule, the Agreement is not the proper vehicle to address those concerns. Indeed, as Plaintiff acknowledges, Plaintiff is already engaged in separate litigation against the Postal Service regarding enjoining Section 3 of Executive Order 14,399, which directs the Postmaster General to initiate the NPRM. This Court should not endorse Plaintiff's attempt to split its claims and bootstrap this litigation as another vehicle to mount a premature and unavailing challenge to the USPS rulemaking.

In short, on both procedural and substantive grounds, Plaintiff's motion to enforce should be denied.

## **BACKGROUND**

On December 17, 2021, Plaintiff and Defendants ("the Parties") filed a Stipulation of Settlement and Proposed Order, Stipulation and Agreement (ECF No. 170), which this Court incorporated in its final order, Minute Order (Dec. 20, 2021).

The Agreement includes three judicially enforceable provisions, only two of which remain relevant today. *See* Agreement ¶ 10 ("If the NAACP believes that the Postal Service has violated the terms of paragraphs 2, 4, or 5 of this Agreement, it may file a motion to enforce or for other relief based on that violation."); *see also* Stipulation of Settlement and Proposed Order ¶ 2 ("The Court shall have jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement, subject to the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and 10 of the Settlement Agreement, which are incorporated into this Stipulation and Order as if fully set forth.").

Paragraph 2 of the Agreement requires the Postal Service to "post publicly on its website copies of officially issued National Guidance Documents related to Election Mail." Agreement ¶ 2. "National Guidance Documents" refers to "official materials issued by Postal Service Headquarters that will reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle taking place every two years." *Id.* ¶ 1. "Election Mail" is "any item mailed to or from authorized election officials that enables citizens to participate in the voting process—including ballots, voter registration cards, absentee voting applications, and polling place notifications." *Id.* Paragraph 2 requires the public posting of National Guidance Documents applicable to the "federal general election" no later than "October 1 of each election year." *Id.* ¶ 2. This paragraph similarly makes clear that "[t]he Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in Paragraphs 3 and 10 of this agreement." *Id.* Paragraph 3—which is not judicially enforceable— states that in 2026, "the guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail." *Id.* ¶ 3.

Paragraph 4 requires USPS to host two "outreach meetings" with Plaintiff on election years. *Id.* ¶ 4.  Paragraph 5 required USPS to provide "service performance scores" to Plaintiff in the six weeks leading up to and one week following the general elections in 2022 and 2024.  *Id.* ¶ 5.  By the terms of the Agreement, any obligation under paragraph 5 has expired.  *Id.*

On March 31, 2026, President Trump issued Executive Order 14,399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17,125 (Mar. 31, 2026) ("Order"). The Order directs USPS "to initiate a proposed rulemaking" with regard to ballot mail for Federal elections to conform to certain design requirements and to develop procedures for individuals to be enrolled with USPS for inclusion on "State-specific Mail-In and Absentee Participation List[s]." Order § 3.  Under the terms of the Order, those lists would be distinct from the State Citizenship Lists contemplated by Section 2(a).  *Id.* § 2(a).

The Order directs the Postal Service to begin the proposed rulemaking "within 60 days of" the Order.  *Id.* § 3(b).  The Order further states that "[a]ny final rule" that results from this rulemaking "shall be issued no later than 120 days from the date" of the Order, which is July 29, 2026. *Id.* § 3(d).  The Order also identifies some provisions for inclusion in the notice of proposed rulemaking, *id.* § 3(b)—though it does not say anything about whether any or all of those provisions should also appear in any final rule, nor whether a final rule must be issued at all.

On April 3, 2026, Plaintiff[2] filed suit in *NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1.  In that case, Plaintiff challenges Sections 2(a), 3(b), 4(a), and 4(c) of the Order

---

[2] That lawsuit was brought by the National Association for the Advancement of Colored People (Plaintiff), Common Cause, the Common Cause Education Fund, Black Voters Matter Fund, Inc., and BVM Capacity Building Institute, Inc. against President Trump, the Executive Office of the President, DOJ, the Postal Service, the Postal Service Board of Governors, DHS, USCIS, SSA, the Department of Commerce, and various department and agency heads in their official capacities.  *NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1, Compl. ¶¶ 17-50.

under six counts, invoking *ultra vires* review, the separation of powers, the First and Fifth Amendments, statutory-authority claims relating to the Postal Service, and the Administrative Procedure Act. *Id.* ¶¶ 214-327 and at 67-68 (Prayer for Relief). Although Plaintiff in that suit challenges Section 3(b) of the Order, which directs USPS to issue the Proposed Rule, Plaintiff never invokes the Agreement in that Complaint. *See NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1. Nor did Plaintiff seek to relate its new lawsuit to this one. *Id.*

On June 2, 2026, USPS published a NPRM. *See Ballot Mail for Federal Elections*, 91 Fed. Reg. 32,915 (June 2, 2026). The NPRM invites public comments until July 2, 2026. *Id.* Among other things, the NPRM (if finalized in that form) would "identify new standards" for "envelope design" for Federal Ballot Mail, including "the use of the official Election Mail logo, automation compatibility," Intelligent Mail barcode placement, and "mailpiece design review." *Id.* at 32,915-16. The Proposed Rule would also establish a process for creating a "Mail-In and Absentee Participation List" whereby states would notify USPS of the individuals to whom it is sending mail-in or absentee ballots for Federal elections, along with address information and barcodes for the outbound and return envelopes, thus helping to facilitate the tracking of ballots and related law-enforcement efforts pursuant to existing Federal law. *Id.* at 32,916. Importantly, "states would retain full control over who would (or would not) be able to vote by mail in federal elections within each state, as states would control enrollment with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List." *Id.* In addition, the Proposed Rule would establish a verification procedure in which, when outbound ballots are presented to the Postal Service for mailing, the Postal Service would review the barcodes on those ballot envelopes to confirm that the ballots are being sent to individuals who have been enrolled for inclusion on the Mail-In and Absentee Participation List, and would refuse to accept noncompliant mailings. *Id.* at 32,916,

32,918.  Here too, however, the "Postal Service would not verify whether individuals should or should not be included on a State's Mail-In and Absentee Participation List. States will retain full control over the content of that list."  *Id.* at 32,916.

On June 3, 2026, just one day after USPS's publication of the NPRM in the Federal Register, Plaintiff filed its motion to enforce compliance with the Agreement and court order ("Plf.'s Mot. to Enforce").  *See* ECF No. 171.

## **ARGUMENT**

Plaintiff's motion should be denied for several procedural and substantive reasons, each of which independently warrants denial.

I.    **PLAINTIFF'S MOTION SHOULD BE DENIED ON PROCEDURAL GROUNDS.**

   **A.  Only Paragraphs 2 and 4 of the Agreement are enforceable, none of which are applicable to the relief Plaintiff seeks.**

Plaintiff's motion fundamentally fails because the Agreement is only judicially enforceable as to paragraphs 2 and 4.  Agreement ¶ 10 ("If the NAACP believes that the Postal Service has violated the terms of paragraphs 2 [or 4] of this Agreement, it may file a motion to enforce or for other relief based on that violation."); *id*. ¶ 6 ("The Parties agree that the court will not retain jurisdiction over other parts of this Agreement, and they agree not to bring any motion to enforce any provision other than paragraphs 2 [and 4].").[3]  Those two paragraphs have nothing to do with the relief Plaintiff seeks.

---

[3] Paragraph 5 of the Agreement states that USPS will provide to Plaintiff "weekly First-Class Mail and Marketing Mail service performance scores for the 6 weeks before and 1 week following [] national general election[s]." Agreement ¶ 5. Unlike ¶¶ 2 and 4, USPS's obligations in ¶ 5 are limited to "November 2022 and 2024." *Id.*  There can be no continued enforcement of ¶ 5, since its provisions have already expired.  Even if it were still operative, ¶ 5 is limited to providing Plaintiff with USPS service performance scores in the six weeks leading up to the general election in November and in the one week following the general election.

Paragraph 2 of the Agreement concerns USPS publicly posting National Guidance Documents related to Election Mail on its website. Agreement ¶ 2. Specifically, for 2022, 2024, 2026, and 2028, USPS committed to publicly posting National Guidance Documents "applicable to federal primary elections no later than February 1 of each election year" and "applicable to the federal general election no later than October 1 of each election year." *Id.* As defined in paragraph 1, National Guidance Documents are certain "handbooks, regulations, and/or memoranda focused on Election Mail" reflecting "the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and delivery of Election Mail." *Id.* ¶ 1. In sum, Paragraph 2 is an informational obligation for USPS to publicly post practices and policies. It is an obligation to make certain practices and policies, *i.e.*, information, publicly known. Enforcement of Paragraph 2 is thus limited to requiring USPS to continue to post on its website the handbooks, regulations, and/or memoranda pertaining to Election Mail, which USPS has done and continues to do. Indeed, Paragraph 2 specifically states that "[t]he Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement." *Id.*

Paragraph 4 of the Agreement requires certain outreach meetings between the Plaintiff and USPS. Agreement ¶ 4. Specifically, USPS must host two meetings with Plaintiff in 2022, 2024, 2026, and 2028, one no later than April and the other in August or September of those years. *Id.* These meetings are "intended to be cooperative discussions" allowing participating parties to "ask and answer questions" and "discuss" certain topics, such as "Information about Election Mail performance," "Operational efforts (e.g., training, outreach, processes)," and "Planned policies and extraordinary measures." *Id.* Similar to paragraph 2, these paragraph 4 obligations are informational only. USPS is required to host outreach meetings and provide information to Plaintiff, but

there is no suggestion that Plaintiff would have oversight over USPS's performance and operational efforts. Just the opposite, in fact. *See id.* ¶ 4(b) ("With respect to the obligations described in paragraph 4, only the failure to hold the meetings specified in subparagraph 4.a will be enforceable pursuant to Paragraph 10 of this Agreement."). Enforcement of Paragraph 4 is thus limited to requiring USPS to continue hosting these election year meetings, which USPS has done and continues to do.

Plaintiff's desired declaratory and injunctive relief as to the Proposed Rule is thus incompatible with the terms of the Agreement. Nothing in the enforceable paragraphs of the Agreement empowers Plaintiff to seek to enjoin implementation of USPS's Proposed Rule. This Court's jurisdiction to enforce the agreement is limited solely to paragraphs 2 and 4, which impose informational obligations on USPS in the public posting of its National Guidance Documents and in hosting meetings with Plaintiffs, which USPS has and continues to faithfully uphold.

Instead, Plaintiff appears to be trying to enforce one statement in Paragraph **3** of the Agreement asserting that "for 2024, 2026, and 2028, the guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail." *Id.* ¶ 3(b). *See* Plf.'s Mot. to Enforce at 11 (relying upon Paragraph 3). But this Court—explicitly— lacks jurisdiction to enforce Paragraph 3. *See id.* ¶ 6(a) ("The Parties agree that the court will not retain jurisdiction over other parts of this Agreement, and they agree not to bring any motion to enforce any provision other than paragraphs 2 [and 4]."). Nor can the fact that Paragraph 2 references Paragraph 3 make Paragraph 3 itself enforceable—the Agreement is explicit that only Paragraph 2 may be judicially enforced. *See Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015) ("Even where, as here, the Consent Decree does retain jurisdiction in the District Court to enforce its terms, the court still lacks a 'free-ranging 'ancillary' jurisdiction,' and is limited by the *explicit*

- 9 -

*terms* of the parties' agreement.") (citing *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002)) (emphasis added); *Keepseagle v. Vilsack*, 815 F.3d 28, 33 (D.C. Cir. 2016) (holding that district courts are "'constrained by the terms of the decree and related order.'") (quoting *Pigford*, 292 F.3d at 924).

Indeed, Plaintiff's proposed reading—that the Court has general jurisdiction to determine whether USPS's efforts "prioritize monitoring and timely delivery of Election Mail" is inconsistent with the repeated statements throughout the Agreement that the substance of USPS's delivery operations are outside the scope of the Agreement. *See* Agreement ¶ 2 ("The Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted"); ¶ 6(b) ("The Stipulation will specify that nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail."). Such careful restrictions would be rendered a nullity under Plaintiff's reading. *See Keepseagle*, 815 F.3d at 35 (rejecting plaintiff's argument in that case to "write the finality provision out of the Agreement almost entirely" by an expansive interpretation of that agreement that would "run counter to the intent of the parties" in agreeing to "explicit terms circumscribing the Court's jurisdiction").

To the extent Plaintiff attempts to stretch the Court's limited jurisdiction to enforce paragraphs 2 and 4 of the Agreement to now encompass the Proposed Rule, such attempts are without merit. Even if Plaintiff were correct that the Proposed Rule would hamper the effective monitoring and timely delivery of Election Mail, Plaintiff has no remedy in paragraphs 2 and 4 of the Agreement to seek declaratory or injunctive relief as to the Proposed Rule. Under these paragraphs of the Agreement, Plaintiff is limited only to seeking relief (and the Court only has jurisdiction to

provide relief) if (1) USPS no longer timely and publicly posted National Guidance Documents in October of this year or (2) if USPS no longer hosted outreach meetings with Plaintiff. Neither is the case here.

**B. Plaintiff's challenge to Proposed Rule is unripe as the Proposed Rule has no legal effect and its impact on the future guidance documents is unclear.**

Even if the Agreement is enforceable against the substance of the future guidance documents, such a challenge is unripe. The Proposed Rule is currently without legal effect, may never become a final rule, or may result in a final rule in a form that materially differs from the current Proposed Rule. *See In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (holding that courts "do not have authority to review proposed rules."); *In re Bluewater Network*, 234 F.3d 1305, 1313 (D.C. Cir. 2000) ("[A]n agency's pronouncement of its intent to defer or to engage in future rulemaking generally does not constitute final agency action reviewable by this court.") (citation omitted); *FDIC v. Bank of Am., N.A.*, 783 F. Supp. 3d 1, 24 (D.D.C. 2025) ("[P]roposed rules are not 'final agency actions' that this court has authority to review."). After all, "a proposed rule is just a proposal." *In re Murray Energy*, 788 F.3d at 334. Federal judicial intervention at this time would merely result in an advisory opinion as to whether the Proposed Rule is in keeping with the Agreement, in violation of Article III's requirement that federal courts resolve only "cases" and "controversies." U.S. Const. art. III, § 2.

Plaintiff's ripeness problem is explained more fully in Judge Nichols' Memorandum Opinion (denying Plaintiff's and others' motions for preliminary injunction in the ongoing *NAACP v. Trump* litigation) in which he explained, "'the issuance of a notice of proposed rulemaking, or other preliminary proceedings undertaken to promote a proposed rule, often will not be ripe for review because the rule may or may not be adopted or enforced.'" *DSCC v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 1487833 at *10 (D.D.C. May 28, 2026) (quoting *Ctr. for Auto Safety v.*

*Nat'l Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983)).  That is because any injury Plaintiff complains of "depends on a series of contingencies . . . what changes occur through notice and comment, whether a final rule issues, and how that final rule affects" Plaintiff.  *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013)).  It is "not until such actions are taken that [Plaintiff's] claims might be ripe for judicial review." *Id.* at *12 (also citing *Bristol-Myers Co. v. F.T.C.*, 424 F.2d 935, 940 (D.C. Cir. 1970) for the proposition that "[c]hallenging an agency's *proposed* rule was 'not yet ripe for adjudication.'") (emphasis in original).

Those issues are even more acute here.  Paragraph 2 of the Agreement imposes only a requirement to issue guidance documents by October 1, 2026.  Agreement ¶ 2.  That, of course, has yet to happen.  And because any final rule that may (or may not) be implemented has yet to be issued (if at all), and the guidance documents that would have to be revised to reflect that rule (if it is issued) need not be promulgated for nearly four months, this dispute is doubly unripe.

### C.  Plaintiff failed to properly invoke paragraph 10 of the Agreement.

Prior to filing a motion to enforce the Agreement, paragraph 10 of the Agreement requires Plaintiff to "specify in writing to the Postal Service the alleged violation together with all evidence supporting such alleged violation and will provide the Postal Service at least 5 days' notice to investigate the allegations and, if appropriate, to cure the violation." Agreement ¶ 10.  Plaintiff failed to do so.  That independently requires dismissal of the present motion.

Plaintiff filed its motion to enforce on June 3, 2026, requesting declaratory and injunctive relief as to the Proposed Rule, which Plaintiff acknowledges was only published in the Federal Register on June 2, 2026.  *See* Plf.'s Mot. to Enforce at 2.

Five days did not pass between the publication of the Proposed Rule in the Federal Register on June 2, 2026 and Plaintiff's motion, ECF No. 171, which was filed on June 3, 2026.  Therefore,

Plaintiff has not provided the Postal Service "at least 5 days' notice" as required in Agreement ¶ 10 in order to bring a motion to enforce.

In its motion, Plaintiff states that it has satisfied its "meet-and-confer obligation of paragraph 10 of the Agreement" by reaching out to counsel for USPS on April 2 and again on April 16. Plf.'s Mot. to Enforce at 6. But this motion is about the Proposed Rule. On both those dates, USPS was simply in receipt of Executive Order 14,399 and had not yet issued any proposed rule that USPS could investigate and cure, since the Proposed Rule was only issued on June 2, 2026. Because Plaintiff's requested relief is for declaratory and injunctive relief as to the Proposed Rule (*see* Plf.'s Mot. to Enforce at 2), Plaintiff has failed to meet its paragraph 10 obligations to "specify in writing the alleged violation" and "provide the Postal Service at least 5 days' notice to" investigate and cure. Agreement ¶ 10. And Plaintiff cannot bootstrap conferral about one issue (the Executive Order) into an adequate conferral about the issue it actually challenges here, the NPRM. Plaintiff's failure is decisive because this Court's continuing *jurisdiction* over this matter extends only to enforcement of ¶¶ 2, 4, and 5 of the Agreement, "subject to the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and **10**." Stipulation of Settlement & Prop. Order, ECF No. 170 ¶ 2 (emphasis added). Since Plaintiff has failed to meet its obligations under Agreement ¶ 10, this Court is without jurisdiction to consider this motion and should also deny it for this reason alone.

### D. Plaintiff is engaging in impermissible claim splitting.

Even if the Court had jurisdiction to grant Plaintiff its desired declaratory and injunctive relief as to the Proposed Rule through enforcement of the Agreement, Plaintiff is already seeking relief in parallel litigation that Plaintiff is pursuing against USPS. *See NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1. Plaintiff's attempt at claim splitting should not be condoned by this Court. To the extent that Plaintiff can invoke the Agreement to pursue its desired

- 13 -

relief, Plaintiff should do so (if at all) as part of the ongoing *NAACP v. Trump* litigation before Judge Nichols.

In *Zerilli v. Evening News Association*, the D.C. Circuit affirmed the district court's dismissal of a *Bivens* claim brought by a plaintiff, "on the ground that 'the count is precisely the same as a count pending in a related case.'" 628 F.2d 217, 222 (D.C. Cir. 1980) (citation omitted). *Zerilli* held that "a plaintiff has 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" 628 F.2d at 222 (citation omitted). Yet that is exactly what Plaintiff attempts to do here.

As Plaintiff concedes, Plaintiff is maintaining two separate actions, for in addition to its motion in this case, "Plaintiff has separately challenged sections of the Executive Order in *NAACP v. Trump*, No. 1:26-cv-01151-CJN (D.D.C.), consolidated with *DSCC v. Trump*, No. 1:26-cv-01114-CJN (D.D.C.) (lead case)." Plf.'s Mot. to Enforce at 6, n.2. Plaintiff's challenge in *NAACP v. Trump* involves the same subject matter, as it challenges § 3(b) of Executive Order 14,399, which directs the Postal Service to issue the Proposed Rule that Plaintiff complains of in the instant action. *See NAACP v. Trump*, No. 26-cv-1151, ECF No. 1, Compl. at 67-68 (Prayer for Relief ¶¶ 1-4, challenging Executive Order § 3(b)); Order § 3(b) (". . . the Postmaster General is hereby directed to initiate a proposed rulemaking . . ."). Both of Plaintiff's actions are in the same court, namely the United States District Court for the District of Columbia. Finally, both of Plaintiff's actions are against the same Defendant—the Postal Service. *See NAACP v. Trump*, No. 26-cv-1151, ECF No. 1, Compl. ¶ 43 (naming "U.S. Postal Service" as a defendant).

As Plaintiff meets all *Zerilli* criteria for claim splitting, Plaintiff's motion to enforce should be rejected.

- 14 -

## II.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THE PROPOSED RULE DOES NOT HAMPER THE TIMELY AND ACCURATE DELIVERY OF ELECTION MAIL.

Even if Plaintiff could overcome all procedural impediments, Plaintiff's motion would still be without merit.  The Proposed Rule, if adopted without alteration as a final rule and then incorporated into forthcoming guidance documents, would only facilitate USPS's timely and reliable delivery of Election Mail, which advances, rather than undermines, the spirit of the Agreement.

The Proposed Rule's provisions requiring the Election Mail logo would enhance rather than hamper visibility of Election Mail. *See* 91 Fed. Reg. 32,917-18. The Proposed Rule's provisions regarding barcodes on envelopes containing outgoing and return ballots for Federal elections would facilitate tracking of individual mailpieces as barcodes are scanned on the Postal Service's mail processing equipment. *Id.* at 32,916.  Indeed, Plaintiff focuses on measures designed to track service delivery scores for ballots. *See id.* at 5 (referencing ballots with 90% delivery scores).  But such measurement depends on USPS being able to identify ballots in the mail stream electronically (through a barcode).  Similarly, Plaintiff's motion repeatedly and favorably mentions "Extraordinary Measures," which are USPS operational practices designed to expedite ballots in the final days before an election. *See* Plf.'s Mot. to Enforce at 5, 7.  Those measures largely hinge on USPS being able to identify ballots as such through the Election Mail logo. Mandating these current best practice recommendations would assist with the identification (and thus delivery) of ballots.[4]

---

[4] Indeed, many jurisdictions already implement similar standards to those set forth in the Proposed Rule related to mail preparation consistent with measures that the Postal Service has long recommended.  *See, e.g.*, *Vote-by-Mail Envelope Design for California*, available at: https://elections.cdn.sos.ca.gov/vote-by-mail/pdf/guidance.pdf (illustrating on p. 10 envelope designs that feature the USPS Election Mail logo, referring to USPS Pub 361, and Intelligent Mail Barcode); D.C. Bd. of Elections, *Frequently Asked Questions*, https://www.dcboe.org/faqs/early-voting-and-election-day (last visited June 10, 2026) ("Voters who return their mail ballot or Absentee Ballot using USPS mail or Mail Ballot Drop Box voters can track the status of their ballot by using our BallotTrax tracker."); *see also* BallotTrax, *Tracking the Vote: Insights and Analysis*

The Proposed Rule (if adopted as a final rule without modification) would thus facilitate the timely and reliable delivery of Election Mail.  Indeed, the NPRM specifically acknowledges that the Postal Service is planning to implement Extraordinary Measures in 2026.  *See* 91 Fed. Reg. at 32,917 ("[T]he Postal Service will, consistent with prior elections, continue to perform extraordinary measures to deliver completed ballots, and, as previously announced, will issue further guidance on such extraordinary measures prior to the general election on November 3, 2026.").

Plaintiff's arguments to the contrary, especially about "underinclusive" lists,[5] misapprehend the Order and the Proposed Rule.  The Postal Service is proposing to require state and local election officials, or their designees, to submit lists of the names of people to whom they are mailing ballots—information fully within their ken.  The Postal Service will not independently determine who should be enrolled on a State-Specific Mail-In and Absentee Participation List or edit those lists.  As the Proposed Rule clearly indicates, each state (and not USPS) would retain full

---

*from the 2020 Election* 1 (2021), https://www.nass.org/sites/default/files/2021-01/ballottrax-white-paper-nass-winter21.pdf ("Each ballot's envelope is printed with a unique intelligent mail barcode that delivers complete visibility with respect to the ballot's location and status . . . .").

[5] Plaintiff's references to counsel for the government acknowledging that lists might be "underinclusive" (*see* Plf.'s Mot. to Enforce at 10, n.5) are misplaced. As is clear from the transcript, counsel for the government was referring to the "State Citizenship Lists" contemplated by § 2 of the Order, not the "Mail-In and Absentee Participation Lists" contemplated by § 3 of the Order and included in the Proposed Rule. *See* 91 Fed. Reg. 32,918 ("State-Specific Mail-In and Absentee Participation Lists."). Unlike the State Citizenship Lists (which may be underinclusive), the Mail-In and Absentee Participation Lists will consist of "the name and address of each individual . . . who was enrolled" by that state's election officials. *Id.* Or, in other words, the list of people to whom the state and local election officials mail ballots. Therefore, there is no comparable danger, at least at present, of an underinclusive list, since the list is simply the list of people that were mailed ballots. And as the NPRM itself makes clear, that list remains entirely within the control of State and Local officials. *See id.* at 32,916 (USPS "would not verify whether individuals should or should not be included on a State's Mail-In and Absentee Participation List. States will retain full control over the content of that list."); *see also id.* ("The Postal Service would not change the information provided by the state when compiling the lists.").

control over which voters will be enrolled on its State-Specific Mail-In and Absentee Participation List and therefore which voters will receive (or not receive) mail-in or absentee ballots. *See id.* at 32,916. States have the ability to add voters to their State-Specific Mail-In and Absentee Participation Lists "until the last day that ballots may be mailed to individuals under state law." *See id.* at 32,918. Therefore, there are no plausible concerns, certainly at this stage, that the Proposed Rule would negatively impact USPS's ability to timely and reliably deliver Election Mail. Rather, this provision would, again, assist USPS in better being able to track (and thus deliver) such important mail.

## **CONCLUSION**

Respectfully and for the foregoing reasons, Plaintiff's Motion to Enforce should be denied.

Dated: June 11, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

JOSEPH E. BORSON
*Assistant Branch Director*

/s/ *Esam K. Al-Shareffi*
STEPHEN M. PEZZI
D.C. Bar. No. 995500
 *Chief Litigation Counsel*
ESAM K. AL-SHAREFFI
D.C. Bar No. 90010174
 *Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 598-7367
E-mail: esam.k.al-shareffi@usdoj.gov

*Counsel for Defendants*

- 18 -