**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

National Association for the Advancement of
Colored People,

     *Plaintiff*,

v.

United States Postal Service, et al.,

     *Defendants*.

Civil Action No. 20-cv-2295 (EGS)

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE COMPLIANCE**
**WITH SETTLEMENT AGREEMENT AND COURT ORDER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................................II

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    I.    USPS's Proposed Rule will violate the Settlement Agreement by impeding delivery of mail-in ballots........................................................................................................................ 3

        A.    Plaintiff seeks to enforce paragraph 2 of the Settlement Agreement, which requires USPS to implement policies prioritizing the timely delivery of ballots......................... 3

        B.    The Proposed Rule violates the Settlement Agreement.................................................. 6

    II.    Plaintiff's motion is ripe...................................................................................................... 7

    III.    Plaintiff satisfied paragraph 10's meet-and-confer requirement. ................................ 13

    IV.    USPS's claim-splitting theory is incorrect. ..................................................................... 14

CONCLUSION........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Abbott Lab'ys v. Gardner*,
387 U.S. 136 (1967) ...............................................................................................8

*Advanced Mgmt. Tech., Inc. v. FAA*,
211 F.3d 633 (D.C. Cir. 2000) ...............................................................................8

*Apotex, Inc. v. FDA*,
393 F.3d 210 (D.C. Cir. 2004) .............................................................................14

*Batterton v. Francis*,
432 U.S. 416 (1977) ...............................................................................................5

*California v. Trump*,
No. 1:26-cv-11581-IT (D. Mass. Apr. 23, 2026) .............................................7, 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .............................................................................................10

*Darwin Const. Co., Inc. v. United States*,
811 F.2d 593 (Fed. Cir. 1987) ...............................................................................4

*Dep't of Com. v. N.Y.*,
585 U.S. 752 (2019) ...............................................................................................9

*Dep't of Com. v. U.S. House of Reps.*,
525 U.S. 316 (1999) .............................................................................................12

*Drake v. FAA*,
291 F.3d 59 (D.C. Cir. 2002) ...............................................................................14

*DSCC v. Trump*,
No. 1:26-cv-1114, 2026 WL 1487833 (D.D.C. May 28, 2026) ...........................10

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .............................................................................12

*Garcia Ramirez v. ICE*,
812 F. Supp. 3d 86 (D.D.C. 2025) .......................................................................15

*Heartland Hosp. v. Thompson*,
328 F. Supp. 2d 8 (D.D.C. 2004) .........................................................................15

*Hous. Auth. of Slidell v. United States,*
  149 Fed. Cl. 614 (Fed. Cl. 2020) ...................................................................................4

*Hurd v. District of Columbia,*
  864 F.3d 671 (D.C. Cir. 2017) .....................................................................................15

*Int'l Ladies' Garment Workers' Union v. Donovan,*
  733 F.2d 920 (D.C. Cir. 1984) .....................................................................................15

*League of Women Voters v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) .........................................................................................12

*Loper Bright Enterprises v. Raimondo,*
  603 U.S. 369 (2024) .......................................................................................................5

*Marrese v. Am. Acad. of Orthopaedic Surgeons,*
  470 U.S. 373, 382 (1985) .............................................................................................15

*Mass. Bay Transp. Auth. v. United States,*
  129 F.3d 1226 (Fed. Cir. 1997) .....................................................................................6

*Multicultural Media, Telecom & Internet Council v. Federal Commc'ns Comm'n,*
  873 F.3d 932 (D.C. Cir. 2017) .......................................................................................5

*Niedermeier v. Off. of Baucus,*
  153 F. Supp. 2d 23 (D.D.C. 2001) ...............................................................................14

*Obama for Am. v. Husted,*
  697 F.3d 423 (6th Cir. 2012) .......................................................................................12

*Steele v. United States,*
  144 F.4th 316 (D.C. Cir. 2025) ...................................................................................14

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) .......................................................................................................8

*Sweeney v. USPS,*
  159 F.3d 1342 (Fed. Cir. 1997) .....................................................................................8

*United States v. W. Elect. Co., Inc.,*
  907 F.2d 160 (D.C. Cir. 1990) .....................................................................................10

*Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council,*
  857 F.2d 55 (2d Cir. 1988) .......................................................................................9, 11

*Zerilli v. Evening News Ass'n,*
  628 F.2d 217 (D.C. Cir. 1980) .....................................................................................16

**Statute**

iii

5 U.S.C. § 704.................................................................................................................9

**Other Authority**

Tierney Sneed, Jeremy Herb, & Gabe Cohen,
*Postal Service Won't Deliver Mail Ballots for States That Don't Hand Over Voter Lists,*
*Under Plan for Trump Directive*, CNN (June 10, 2026),
https://www.cnn.com/2026/06/10/politics/postal-service-deliver-mail-in-ballots ...................9

**INTRODUCTION**

In December 2021, Defendant United States Postal Service ("USPS") made a judicially enforceable promise to resolve litigation arising from changes to procedure that it made in the summer of 2020—changes that caused delivery delays and threatened the timely delivery of mail-in ballots for the 2020 general election. In a Settlement Agreement that this Court incorporated in relevant part into an order and retained jurisdiction to enforce, USPS committed to maintain and publicly disseminate formal nationwide "policies for prioritizing the monitoring and timely delivery of Election Mail," including "ballots," in every national election through 2028. Stipulation of Settlement & Proposed Order at 1–2 (Dec. 17, 2021), Dkt. No. 170 [hereinafter "Agreement"]; Minute Order (Dec. 20, 2021). As recently as February of this year—at a meeting required by the Agreement—USPS reaffirmed that commitment to Plaintiff, orally and in writing, and stated that it had begun robust preparation efforts necessary to honor that obligation. Mot. to Enforce Compliance with Settlement Agreement and Court Order at 13–14 (June 3, 2026), Dkt. No. 171 [hereinafter "Mot."].

On June 1, 2026, USPS issued a Proposed Rule under which USPS would refuse to deliver mail-in ballots for voters who do not appear on certain lists or whose elections officials do not adopt a certain ballot design. Because the Proposed Rule violates enforceable provisions of the parties' Settlement Agreement, Plaintiff National Association for the Advancement of Colored People ("NAACP") moved this Court for an order declaring that standards and procedures set forth in the Proposed Rule would violate the Agreement and enjoining USPS from implementing those standards and procedures.

Defendants' opposition does not dispute that paragraph 2 of the Settlement Agreement includes a judicially enforceable obligation for USPS to disseminate National Guidance

Documents that "reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Response re 171 Mot. at 4 (June 11, 2026), Dkt. No. 175 [hereinafter "Opp."]. And Defendants admit that, notwithstanding this obligation, USPS proposes to "refuse to accept noncompliant mailings" of ballots—that is, ballots mailed by state election officials in envelopes that do not use USPS's preferred ballot design, ballots mailed by state election officials in a state that does not submit a list of voters, and ballots mailed to voters who do not appear on that list. *Id.* at 6. Defendants also do not dispute the evidence that Plaintiff submitted demonstrating that the Proposed Rule is already causing confusion, harming Plaintiff, and jeopardizing the effectiveness of the training and public education that USPS must do throughout the year to honor its commitment to prioritize the timely delivery of ballots. *See* Mot. 13–14. And Defendants fail to identify any precedent that would support USPS's refusal to deliver properly addressed, stamped, nonhazardous mail from a government entity.

Instead, Defendants primarily argue that this Court should not reach the merits: They argue at length that this Court lacks authority to enforce paragraph 3 of the Settlement Agreement, but Plaintiff's motion is premised on paragraph 2, which all parties agree is enforceable. They argue that the dispute is unripe—but the pendency of the Proposed Rule is already harming Plaintiff, voters, and state election officials. They complain that Plaintiff failed to abide by a meet-and-confer obligation—but Plaintiff provided written notice of that violation over two months ago, and Defendants claim no surprise, prejudice, or lack of opportunity to cure the violation. And they claim that Plaintiff has split its claim—but this Court is the only action in which the Agreement can be enforced.

2

USPS's Proposed Rule, pursuant to which it would refuse to deliver certain mail-in ballots, is directly contrary to the judicially enforceable commitment that USPS made to prioritize the delivery of mail-in ballots. This Court should therefore grant Plaintiff's motion, declare that the Proposed Rule would violate the Settlement Agreement, and enjoin USPS from implementing the proposed practices and policies.

ARGUMENT

**I.    USPS's Proposed Rule will violate the Settlement Agreement by impeding delivery of mail-in ballots.**

Defendants concede that paragraph 2 of the Settlement Agreement is judicially enforceable; that paragraph 2 requires USPS to disseminate National Guidance Documents that "reflect the Postal Service's formal nationwide Election Mail **practices and policies for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle**," including ballots; and that USPS has now proposed a rule under which it would "refuse to accept" ballots that fail to meet its newly invented criteria for Election Mail. *See* Opp. 4, 6 (emphasis added). These concessions are dispositive because USPS cannot meet its obligation to disseminate documents reflecting practices for "prioritizing the monitoring and timely delivery" of ballots if it refuses to deliver ballots of its choosing. *See* Mot. 9.

In response, Defendants mischaracterize Plaintiff's position and invoke parts of the Settlement Agreement that are irrelevant to the issues before this Court. *See* Opp. 7–11. Defendants' view that the Proposed Rule would be a good approach to delivering ballots, *see id*. at 15–17, does not excuse a clear violation of the parties' Agreement.

**A. Plaintiff seeks to enforce paragraph 2 of the Settlement Agreement, which requires USPS to implement policies prioritizing the timely delivery of ballots.**

Defendants' lead argument is that Plaintiff "appears to be trying to enforce one statement in Paragraph **3** of the Agreement," which, according to Defendants, is not judicially enforceable.

3

*See* Opp. 9. Paragraph 3, however, while not irrelevant, is not the basis of the NAACP's motion. The motion turns on violation of paragraph 2. *See* Mot. 5, 9, 11. And as Defendants agree, paragraph 2 requires USPS to disseminate "National Guidance Documents," which are defined by the Agreement as "official materials … that will reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Opp. 4 (quoting Agreement at 1 & ¶ 2). Thus, USPS's commitment to prioritize the timely delivery of election mail is a necessary element of paragraph 2, not a "separate provision of the Agreement." Opp. 2.

Nonetheless, Defendants contend that paragraph 2 imposes only "an informational obligation for USPS to publicly post practices and policies," and that this Court has no authority to "'determine whether USPS's efforts [to] 'prioritize monitoring and timely delivery of Election Mail'" are consistent with the Agreement. *See* Opp. 8, 10. Those contentions are, once again, foreclosed by the plain language of paragraph 2, which requires that USPS disseminate National Guidance Documents reflecting USPS's policies for "'prioritizing the monitoring and timely delivery of Election Mail.'" Opp. 4. USPS cannot disseminate such documents if its policy allows it to deliver only the subset of Election Mail that it chooses.

Defendants look for support in language in paragraph 2 stating that USPS "retains discretion over . . . the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement." *See* Opp. 8 (quoting ¶ 2). But USPS's discretion must be exercised reasonably, in a manner consistent with the Agreement as a whole. *See, e.g., Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 637 (Fed. Cl. 2020) ("The cases are legion establishing that where a contract affords discretion to the government, 'exercise of that discretion must be fair and reasonable'" (citation modified)); *accord Darwin Const. Co., Inc. v. United States*, 811 F.2d

4

593, 597 (Fed. Cir. 1987); *see also Batterton v. Francis*, 432 U.S. 416, 428 (1977) (stating that "[o]f course" the existence of discretion does not make an agency's authority unlimited); *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 395 (2024) (favorably citing *Batterton* in discussing statutes that confer discretion on agencies); *Multicultural Media, Telecom & Internet Council v. Federal Commc'ns Comm'n*, 873 F.3d 932, 937 (D.C. Cir. 2017) (stating "an agency's exercise of discretion must be . . . reasonable"). Thus, while paragraph 2 confers on USPS discretion with respect to the document's specific contents, it does not confer discretion *not* to prioritize the timely delivery of Election Mail. And reading the Agreement to allow USPS to refuse to deliver certain ballots would far exceed its reasonable exercise of "discretion" because it would be inconsistent with the definition of National Guidance Documents; indeed, it would "defeat the purpose" of the Settlement Agreement. *Batterton*, 432 U.S. at 428.

Defendants also point to the language stating that "nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail." Opp. 10 (quoting ¶ 6(b)). That language, however, supports Plaintiff: It makes clear that USPS has discretion over the "specific measure[s]" it implements in effectuating its enforceable commitment to "prioritize monitoring and timely delivery of Election Mail." It does not suggest that USPS has discretion to disregard that obligation by refusing to deliver certain ballots. Indeed, Defendants' position excises "to undertake any specific measure" from the provision, effectively reading it to say, "nothing in this Agreement requires the Postal Service . . . to prioritize monitoring and timely delivery of Election Mail." That reading violates "a fundamental rule of contract interpretation that the provisions are viewed in the way that gives meaning to all parts of the contract, and that avoids

5

conflict, redundancy, and surplusage among the contract provisions." *Mass. Bay Transp. Auth. v. United States*, 129 F.3d 1226, 1231 (Fed. Cir. 1997).

USPS's position would likewise require this Court to rewrite the portion of paragraph 2 that explicitly states that USPS's exercise of its discretion in undertaking its obligations under that paragraph must take into account paragraphs 3 and 10. *See* Agreement ¶ 2 (USPS "retains discretion over . . . the substantive contents of any such documents posted**, as further clarified in paragraphs 3 and 10 of this Agreement**" (emphasis added)). And, as USPS recognizes, paragraph 3 states that "the guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail." *Id*. ¶ 3, *quoted in* Opp. 9. USPS can defend the Proposed Rule only by reading this language out of the Agreement.

In sum, USPS's obligation under paragraph 2 of the Agreement is not satisfied by posting *anything* that it labels "National Guidance Documents." Instead, paragraph 2 requires that the National Guidance Documents that USPS posts must reflect "practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Agreement 1 (defining National Guidance Documents); *see id*. ¶ 2 (requiring posting of National Guidance Documents).

**B.  The Proposed Rule violates the Settlement Agreement.**

Because the Agreement requires USPS to prioritize the timely delivery of Election Mail, including mail-in ballots, USPS's plan to adopt a rule allowing it to refuse to deliver certain ballots violates the Agreement. Although Defendants defend the benefits of the Proposed Rule's envelope logos and barcodes, *see* Opp. 15–16, Plaintiff's motion does not challenge use of those tools generally. Rather, it challenges USPS's refusal to deliver ballots if elections officials choose not to use that design. Yet, under the Proposed Rule, USPS "would refuse to accept noncompliant mailings." *See* Opp. 6; 91 Fed. Reg. 32915, 32918 (2026) (provided with Plaintiff's Mot. as Ex.

A). And if a state declines or fails to certify a list requested by USPS, USPS "will not transmit any outbound federal ballot mail to that state's voters." Fed. Reg. at 32918. Refusing to transmit ballots is not "prioritize[ing] . . . timely delivery of Election Mail" and violates the Agreement.

Defendants' refrain that "states would retain full control" over the "State-Specific Mail-in and Absentee Participation List[s]," Opp. 16–17, is no answer. State and county officials have catalogued, under oath, the administrative, financial, and technical obstacles to keeping the lists current within the Proposed Rule's timeframe. *See* Statement of Material Facts L.R. 56.1 re 97 Mot. for Summ. J., *California v. Trump*, No. 1:26-cv-11581-IT (D. Mass. Apr. 23, 2026), Dkt. No. 105 (compiling statements from declarations submitted by election officials from nineteen states and three localities). And if a state—for resources, technology, or policy reasons—cannot or will not certify, the Proposed Rule's penalties fall not on the state but on all of the state's voters, as USPS will refuse to deliver ballots to them.

Defendants' assurance that USPS will continue to deploy Extraordinary Measures for "completed ballots," Opp. 16, underscores the problem. Extraordinary Measures expedite ballots that are already *in* the mail stream, moving from the voter back to the state election office. The Proposed Rule operates one step earlier, determining whether an outbound ballot enters the mail stream *at all*. A ballot that USPS refuses to accept from the state election officials will never reach the voter, who will therefore not have the opportunity to submit a "completed ballot" for USPS to expedite and deliver in time to be counted. A commitment to timely delivery of only the subset of ballots that USPS chooses to accept does not comply with USPS's judicially enforceable commitment to implement policies and practices to timely deliver Election Mail.

## II.    Plaintiff's motion is ripe.

Courts have distinguished between prudential ripeness and constitutional ripeness. Constitutional ripeness often "boil[s] down to the same question" as standing. *Susan B. Anthony*

7

*List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014). Here, USPS does not argue that the NAACP lacks standing to challenge a violation of paragraph 2 of the Settlement Agreement. *See also Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) (stating that standing is assessed at the time the action commences). Indeed, while disagreeing that it has violated the provision, USPS agrees that the NAACP may seek relief through a motion to enforce if "NAACP believes that the Postal Service has violated the terms of paragraph[] 2." Opp. 4 (quoting Agreement ¶ 10).

Prudential ripeness "is best seen in a twofold aspect, requiring [the Court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967); *but see Susan B. Anthony List*, 573 U.S. at 167 (questioning the "continuing vitality of the prudential ripeness doctrine," which appears to be in "tension with . . . the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging" (citation modified)). Both factors support consideration of the merits of the Plaintiff's Motion.

First, as to fitness, Plaintiff's motion, and Defendants' response, are grounded in purely legal questions about how to interpret the Settlement Agreement and whether that Agreement allows USPS to refuse to deliver certain ballots. *See, e.g., Sweeney v. USPS*, 159 F.3d 1342, 1343 (Fed. Cir. 1997) ("Interpretation of a settlement agreement is a question of law[.]"). Defendants emphasize that the Proposed Rule has not been finalized, but nothing in the rulemaking process will affect the proper interpretation of the Settlement Agreement. Moreover, USPS has made clear its intention to follow through on the President's instruction with respect to the Proposed Rule. In a March 31 Executive Order, the President directed USPS to issue a proposed rule within 60 days, a period that ended on a Saturday—and USPS published the proposal the next business day. The Executive Order directed USPS to issue a proposal that included specified requirements as to

8

envelope design for Election Mail, time periods for each state to inform USPS about its intention to use mail-in ballots, provisions regarding unique identifiers, list supplements, and USPS's intention to refuse to deliver mail-in ballots that do not comport with the envelope specifications and/or fail to match with the voter lists—and USPS issued the proposal described by the President. USPS places significant weight on the word "proposed," but this Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. N.Y.*, 585 U.S. 752, 785 (2019) (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.)); *see also* Tierney Sneed, Jeremy Herb, & Gabe Cohen, *Postal Service Won't Deliver Mail Ballots for States That Don't Hand Over Voter Lists, Under Plan for Trump Directive*, CNN (June 10, 2026), https://www.cnn.com/2026/06/10/politics/postal-service-deliver-mail-in-ballots (quoting a White House spokesperson as saying, "The Administration remains confident that the Executive Order will be implemented by the November election, which was always the intent when it was signed.").

Defendants cite cases holding that courts generally lack authority under the Administrative Procedure Act ("APA") to entertain challenges to proposed rules. *See* Opp. 11. Each of those cases, however, turns on the language of the APA, which limits claims under the APA to challenges to "[a]gency action made reviewable by statute and final agency action." 5 U.S.C. § 704. Here, paragraph 10 of the Agreement, which provides for enforceability of specified provisions, sets no "final agency action" limitation; and neither the Plaintiff's first amended complaint, Dkt. No. 149, nor the motion to enforce asserts a claim under the APA. The requirements for pleading a claim under the APA, then, do not impact this Court's authority to reach the merits of a motion to enforce pursuant to paragraph 10. *See also Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 64 (2d Cir. 1988) (finding a claim ripe where the plaintiffs "plausibly suggest how the proposed rule may have a 'real world impact on present affairs'; and under these circumstances,

9

to withhold consideration until the rule is actually adopted might work considerable hardship" (quoting 13A Wright, Miller, & Cooper's *Federal Practice & Procedure* § 3532.1 (3d ed. 2026))); *cf. United States v. W. Elect. Co., Inc.*, 907 F.2d 160, 161 (D.C. Cir. 1990) (affirming district court's declaratory ruling that a party's proposal would violate a consent decree).

Judge Nichols' decision in *DSCC v. Trump*, No. 1:26-cv-1114, 2026 WL 1487833 (D.D.C. May 28, 2026), on which Defendants rely, Opp. 11–12, is likewise inapposite. In that opinion, issued before USPS issued its Proposed Rule, Judge Nichols found that organizations, including Plaintiff, lacked standing to challenge the Executive Order because "several speculative contingencies must occur before Plaintiffs suffer any concrete harm." *Id*. at *10. Here, by contrast, although Defendants argue that USPS has not violated the parties' Settlement Agreement, they do not dispute that Plaintiff has standing to bring a motion to enforce that Agreement when "the NAACP believes that the Postal Service has violated the term of paragraph[] 2." Opp. 4 (quoting Agreement ¶ 10).[1] Moreover, in this case, Plaintiff has offered undisputed evidence, not before Judge Nichols, that the Proposed Rule undermines the year-round preparation that USPS undertakes to timely deliver Election Mail. *See* Mot. 13–14; *see also infra* 11.

Second, as to hardship, Plaintiff's motion explains that USPS's plans to implement procedures that would inevitably deny registered voters access to mail-in ballots require this Court's urgent attention. *See* Mot. 13–14. USPS has itself emphasized the importance of robust

---

[1] Claiming that any injury "depends on a series of contingencies," Defendants cite *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). Here, however, the Plaintiff faces current harm from actions it must take to educate its members about the new proposed requirements for mail-in voting. *See* Decl. of Tyler Sterling for NAACP ¶ 16–21, DSCC v. Trump, No. 1:26-cv-1114-CJN (D.D.C. Apr. 17, 2026), Dkt. No. 54-1 (provided with Plaintiff's Mot. as Ex. F). In addition, recent government court filings showing ongoing coordination and preparation by USPS and other federal agencies to implement the Proposed Rule confirm the "substantial risk" of interference with voting rights faced by Plaintiff and its members. *See* Notices, DSCC v. Trump, No. 1:26-cv-1114-CJN (D.D.C. June 5, 8, 2026), Dkt. Nos. 149–150.

preparations beginning at the beginning of the calendar year—including internal and external trainings, dissemination of educational materials, and testing of processes and procedures—to meet its commitment to prioritize the timely delivery of Election Mail. *See id*. at 13. Thus, USPS's preparation for the 2026 elections began last year, and in February, it issued its 2026–2027 Official Election Mail Guide, "a comprehensive resource designed specifically for Election Officials that choose to utilize the U.S. Mail™ as a secure, efficient, and effective part of their election systems." *See* USPS, 2026–2027 Official Election Mail (Feb. 2026) https://about.usps.com/kits/kit600/kit600_v04-2026_001.htm (stating "we take seriously *our clear and defined role* to process, transport, and deliver the nation's Election Mail, including ballots" (emphasis added)). The proposal to shift USPS's announced procedures so late in the election year is already causing confusion and apprehension among Plaintiff's members and constituents, *see* Decl. of Tyler Sterling. Numerous states and other stakeholders have likewise attested that USPS's proposal is harming their interests. *See, e.g.*, Statement of Material Facts L.R. 56.1 re 97 Mot. for Summ. J. ¶ 30, *California v. Trump*, No. 1:26-cv-11581-IT (D. Mass. Apr. 23, 2026), Dkt. No. 105 (stating that because "States will receive the State Citizenship List no more than 60 days before the General Election, they must plan for and begin this work now" and citing declarations from officials in 19 states and 3 localities); *id*. ¶ 57 (after explaining the extensive work and expenditure of resources that will be required to comply, stating that "states must plan for and begin this work now" and citing declarations from officials in 19 states and 2 localities). This undisputed evidence that the Proposed Rule is already having a "real impact on present day affairs" establishes that Plaintiff's challenge is ripe. *Volvo N. Am.*, 857 F.2d at 64.

USPS's suggestion that this Court wait until the Proposed Rule is finalized in August before hearing a motion to enforce will only exacerbate the harms by creating more confusion,

more work for Plaintiff and others, and greater likelihood of discouraging citizens from voting by mail, even people who otherwise will have difficulty voting. The proximity to the election makes waiting for USPS to finalize its rule infeasible. *See also Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) ("there can be no 'do-over' or redress of a denial of the right to vote after an election"); *League of Women Voters v. Newby*, 838 F.3d 1, 14 (D.C. Cir. 2016) (recognizing "the strong public interest in ensuring that unlawful agency decisionmaking does not strip citizens of the right to vote"); *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012) ("The public interest … favors permitting as many qualified voters to vote as possible.").

Finally, USPS claims that it is not possible to violate paragraph 2 of the Agreement until October 1, 2026, because that paragraph "imposes *only* a requirement to issue guidance documents by October 1." Opp. 12 (emphasis added). To start, that assertion goes to the merits question whether USPS has violated the Settlement Agreement, not to ripeness, and reads out of paragraph 2 the bulk of its content. *See supra* Section I.A. Moreover, a rule that is inconsistent with the obligation to prioritize the timely delivery of Election Mail precludes the posting of such documents, by October 1 or otherwise. Thus, this Court should reject USPS's claim that it can announce that it will no longer timely deliver Election Mail—that it will instead deliver only the subset of Election Mail that it chooses to deliver—but escape accountability until after October 1, when meaningful relief will be extremely difficult at best. *See Dep't of Com. v. U.S. House of Reps.*, 525 U.S. 316, 332 (1999) (finding a challenge to the government's agency plan to use a particular sampling method for the U.S. census to be ripe, where it was "clear that the [Census] Bureau was not going to alter its plan" and "to wait until the census ha[d] been conducted" would "result in extreme—possible irremediable—hardship").

12

### III.    Plaintiff satisfied paragraph 10's meet-and-confer requirement.

Before moving to enforce the Agreement, paragraph 10 requires that Plaintiff "specify in writing to the Postal Service the alleged violation together with all evidence supporting such alleged violation" and provide "at least 5 days' notice to investigate the allegations and, if appropriate, to cure the violation." Agreement ¶ 10. Plaintiff did just that sixty-two days before filing the Motion on April 2. Exhibits A, B; *see* Decl. of Samuel Spital. Plaintiff's initial outreach identified the alleged violation: that "the rulemaking directed by" Section 3 of the Executive Order "would cause USPS to violate the parties' enforceable agreement in this case." Exhibit B at 2. Defendants replied that Plaintiff's concern was "premature" and that USPS was "not in violation of the Settlement Agreement." Exhibit A at 3, 4. In response, Plaintiff renewed its request, asking whether "USPS maintains its commitment to implementing National Guidance Documents reflecting policies and practices to ensure the monitoring and timely delivery of Election Mail, including all ballots issued by state or local officials for the 2026 primaries and general election, and including through the use of Extraordinary Measures that will prioritize the delivery of all ballots issued by state or local officials in the week prior to the 2026 general election[.]" *Id.* at 3. Defendants acknowledged receipt but never substantively responded. *Id.* at 2. Before filing this motion, Plaintiff reached out to confirm Defendants' opposition; Defendants responded that they opposed the motion, while offering "to *further* meet and confer" if helpful. *Id.* at 1 (emphasis added).

Although Defendants do not claim that they were surprised, prejudiced, or deprived of any opportunity to cure, they argue that Plaintiff's motion is premature because notice under paragraph 10 could be given only *after* publication of the Proposed Rule. *See* Opp. 12–13. But the violation that Plaintiff specified in April—that USPS would engage in rulemaking directed by the Executive

13

Order in violation of the Agreement—and the violation described in its motion are one and the same.

In any event, paragraph 10's purpose was fully served. The objective of paragraph 10 is to give USPS an opportunity to investigate, cure, and meet and confer in good faith to attempt to resolve any disagreement. Defendants had written notice of precisely this dispute, and they declined to substantively engage on it. When asked to do so, Defendants would not even affirm their commitment to comply with the Agreement. That Defendants oppose this Motion is the surest proof that waiting to file the Motion until June 8 instead of June 3 would have been wholly futile. Four additional days would have neither narrowed the parties' dispute nor changed Defendants' position. *See also Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (excusing a party's failure to meet and confer based on "the general judicial preference for resolving motions on their merits rather than dismissing them on technicalities").

## IV.    USPS's claim-splitting theory is incorrect.

"[C]laim-splitting prohibits duplicative litigation filed before judgment." *Steele v. United States*, 144 F.4th 316, 324 (D.C. Cir. 2025). It requires a plaintiff to "assert all causes of action arising from a common set of facts in one lawsuit." *Id.* (ellipsis omitted). "Whether two cases involve the same cause of action turns on whether they share the same 'nucleus of facts.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984)). When determining whether two cases share the same nucleus of facts, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citation modified).

14

"Preclusion is designed to limit a plaintiff to one bite at the apple, not to prevent even that single bite." *Hurd v. District of Columbia*, 864 F.3d 671, 679 (D.C. Cir. 2017). "It thus precludes later theories or pleas for relief arising out of the same claim only if they could have been asserted in the earlier case." *Id.* Thus, "preclusion generally does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts.'" *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985) (quoting Restatement (Second) of Judgments § 26(1)(c) (1982)) (citation modified).

Ignoring these principles, Defendants assert that Plaintiff should have brought this motion as part of *NAACP v. Trump*, No. 26-1151 (D.D.C. 2026), which challenges the Executive Order that prompted the Proposed Rule. *See* Opp. 14. But Plaintiff could not have sought the relief requested here—enforcement of the terms of the Settlement Agreement that resolved *this* case— in that separate action because the Settlement Agreement can be enforced *only* through a motion filed in *this* case, No. 20-2295. *See* Agreement; Minute Order (Dec. 20, 2021). *See Garcia Ramirez v. ICE*, 812 F. Supp. 3d 86, 97 (D.D.C. 2025) ("District courts have the authority to enforce the terms of their mandates."); *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004) ("A motion to enforce judgment is the usual method for requesting a court to interpret its own judgment."); *see also Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) (stating that invocation of the district court's authority to enforce the mandate "is particularly appropriate in a case such as this where an administrative agency plainly neglects the terms of a mandate, and the case then returns to the court—*under the same docket number and involving the same parties*—on a motion to enforce the original mandate" (emphasis added)).

15

Moreover, Plaintiff's motion challenges USPS's Proposed Rule and plans to adopt practices that violate paragraph 2 of the Agreement and seeks relief specific to USPS. By contrast, the complaint in *NAACP v. Trump* challenges the President's Executive Order and seeks declarations focused on that Executive Order. *See* Complaint, *NAACP v. Trump*, No. 1:26-cv-1151 (Apr. 3, 2026), Dkt. No. 1. For this reason as well, this case is unlike *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980), on which Defendants rely, where the court of appeals upheld dismissal of a claim that was "precisely the same" as a claim "pending in a related case" involving the same parties. *Id*. at 222. Here, the claims alleged in *NAACP v. Trump* were not and could not be brought in this case—a case that has been closed since December 2021. And the issue presented in Plaintiff's Motion, brought under paragraph 10 of the Settlement Agreement and this Court's order, cannot be litigated in that case.

## CONCLUSION

For the reasons above and those set forth in Plaintiff's Motion, this Court should grant Plaintiff's Motion, declare that standards and procedures requiring that USPS not accept certain mail-in ballots as set forth in the Proposed Rule would violate the Agreement, and enjoin USPS from implementing those standards and procedures. In light of the exigencies, Plaintiff respectfully requests a ruling by June 22.

Dated: June 15, 2026                                    Respectfully submitted,

/s/ Samuel Spital                                       Allison M. Zieve (DC Bar No. 424786)
Samuel Spital (D.D.C. Bar No. SS4839)                   Wendy Liu (DC Bar No. 1600942)
John S. Cusick (admitted *pro hac vice*)                PUBLIC CITIZEN LITIGATION GROUP
Brittany Carter*                                        1600 20th Street NW
NAACP LEGAL DEFENSE AND EDUCATIONAL                     Washington, DC 20009 (202) 588-1000
FUND, INC.                                              azieve@citizen.org
40 Rector Street, 5th Floor
New York, NY 10006

16

(212) 965-2200
sspital@naacpldf.org

*Counsel for Plaintiff NAACP*

*Motion for Admission *Pro Hac Vice* Forthcoming

17

## CERTIFICATE OF SERVICE

I hereby certify that, on June 15, 2026, I electronically transmitted the motion above using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants for this case.

*/s/ Samuel Spital*
Samuel Spital

18