UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LEAGUE OF WOMEN VOTERS                      *
OF MASSACHUSETTS, et al.,                   *
                                            *
            Plaintiffs,                     *
                                            *
    v.                                      *
                                            *
DONALD J. TRUMP, in his official capacity   *
as President of the United States, et al.,  *
                                            *   Civil Action No. 1:26-cv-11549-IT
            Defendants,                      *
                                            *
    and                                     *
                                            *
STATE OF MISSOURI, et al.,                   *
                                            *
            Intervenor-Defendants.           *
                                            *
_____          *
                                            *
STATE OF CALIFORNIA, et al.,                 *
                                            *
            Plaintiffs,                      *
                                            *
    v.                                       *
                                            *
DONALD J. TRUMP, in his official capacity   *
as President of the United States, et al.,  *
                                            *   Civil Action No. 1:26-cv-11581-IT
            Defendants,                      *
                                            *
    and                                     *
                                            *
STATE OF MISSOURI, et al.,                   *
                                            *
            Intervenor-Defendants.           *
                                            *
_____

MEMORANDUM & ORDER

June 18, 2026

1

TALWANI, D.J.

Following the publication of President Donald J. Trump's Executive Order 14399, Ensuring Citizenship Verification and Integrity in Federal Elections, 91 Fed. Reg. 17125 (Mar. 31, 2026) (the "EO"), two groups of plaintiffs challenged the EO in the United States District Court for the District of Massachusetts. In the first action, eight non-profit organizations involved with voter education (collectively, "Plaintiff Organizations"),[1] assert that their U.S. citizen members will be excluded from voting if the EO is implemented.[2] In the second action, 23 states and the District of Columbia (collectively, "Plaintiff States"),[3] challenge the EO "to safeguard their constitutional authority to administer state and federal elections."[4] A group of twelve states[5] moved to intervene in each case, asserting their "concrete interest in receiving the

---

[1] The Plaintiff Organizations are the League of Women Voters of Massachusetts, League of Women Voters Lotte E. Scharfman Memorial Education Fund, League of Women Voters of the United States, League of Women Voters Education Fund, Association of Americans Resident Overseas, U.S. Vote Foundation, OCA-Asian Pacific American Advocates, and Delta Sigma Theta Sorority.

[2] See League of Women Voters of Massachusetts, et al. v. Trump, et al. ("LWVM"), No. 1:26-cv-11549, Compl. ¶ 1 [Doc. No. 1].

[3] The Plaintiff States are Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, Washington, Wisconsin, and Josh Shapiro in his official capacity as Governor of Pennsylvania.

[4] State of California, et al. v. Trump, et al. ("California"), No. 1:26-cv-11581, Am. Compl. ¶ 1 [Doc. No. 65].

[5] The Intervening States are Alabama, Florida, Indiana, Kansas, Louisiana, Missouri, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, and Texas.

2

resources ordered in [the EO] and in seeing increased security for mail ballots cast in their elections[,]"[6] and the court has granted permissive intervention in both cases.[7]

Defendants, joined by Intervenors, seek dismissal of both suits under Federal Rules of Civil Procedure 12(b)(1) and (6).[8] The court consolidated the two cases for a hearing on these and other pending motions.[9]

In this consolidated Order, the court addresses Defendants' and Intervenor States' ripeness challenge, which raises issues common to both actions, and GRANTS dismissal without prejudice as to claims regarding the EO and its implementation for elections occurring after November 3, 2026, otherwise DENIES the ripeness challenge, and reserves on other issues raised in the motions to dismiss.

## I.  BACKGROUND

### A.  The Executive Order

The EO asserts "an unavoidable duty under Article II of the Constitution of the United States to enforce Federal law, which includes preventing violations of Federal criminal law and

---

[6] California, No. 1:26-cv-11581, Mot. to Intervene 2 [Doc. No. 73]; LWVM, No. 1:26-cv-11549, Mot. to Intervene 2 [Doc. No. 44].

[7] See California, No. 1:26-cv-11581, Elec. Order [Doc. No. 179]; LWVM, No. 1:26-cv-11549, Elec. Order [Doc. No. 106].

[8] See LWVM, No. 1:26-cv-11549, Defs.' Mot. to Dismiss [Doc. No. 126], Intervenors' Mot. to Dismiss [Doc. No. 124]; California, No. 1:26-cv-11581, Defs.' Mot. to Dismiss [Doc. No. 154], Intervenors' Brief [Doc. No. 153] (opposing Plaintiff States' dispositive motion on ripeness grounds).

[9] See California, No. 1:26-cv-11581, Order [Doc. No. 88]; LWVM, No. 1:26-cv-11549, Order [Doc. No. 57]. The other motions are Plaintiff Organizations' motion to preliminarily enjoin implementation of Section 3 of the EO, see LWVM, No. 1:26-cv-11549, Mot. for Prelim. Inj. [Doc. No. 73], and Plaintiff States' motion for summary judgment on their claims, see California, No. 1:26-cv-11581, Mot. for Summ. J. [Doc. No. 97].

maintaining public confidence in election outcomes." Exec. Order 14399 § 1. The EO notes that several executive agencies maintain records that "can assist in verifying identity and Federal election voter eligibility" and finds that "additional measures are necessary[]" to "enhance election integrity via the United States Mail[.]" Id.

Section 2 of the EO directs the Director of the United States Citizenship and Immigration Services ("USCIS"), a component within the Department of Homeland Security ("DHS"), in coordination with the Commissioner of the Social Security Administration ("SSA"), "[t]o the extent feasible and consistent with applicable law," to compile lists of citizens eligible to vote in a specific state (the "Confirmed Citizen Lists"[10]). Id. § 2(a). The EO provides that the Confirmed Citizen Lists "shall be derived from Federal citizenship and naturalization records, SSA records, SAVE [Systematic Alien Verification for Entitlements] data,[11] and other relevant Federal databases." Id.; see also id. § 4(c) (the SSA Commissioner must "provide all . . . citizenship and identity data [necessary]" to compile the Confirmed Citizen Lists for the DHS secretary, "consistent with applicable law[.]").[12] The EO defines the Confirmed Citizen Lists as limited to

---

[10] The EO refers to these federally created lists as "State Citizenship Lists." Id. § 2(a)

[11] SAVE is a system administered by DHS that is "designed to help federal, state, tribal, and local government agencies confirm citizenship and immigration status prior to granting benefits and licenses, as well as for other lawful purposes." DHS, Privacy Impact Assessment for the Systematic Alien Verification for Entitlements Program, DHS Ref. No. DHS/USCIS/PIA-006(c), at 2 (2020), https://perma.cc/HU2M-NTL8 (2020 PIA). SAVE users "formalize the purpose and use in which they use SAVE through a Memorandum of Agreement (MOA) or Computer Matching Agreement" establishing "the terms and conditions for the user agency's participation in SAVE." Id. at 2–3. One purpose for which states can enter into an agreement to use SAVE is to verify the citizenship of registered voters. Privacy Act of 1974, 5 U.S.C. § 552a; Notice of Modified System of Records, 90 Fed. Reg. 48948, 48952 (Oct. 31, 2025) (2025 SORN). DHS does not dispute that the SAVE system has erroneously flagged citizens as noncitizens. See California, No. 1:26-cv-11581, Pls.' Statement of Material Facts ¶¶ 15–16 [Doc. No. 105]; Defs.' Statement of Material Facts ¶¶ 15–16 [Doc. No. 155].

[12] Defendants deny that USCIS has made "any final decision about what, if any, information will be included in any [Confirmed Citizenship Lists] that may ultimately be created," and contend that EO § 2(a) "lists 'SAVE data' as a potential source of data[.]" See California, No. 1:26-cv-

4

"individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State[.]" Id. § 2(a).

The EO requires DHS to "establish the infrastructure necessary to compile, maintain, and transmit" the Confirmed Citizen Lists by **June 29, 2026**. Id. § 4(c) (emphasis added). Also by **June 29, 2026**, DHS must designate a point of contact regarding List-related inquiries from individuals and State election officials. Id. The EO requires that DHS update and transmit the Confirmed Citizen List for each State to State election officials at least 60 days before each regularly scheduled Federal election, or upon request regarding a special Federal election. Id. § 2(a). Accordingly, for the November 3, 2026 general election, the EO requires DHS to provide the Confirmed Citizen Lists to State election officials by **September 4, 2026**.

Section 3 of the EO directs the Postmaster General of the United States Postal Service ("USPS") to initiate a proposed rulemaking to ensure the integrity of mail voting, see id. § 3(a); Notice of Proposed Rulemaking, 91 Fed. Reg. 32915 (June 2, 2026), and requires that a final rule be published by **July 29, 2026**. The EO requires that the proposed rule (1) include requirements regarding election mail design; and (2) specify that USPS, after receiving State-furnished lists of voters approved to vote by mail, shall provide each State with a list of individuals who are "enrolled with the USPS" pursuant to a process specified in the rule, and shall not transmit the ballot of any voter unless the individual has been so "enrolled." Exec. Order 14399 § 3(b). The EO requires that the proposed rule specify that States may choose to notify USPS of their intent to use mail ballots no fewer than 90 days prior to a Federal election, and may submit to the

---

11581, Defs.' Statement of Material Facts ¶ 15 [Doc. No. 155] (citing Mayhew Decl. ¶¶ 5–10 [Doc. No. 156-1]). As of June 8, 2026, DHS has not confirmed whether or in what capacity SAVE data will be used. See California, No. 1:26-cv-11581, Defs.' Notice 2 [Doc. No. 188]; LVWM, No. 1:26-cv-11549, Defs.' Notice 2 [Doc. No. 164].

USPS, no fewer than 60 days before the election, a list of voters to whom the State intends to provide mail ballots. Id. § 3(b)(ii). Accordingly, for the November 3, 2026 general election, States may notify USPS by August 5, 2026, of their intent to use mail ballots, and by September 4, 2026, of their voter lists. Id.

In Sections 2 and 5, the EO describes several criminal offenses, both directly and indirectly relating to election fraud, and requires the Attorney General to prioritize the investigation and prosecution of State and local officials who issue ballots to non-eligible voters. Id. §§ 2(b), 5. The EO also provides that "[s]tates and localities should preserve, for a 5-year period, all records and materials – excluding ballots cast – evidencing voter participation in any Federal election (e.g., ballot envelopes, regardless of carrier)." Id. § 5 (emphasis added).

B.    Overview of the Causes of Action in the two Complaints

Plaintiff Organizations assert six counts in their Complaint [Doc. No. 1], with four of these brought against the President and USPS Defendants.[13] Plaintiff Organizations assert that Section 3 of the EO violates the Separation of Powers doctrine (Count I), is ultra vires (Count II), violates principles of Federalism (Count III), and violates their member's right to vote (Count IV). LWVM, No. 1:26-cv-11549, Compl. ¶¶ 120–168 [Doc. No. 1]. Plaintiff Organizations also assert a violation of the Voting Rights Act by the USPS Defendants (Count V), id. ¶¶ 181–184,

---

[13] The USPS Defendants in both cases are the USPS, the Postmaster General, the Deputy Postmaster General, and the Chairwoman, Vice Chairman, and other members of the USPS Board of Governors. LWVM, No. 1:26-cv-11549, Compl. ¶¶ 41–48 [Doc. No. 1]; California, No. 1:26-cv-11581, Am. Compl. ¶¶ 47–54 [Doc. No. 65].

and violations of the Privacy Act and Administrative Procedure Act by DHS Defendants[14] and SSA Defendants[15] (Count VI), id. ¶¶ 185–205.

Plaintiff States bring three counts in their Amended Complaint. Plaintiff States assert that Section 2 of the EO is unconstitutional, bringing a claim against the President, the Department of Justice ("DOJ"), and the acting Attorney General,[16] the DHS Defendants, the SSA Defendants, and the Department of Commerce ("DOC") Defendants.[17] California, No. 1:26-cv-11581, Am. Compl. ¶¶ 150–166 [Doc. No. 65]. Against the President, acting Attorney General, and USPS Defendants, Plaintiff States assert that Section 3 of the EO is unconstitutional. Id. ¶¶ 167–178. Finally, Plaintiff States allege, against the President, Department of Justice, and acting Attorney General, that Section 5 is unconstitutional. Id. ¶¶ 179–189.

## II.   PRUDENTIAL RIPENESS

Defendants maintain that the EO is merely an "intra-Executive Branch directive" that directs future agency action and that "of its own force[] does not change anything at all about elections in any State."[18] They assert that judicial review will be appropriate later, after implementation actions have been taken, because Defendant agencies are still considering and

---

[14] The DHS Defendants in both cases are DHS, the Secretary of DHS, USCIS, and the Director of USCIS. LWVM, No. 1:26-cv-11549, Compl. ¶¶ 50–51, 54–55 [Doc. No. 1]; California, No. 1:26-cv-11581, Am. Compl. ¶¶ 41–44 [Doc. No. 65].

[15] The SSA Defendants in both cases are SSA and the Commissioner of SSA. LWVM, No. 1:26-cv-11549, Compl ¶¶ 52–53 [Doc. No. 1]; California, No. 1:26-cv-11549, Am. Compl. ¶¶ 52-53 [Doc. No. 65].

[16] California, No. 1:26-cv-11581, Am. Compl. ¶¶ 39–40 [Doc. No. 65].

[17] The DOC Defendants are DOC and the Commerce Secretary. California, No. 1:26-cv-11581, Am. Compl. ¶¶ 55–56 [Doc. No. 65].

[18] California, No. 1:26-cv-11581, Defs.' Mem. 8 [Doc. No. 157]; LWVM, No. 1:26-cv-11549, Defs.' Mem. 8 [Doc. No. 128].

deliberating future action.[19] They argue further that no active case or controversy will exist until the agencies implement the EO, particularly given the EO's saving clause and express limitations that agencies shall only act pursuant to their legal authority. California, No. 1:26-cv-11581, Defs.' Mem. 12–16 [Doc. No. 157]. Similarly, Intervenor States argue that "[t]he prudential ripeness doctrine . . . strongly counsels against considering Plaintiffs' constitutional arguments before final agency actions exist." LWVM, No. 1:26-cv-11549, Intervenors' Mem. 1 [Doc. No. 125].

Plaintiffs assert that their claims are ripe for judicial review because the 2026 federal elections are imminent and the EO has caused significant uncertainty and confusion regarding planning. Plaintiff States have asserted, and Defendants do not dispute, that preparation for the election is currently underway. See California, No. 1:26-cv-11581, Pls.' Statement of Material Facts ¶ 8 [Doc. No. 105]; id., Defs.' Statement of Material Facts ¶ 8 [Doc. No. 155]. Plaintiff States have further asserted that their election officials fear criminal prosecution if they issue ballots to voters who are not on the Confirmed Citizen List or if they issue ballots to eligible 17-year-old voters in connection with federal primary elections. See id. Pls.' Statement of Material

---

[19] California, No. 1:26-cv-11581, Defs.' Mem. 9 [Doc. No. 157] (citing Monteith Decl. ¶ 3 [Doc. No. 156-3]; Mayhew Decl. ¶ 5 [Doc. No. 156-1]; MacBride Decl. ¶ 5 [Doc. No. 156-2]); LWVM, No. 1:26-cv-11549, Defs.' Mem. 9 [Doc. No. 128] (citing Monteith Decl. ¶ 3 [Doc. No. 127-3]; Mayhew Decl. ¶ 5 [Doc. No. 127-1]; MacBride Decl. ¶ 5 [Doc. No. 127-2]). But see California, No. 1:26-cv-11581, Defs.' Notice [Doc. No. 188-1] (On June 8, 2026, DHS Secretary approved a "technological approach" toward implementing the infrastructure, where "USCIS, in coordination with SSA and [the Department of State ('DOS')], would deliver by June 30, 2026, a mechanism for State use that provides . . . access to citizenship-related information from each agency[,]" "endors[ed] a phase plan under which citizen-facing portal capabilities would be developed and implemented later in 2026[,]" and approved DHS "continu[ing] preliminary conversations with USPS concerning potential data-sharing arrangements[.]"); LWVM, No. 1:26-cv-11549, Defs.' Notice [Doc. No. 164-1].

8

Facts ¶¶ 36–37 [Doc. No. 105].[20] Similarly, Plaintiff Organizations have alleged that they are currently wrestling with the impact of the EO on their members and on their voter education programming. See, e.g., LWVM, No. 1:26-cv-11549, Canavan Decl. ¶ 28 [Doc. No. 75-2] ("LWVMA has stopped actively disseminating any new voter-education materials about mail voting because of [the EO]."). All Plaintiffs assert substantial confusion regarding the EO's impact on the 2026 elections and on elections in general. See California, No. 1:26-cv-11581, Pls.' Statement of Material Facts ¶¶ 37, 39 [Doc. No. 105]; LWVM, No. 1:26-cv-11549, Pls.' Mem. 22 [Doc. No. 74].

A.    Relevant Law

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807–08 (2003) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967)). "[T]he question of ripeness turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983) (quoting Abbott Labs., 387 U.S. at 149). As to the

---

[20] Defendants contend that Plaintiff States' assertions "assume[] without basis that it is 'feasible' and 'consistent with applicable law' to compile and transmit a [Confirmed Citizen List] and further assume[] without basis that states will be required to use any such list." California, No. 1:26-cv-11581, Defs.' Statement of Material Facts ¶¶ 36–37 [Doc. No. 155]. Defendants further deny that failure to comply with the EO in and of itself is a criminal offense. See California, No. 1:26-cv-11581, Defs.' Reply 24 [Doc. No. 167] ("[Plaintiff States'] assertion that the Order imposes both duties, under the threat of criminal prosecution no less, is without basis in the text of the Order."); LVWM, No. 1:26-cv-11549, Defs.' Reply 24 [Doc. No. 147]. Defendants do not address election officials' fear of such prosecution.

former, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 299 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580–01 (1985)). The fitness for review prong is more easily satisfied when it "presents an issue that is 'purely legal, and will not be clarified by further factual development.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 167 (2014) (quoting Thomas, 473 U.S. at 581). On the second prong, "it is necessary to evaluate the extent to which withholding judgment will impose hardship—an inquiry that typically 'turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties." Stern v. U.S. Dist. Court for Dist. of Mass., 214 F.3d 4, 10 (1st Cir. 2000) (internal citations omitted). Hardship to the plaintiffs may be "easily satisfied" where the challenged actions "forc[es] them to choose between [constitutionally protected activity] on the one hand, or engaging in [that activity] and risking costly . . . proceedings and criminal prosecution on the other." Susan B. Anthony List, 573 U.S. at 167–68. "Both prongs of the test ordinarily must be satisfied, although a very strong showing on one axis may compensate for a relatively weak showing on the other." Stern, 214 F.3d at 10.

B.    Analysis

1.    *Future Elections (after the November 3, 2026 Midterm Election)*

There are clearly many uncertainties as to how the agencies will ultimately implement the EO, including the source and accuracy of DHS' Confirmed Citizen Lists, and what final rule, if any, will be adopted by the USPS. The implementation of the EO may well result in the evolving and dynamic process described by Defendants, in which Plaintiffs may participate in a comment period that could result in their concerns being incorporated in agency decision making. See California, No. 1:26-cv-11581, Defs.' Mem. 18–19 [Doc. No. 157]; see also DSCC v. Trump, __ F.Supp.3 ___, 2026 WL 1487833, *1 (D.D.C. May 28, 2026) ("[T]he issuance of a notice of

10

proposed rulemaking, or other preliminary proceedings undertaken to promote a proposed rule, often will not be ripe for review because the rule may or may not be adopted or enforced.'" (quoting Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 710 F.2d 842, 846 (D.C. Cir. 1983))). And where some issues may be addressed in part or narrowed well before more distant elections, withholding court consideration of the EO as it relates to distant elections will pose little hardship where there will be sufficient time for legal challenges to the EO after implementation.

Accordingly, the challenge to the EO's implementation as it impacts elections after the November 3, 2026 election is dismissed without prejudice on prudential ripeness grounds.

> 2.    *The November 3, 2026 Midterm Election (and Earlier Elections)*

Plaintiffs' challenge to the EO as it impacts the November 3, 2026 election itself and the multiple primaries and special elections that are scheduled to occur prior to that date, however, is different. The November 3, 2026 election will occur in less than five months and the EO explicitly requires that certain actions be taken before then. See Exec. Order 14399 § 3(b) (requiring that USPS issue a Notice of Proposed Rule Making regarding new election integrity requirements within 60 days of the EO–i.e., by **May 31, 2026**); id. § 4(c) (requiring DHS to establish the infrastructure necessary to compile Confirmed Citizen Lists within 90 days of the EO–i.e., by **June 29, 2026**); id. § 3(d) (requiring that USPS issue a final rule no later than 120 days from the date of the EO–i.e., by **July 29, 2026**); id. § 3(b)(ii) (requiring the Notice of Proposed Rulemaking to include provisions specifying that 90 days prior to a federal election– i.e., by **August 5, 2026**, for the November 3, 2026 election, a State may choose to notify the USPS if it intends to allow ballots to be transmitted by the USPS, and advising the States to notify the USPS if the State intends to allow Mail Ballots and to submit a list of voters to whom ballots will be sent by sixty days before a federal election–i.e., by **September 4, 2026**, for the

November 3, 2026); id. § 2(a) (requiring DHS, in coordination with SSA, to compile and transmit to State officials, to the extent feasible and consistent with applicable law, including the Privacy Act, Confirmed Citizen Lists to the States no later than 60 days before each regularly scheduled Federal election–i.e., by **September 4, 2026**, for the November 3, 2026 election).

In light of the EO's specific deadlines over the next three months, and the reality that elections will be occurring throughout this period with the November 3, 2026 midterm occurring in just five months, postponing judicial review is impracticable and may inflict significant hardship on Plaintiffs. The EO has "create[d] a 'direct and immediate' dilemma for" Plaintiffs, Stern, 214 F.3d at 10 (quoting W.R. Grace & Co. v. EPA, 959 F.2d 360, 364 (1st Cir. 1992)), because the EO requires State elections officials and voters to reckon today with both the likelihood that the executive branch agencies will follow the EO's multiple directed actions and simultaneously with the uncertainty that exists as the details are slowly rolled out over the next few months. Both sets of Plaintiffs have offered unrebutted evidentiary support for their allegations that significant preparation and planning underpin and facilitate elections and that such efforts are already underway. See California, No. 1:26-cv-11581, Rosenberg Decl. ¶ 26 [Doc. No. 100-7] (Connecticut election official explaining that "major changes to the election process . . . are typically planned for a year or more preceding an election[.]"); Linnell Decl. ¶ 11 [Doc. No. 100-14] ("Preparation for the 2026 midterm elections already consumes all of [Minnesota election official's] team's time."); LVWM, No. 1:26-cv-11549, Canavan Decl. ¶¶ 28–29 [Doc. No. 75-2] (describing presently ongoing voter education efforts of LVWM); Nguyen Decl. ¶¶ 15–21 [Doc. No. 75-7] (describing efforts to translate election materials into other languages by Plaintiff Organization OCA-Asian Pacific American Advocates).

For example, Plaintiff State of California mails every registered voter a ballot, as required by state law. See California, No. 1:26-cv-11581, Lean Decl. ¶¶ 28, 37 [Doc. No. 100-1]; Cal. Elec. Code § 3000.5 ("[F]or each election, the elections official shall, no later than 29 days before the day of the election, begin mailing [ballots and return mail] to every registered voter."). Even without a USPS Final Rule on mail ballot procedures, California election officials "must prepare now for how to align California's administration of mail voting with the EO." California, No. 1:26-cv-11581, Lean Decl. ¶ 40 [Doc. No. 100-1]. The Plaintiff States cannot wait for the Final Rule where the practical realities of running an election require Plaintiffs to take actions for the upcoming election now. See Abbott Labs., 387 U.S. at 149 (in analyzing ripeness, courts must assess the hardship that would result from delaying review); see also LWVM, No. 1:26-cv-11549, Amicus Br. of. State and Loc. Elections Offs. 12 [Doc. No. 136] (explaining that "[A]s a purely practical matter, implementing this EO—particularly with so little time remaining before the rapidly approaching November 2026 midterm elections—would wreak havoc on electoral processes nationwide.").

The compilation of a Confirmed Citizen List also vividly illustrates the problem. During the June 2, 2026 hearing, the government admitted that compliance with federal privacy law would necessarily render any Confirmed Citizen List underinclusive.[21] Moreover, the list will also be underinclusive as a result of feasibility issues, where the federal government may be unaware of name changes (such as when a woman changes her name at marriage) or residence changes (where a citizen moves from state to state). But the EO does not require feasibility of an accurate, complete list of United States citizens. Instead, it orders preparation and delivery to the

---

[21] See California, No. 1:26-cv-11581, June 2, 2026 H'rg Tr. 24:6–17 [Doc. No. 181]; LWVM, No. 1:26-cv-11549, June 2, 2026 H'rg Tr. 24:6–17 [Doc. No. 155].

states of a list of individuals confirmed as citizens "to the extent feasible and consistent with applicable law"—in other words, the EO orders preparation and delivery of a list of United States citizens residing in each state that will <u>necessarily be incomplete</u>. Exec. Order 14399 § 2(a). Accordingly, even assuming that implementing agencies will comply with all legal requirements set out in the EO and will only create lists to the extent feasible, incomplete Confirmed Citizen Lists will still be compiled, thereby creating a "direct and immediate dilemma for Plaintiffs." <u>Stern</u>, 214 F.3d at 10 (citation omitted).

Further, despite Defendants' assertions that agencies are merely "deliberating" as to plans to implement the EO, Defendants have recently updated the court that, on June 8, 2026, the DHS Secretary approved a plan to comply with § 4(a) of the EO, requiring that DHS implement necessary infrastructure by June 29, 2026.[22]

With an ever-narrowing window of time in which review is appropriate and practicable, and where that review may well require timely involvement by the Court of Appeals or Supreme Court prior to the November 3, 2026 election in order to "maintain[] public confidence in election outcomes[,]" <u>see</u> Exec. Order 14399 § 1, the court finds that the legality of the EO as to the November 3, 2026 election (and earlier elections) is both ripe and fit for review. <u>See</u> <u>Abbott Labs.</u>, 387 U.S. at 149.

---

[22] <u>See</u> <u>California</u>, No. 1:26-cv-11581, Defs.' Notice [Doc. No. 188]; <u>LWVM</u>, No. 1:26-cv-11549, Defs.' Notice [Doc. No. 164]; <u>see also</u> <u>id.</u>, Pls.' Sur-Reply 1 [Doc. No. 160] (Defendants' Notice "demonstrate[s] that agency implementation of the [EO's] directives is underway [and] that agency action follows directly from the [EO]."). Defendants' <u>Notice</u> also indicated that DHS and USPS are continuing to consider data-sharing across agencies, including with the USPS, in implementing the EO. <u>California</u>, No. 1:26-cv-11581, Defs.' Notice [Doc. No. 188] (On June 8, 2026, DHS Secretary authorized "DHS [to] continue preliminary conversations with USPS concerning potential data-sharing arrangements," but stating further that "allow[ing] DHS to leverage USPS data related to mail-in and absentee ballot participation lists . . . is neither contemplated nor required by EO 14399."); <u>LWVM</u>, No. 1:26-cv-11549, Defs.' Notice [Doc. No. 164].

14

Defendants and Intervenor States' reliance on a recent Supreme Court decision merits additional discussion. In Trump v. New York, a coalition of States and non-profit organizations challenged a Presidential memorandum announcing a policy of excluding noncitizens from the decennial census for the purposes of congressional apportionment and then directing the Secretary of Commerce to advise the President on how to implement that policy "to the maximum extent feasible and consistent with the discretion delegated to the executive branch." 592 U.S. 125, 129–30 (2020) (quoting 85 Fed. Reg. 44680 (2020)). The impact of any apportionment policy change would not be experienced until the States first received an apportionment report from Congress and then subsequently both implemented redistricting and held elections, potentially years after the Commerce Secretary's report pursuant 13 U.S.C. § 141(b). See 2 U.S.C. § 2a. The Supreme Court found that the plaintiffs lacked standing to challenge the memorandum and that the challenge was not ripe because the "case [was] riddled with contingencies and speculation that impede judicial review. . . . Any prediction how the Executive Branch might eventually implement this general statement of policy is 'no more than conjecture' at this time." Trump, 592 U.S. at 131 (quoting Los Angeles v. Lyons, 461 U.S. 95, 108 (1983)). The Court based its decision on the uncertainty regarding implementation of the memorandum and the President's qualifying language regarding feasibility and legality requirements. Id. [23]

---

[23] Defendants also point to Justice Sotomayor's concurrence in Trump v. Am. Fed'n of Gov't Emps., 606 U.S. _, 145 S.Ct. 2635 (2025). In a two-paragraph unsigned opinion, the Supreme Court granted an application for a stay of a district court's preliminary injunction order while the Ninth Circuit considered the government's appeal. The Court granted the stay "because the Government is likely to succeed on its [merits] argument," without making any findings as to justiciability. Id. In her concurrence in the grant of the stay, Justice Sotomayor noted that the Executive Order "direct[ed] agencies to plan reorganizations and reductions in force 'consistent with applicable law[,' and t]he plans themselves are not before this Court, at this stage, and [the Court] thus ha[s] no occasion to consider whether they can and will be carried out consistent

15

Unlike the President's request for the Commerce Secretary to implement a policy statement in <u>Trump v. New York</u>, the EO here both includes multiple specific directives as to certain actions that federal agencies must take at specified times and requires that definite "substantive outcomes" be implemented that will affect the upcoming election. <u>League of United Latin American Citizens ("LULAC") v. Executive Office of the President (LULAC II)</u>, 818 F. Supp. 3d 34, 78 (D.D.C. 2026) (citing <u>Trump v. New York</u>, 592 U.S. 125 (2020)). And, unlike in <u>Trump v. New York</u>, it is neither speculation nor "conjecture" that DHS will compile Confirmed Citizen Lists where directed to compile those lists by the President, that States will have to grapple with preparing for mail ballots for the November 3, 2026 election, while USPS is simultaneously engaged in rulemaking, and that elections officials will have to respond to the impact of both the Confirmed Citizen Lists and to whatever USPS rule may be enacted before the November 3, 2026 election.

Where Plaintiffs have raised constitutional challenges that may be addressed without further development of the Confirmed Citizen Lists or the Proposed Rule and in light of imminently impending elections, prudential considerations do not warrant deferring consideration of Plaintiffs' challenges with respect to the 2026 elections. <u>See</u> <u>Wesberry v. Sanders</u>, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.").

---

with the constraints of law." <u>Id.</u> (Sotomayor, J., concurring). Here, in contrast, the limitation that the Confirmed Citizen List will be created "to the extent feasible and consistent with applicable law," does not mean a list will not be created, but only that it will by definition be incomplete. Exec. Order 14399 § 2(a).

## III. CONCLUSION

For all of the above reasons, the court GRANTS Defendants' and Intervenor States' motions to dismiss Plaintiff Organizations' complaint and Plaintiff States' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) on prudential ripeness grounds as to their claims regarding the EO and its implementation with regard to elections occurring <u>after November 3, 2026</u>, and dismisses such claims without prejudice. The court DENIES Defendants' and Intervenor States' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on prudential ripeness grounds as to Plaintiff Organizations' complaint and Plaintiff States' amended complaint with regard to the November 3, 2026 election, and all earlier elections.[24]

IT IS SO ORDERED.

June 18, 2026                                             /s/ Indira Talwani
                                                         United States District Judge

---

[24] Defendants' and Defendant Intervenors' Article III challenges pose different issues as to the two different groups of Plaintiffs. These challenges will be addressed in case specific orders, together with the Plaintiffs' pending motion in each case.

17