**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| National Association for the Advancement of Colored People,<br><br>       *Plaintiff*,<br>  v.<br><br>United States Postal Service, *et al.*,<br><br>       *Defendants*. |

Case No. 1:20-cv-02295-EGS

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO SAY**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT....................................................................................................................... 6

I.    DEFENDANTS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR APPEAL...................... 7

    A.    This Court lacks jurisdiction to enforce the Agreement by injunction. .................. 7

    B.    Only Paragraphs 2 and 4 of the Agreement are enforceable, neither of which is applicable to the relief Plaintiff seeks. ................................................. 9

    C.    Plaintiff's challenge to the Proposed Rule is unripe as the Proposed Rule has no legal effect and its impact on the future guidance documents is unclear..................................................................................................... 13

    D.    Plaintiff failed to properly invoke Paragraph 10 of the Agreement...................... 14

    E.    Plaintiff is engaging in impermissible claim splitting. ......................................... 16

    F.    Plaintiff's motion should have been denied because the Proposed Rule does not hamper the timely and accurate delivery of Election Mail............................. 17

II.    DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY.. ............................. 20

III.    THE REMAINING STAY FACTORS TIP IN FAVOR OF DEFENDANTS. ................................. 21

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**CASES**

*Bristol-Myers Co. v. F.T.C.*,
424 F.2d 935 (D.C. Cir. 1970)............................................................................................... 14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................................................... 14

*Cunningham v. United States*,
748 F.3d 1172 (Fed. Cir. 2014)............................................................................................... 7

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
710 F.2d 842 (D.C. Cir. 1983)............................................................................................... 14

*Dep't of the Army v. FLRA*,
56 F.3d 273 (D.C. Cir. 1995)................................................................................................... 9

*DSCC v. Trump*,
No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026)........................... 1, 14, 16

*FDIC v. Bank of Am., N.A.*,
783 F. Supp. 3d 1 (D.D.C. 2025) ........................................................................................... 13

*Franklin-Mason v. Mabus*,
742 F.3d 1051 (D.C. Cir. 2014) ........................................................................................... 7, 8

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Department of Homeland Sec.*,
490 F.3d 940 (Fed. Cir. 2007)................................................................................................. 7

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ................................................................................................................. 6

*In re Bluewater Network*,
234 F.3d 1305 (D.C. Cir. 2000).............................................................................................. 13

*In re Murray Energy Corp.*,
788 F.3d 330 (D.C. Cir. 2015)............................................................................................... 13

*Keepseagle v. Vilsack*,
815 F.3d 28 (D.C. Cir. 2016)................................................................................................. 12

*McLarnon v. United States*,
154 Fed. Cl. 459 (2021) ........................................................................................................... 7

*NAACP v. Trump*,
   No. 26-cv-1151 (D.D.C. Apr. 3, 2026) ...................................................................*passim*

*Nken v. Holder*,
   556 U.S. 418 (2009).............................................................................................................. 6

*Pigford v. Veneman*,
   292 F.3d 918 (D.C. Cir. 2002)........................................................................................... 12

*Pigford v. Vilsack*,
   777 F.3d 509 (D.C. Cir. 2015)........................................................................................... 11

*Richardson v. Morris*,
   409 U.S. 464 (1973)............................................................................................................. 7

*Tritz v. U.S. Postal Serv.*,
   721 F.3d 1133 (9th Cir. 2013) ............................................................................................ 8

*United States v. Cotton*,
   535 U.S. 625 (2002)............................................................................................................. 9

*United States v. ITT Cont'l Baking Co.*,
   420 U.S. 223 (1975)............................................................................................................. 7

*Zerilli v. Evening News Association*,
   628 F.2d 217 (D.C. Cir. 1980)..................................................................................... 16, 17

**CONSTITUTION**

U.S. Const. art. III, § 2............................................................................................................ 13

**STATUTES**

39 U.S.C. § 401........................................................................................................................ 8

39 U.S.C. § 409........................................................................................................................ 8

Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), P.L. 99-410, 52 U.S.C.
   §§ 20301–20311, 39 U.S.C. § 3406, 18 U.S.C. §§ 608–609 ........................................ 1

**REGULATIONS**

*Ballot Mail for Federal Elections*,
 91 Fed. Reg. 32,915 (June 2, 2026) ................................................................................ *passim*

*Ensuring Citizenship Verification and Integrity in Federal Elections*,
 ("Order")
 Exec. Order No. 14,399, 91 Fed. Reg. 17,125 (Mar. 31, 2026)......................................... *passim*

**OTHER AUTHORITIES**

BallotTrax, *Tracking the Vote: Insights and Analysis from the 2020 Election* 1 (2021),
 https://www.nass.org/sites/default/files/2021-01/ballottrax-white-paper-nass-winter21.pdf... 18

D.C. Bd. of Elections, *Frequently Asked Questions*,
 https://www.dcboe.org/faqs/early-voting-and-election-day (last visited June 10, 2026)......... 18

*Vote-by-Mail Envelope Design for California*,
 https://elections.cdn.sos.ca.gov/vote-by-mail/pdf/guidance.pdf.............................................. 18

**INTRODUCTION**

Plaintiff ("NAACP") and Defendants entered into a settlement agreement in December 2021 ("Agreement") that, in relevant part, requires the United States Postal Service ("USPS" or "Postal Service") to publicly disclose its policies regarding the delivery of election mail applicable to the 2026 general election no later than October 1, 2026. On March 31, 2026, President Trump issued Executive Order 14,399. Section 3 of the Executive Order directs USPS to initiate a notice of proposed rulemaking ("Proposed Rule" or "NPRM") regarding ballot mail for Federal elections, which USPS did in early June. The NPRM, if ultimately adopted in its current form into a final rule, would require state and local election officials to use envelopes that meet certain design standards, such as including trackable barcodes and the official Election Mail logo, to transmit ballots for Federal elections and would also require those officials, or their authorized designees, to provide a list to USPS of voters who are mailed ballots for Federal non-primary elections. State and local election officials would maintain full control over who they send ballots to. Under the proposal, they merely would need to provide to the Postal Service the names and addresses of those individuals along with barcode information on the outgoing and return ballot envelopes they prepared.[1]

NAACP challenged the Executive Order immediately after it was issued, and Judge Nichols recently denied NAACP's motion for a preliminary injunction. *See DSCC v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026).[2] NAACP now changes tack, seeking

---

[1] The USPS does not propose to apply those standards to ballots subject to the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), P.L. 99-410, 52 U.S.C. §§ 20301–20311, 39 U.S.C. § 3406, 18 U.S.C. §§ 608–609.

[2] A coalition of states challenged the Executive Order in *State of California v. Trump*, No. 26-cv-11581-IT (D. Mass.). In relevant part, the district court in that case enjoined USPS from "implementing, giving effect, or enforcing" parts of Section 3 of the Executive Order with respect

to challenge the NPRM—which, of course, itself has no legal effect—as violative of the 2021

Agreement.  That challenge, however, is far beyond the scope of the Agreement and its enforce-

ment provisions.  Nonetheless, this Court has granted NAACP's Motion to Enforce (ECF No. 171),

issuing its Memorandum Opinion (ECF No. 182) and Order (ECF No. 181) enjoining the Postal

Service "from implementing the standards and procedures described in the Proposed Rule." *See*

ECF No. 181 at 2.  Defendants respectfully move this Court to stay that injunctive relief because

Defendants are correct on the merits concerning the Court's lack of jurisdiction to issue injunctive

relief in this contract dispute against the government and the Court's lack of jurisdiction to issue

the injunction as outside the scope and enforcement provisions of the Agreement, because Defend-

ants will be irreparably harmed absent a stay; and because the equities favor the government.  De-

fendants respectfully request a ruling by July 8, 2026, to allow the Government to seek relief, if

necessary, from the United States Court of Appeals for the District of Columbia Circuit.

## BACKGROUND

On December 17, 2021, Plaintiff and Defendants ("the Parties") filed a Stipulation of Set-

tlement and Proposed Order, Stipulation and Agreement (ECF No. 170), which this Court incor-

porated in its final order, Minute Order (Dec. 20, 2021).  The Agreement contemplates three judi-

cially enforceable provisions, only two of which—Paragraphs 2 and 4, respectively—remain rel-

evant today.  *See* Agreement ¶ 10 ("If the NAACP believes that the Postal Service has violated the

terms of paragraphs 2, 4, or 5 of this Agreement, it may file a motion to enforce or for other relief

based on that violation."); *see also* Stipulation of Settlement and Proposed Order ¶ 2 ("The Court

shall have jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement, subject to

---

to plaintiff states for the November 3, 2026 general election or earlier federal elections.  *See id.*,
Memorandum & Order of June 25, 2026, ECF No. 191, at 34-37.  A notice of appeal and a motion
to stay have been filed and are pending in that case.  *See id.*, ECF Nos. 192-195.

the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and 10 of the Settlement Agreement, which are incorporated into this Stipulation and Order as if fully set forth.").

Paragraph 2 of the Agreement requires the Postal Service to "post publicly on its website copies of officially issued National Guidance Documents related to Election Mail."  Agreement ¶ 2.  "National Guidance Documents" refers to "official materials issued by Postal Service Head-quarters that will reflect the Postal Service's formal nationwide Election Mail practices and poli-cies for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle taking place every two years."  *Id.* ¶ 1.  "Election Mail" is "any item mailed to or from authorized election officials that enables citizens to participate in the voting process—including ballots, voter registration cards, absentee voting applications, and polling place notifications."  *Id.* Paragraph 2 requires the public posting of National Guidance Documents applicable to the "federal general election" no later than "October 1 of each election year."  *Id.* ¶ 2.  This Paragraph similarly makes clear that "[t]he Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in Paragraphs 3 and 10 of this agreement."  *Id.*  Paragraph 3—which is not judicially enforceable, on the face of the agreement—states that in 2026, "the guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail."  *Id.* ¶ 3.

Paragraph 4 requires USPS to host two "outreach meetings" with Plaintiff on election years. *Id.* ¶ 4.  Paragraph 5 required USPS to provide "service performance scores" to Plaintiff in the six weeks leading up to and one week following the general elections in 2022 and 2024.  *Id.* ¶ 5.  By the terms of the Agreement, any obligation under Paragraph 5 has expired.  *Id.*

On March 31, 2026, President Trump issued Executive Order 14,399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17,125 (Mar. 31, 2026) ("Order").

The Order directs USPS "to initiate a proposed rulemaking" with regard to ballot mail for Federal elections to conform to certain design requirements and to develop procedures for individuals to be enrolled with USPS for inclusion on "State-specific Mail-In and Absentee Participation List[s]." Order § 3. Under the terms of the Order, those lists would be distinct from the State Citizenship Lists contemplated by Section 2(a). *Id.* § 2(a).

The Order directs the Postal Service to begin the proposed rulemaking "within 60 days of" the Order. *Id.* § 3(b). The Order further states that "[a]ny final rule" that results from this rulemaking "shall be issued no later than 120 days from the date" of the Order, which is July 29, 2026. *Id.* § 3(d). The Order also identifies some provisions for inclusion in the notice of proposed rulemaking, *id.* § 3(b)—though it does not say anything about whether any or all of those provisions should also appear in any final rule, nor whether a final rule must be issued at all.

On April 3, 2026, Plaintiff[3] filed suit in *NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1. In that case, Plaintiff challenges Sections 2(a), 3(b), 4(a), and 4(c) of the Order under six counts, invoking *ultra vires* review, the separation of powers, the First and Fifth Amendments, statutory-authority claims relating to the Postal Service, and the Administrative Procedure Act. *Id.* ¶¶ 214-327; *see id.* at 67-68 (Prayer for Relief). Although Plaintiff in that suit challenges Section 3(b) of the Order, which directs USPS to issue the Proposed Rule, Plaintiff never invokes

---

[3] That lawsuit was brought by the National Association for the Advancement of Colored People (Plaintiff), Common Cause, the Common Cause Education Fund, Black Voters Matter Fund, Inc., and BVM Capacity Building Institute, Inc. against President Trump, the Executive Office of the President, the Department of Justice, the Postal Service, the Postal Service Board of Governors, the Department of Homeland Security, U.S. Citizenship and Immigration Services, the Social Security Administration, the Department of Commerce, and various department and agency heads in their official capacities. *NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1, Compl. ¶¶ 17-50.

the Agreement in that Complaint.  *See NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1.  Nor did Plaintiff seek to relate its new lawsuit to this one.  *Id.*

On June 2, 2026, USPS published an NPRM.  *See Ballot Mail for Federal Elections*, 91 Fed. Reg. 32,915 (June 2, 2026).  The NPRM invited public comments until July 2, 2026.  *Id.* Among other things, the NPRM (if finalized in that form) would "identify new standards" for "envelope design" for Federal Ballot Mail, including "the use of the official Election Mail logo, automation compatibility," Intelligent Mail barcode placement, and "mailpiece design review."  *Id.* at 32,915-16.  The Proposed Rule would also establish a process for creating a "Mail-In and Absentee Participation List" whereby states would notify USPS of the individuals to whom it is sending mail-in or absentee ballots for Federal elections, along with address information and barcodes for the outbound and return envelopes, thus helping to facilitate the tracking of ballots and related law-enforcement efforts pursuant to existing Federal law.  *Id.* at 32,916.  Importantly, "states would retain full control over who would (or would not) be able to vote by mail in federal elections within each state, as states would control enrollment with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List."  *Id.* ("The Postal Service would not change the information provided by the state when compiling the lists.").  In addition, the Proposed Rule would establish a verification procedure in which the Postal Service would review the barcodes on the outbound envelopes of ballots presented to the Postal Service for mailing those ballot envelopes to confirm that the ballots are being sent to individuals who have been enrolled for inclusion on the Mail-In and Absentee Participation List, and would not accept or transmit noncompliant mailings.  *Id.* at 32,916, 32,918.  Here too, however, the "Postal Service would not verify whether individuals should or should not be included on a State's Mail-In and Absentee Participation List. States will retain full control over the content of that list."  *Id.* at 32,916.

On June 3, 2026, just one day after USPS's publication of the NPRM in the Federal Register, Plaintiff filed its motion to enforce compliance with the Agreement and court order ("Pl.'s Mot. to Enforce"). *See* ECF No. 171. The motion was fully briefed, *see* ECF Nos. 171 (Pl.'s Mot. to Enforce), ECF No. 175 (Defs.' Opp'n Brief), and ECF No. 177 (Pl.'s Reply Brief).

On July 1, 2026, this Court issued its Memorandum Opinion (ECF No. 182) and Order (ECF No. 181), which in relevant part, enjoins the Postal Service "from implementing the standards and procedures" in the NPRM. *See* ECF No. 181 at 2. Defendants now respectfully request a stay of this Order pending appeal.

## ARGUMENT

A stay is merited here. Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Defendants are likely to prevail on the merits of their appeal for several reasons, including because (a) this Court lacks jurisdiction to issue injunctive relief in this contract dispute against the government, (b) this Court lacks jurisdiction to grant the relief NAACP seeks as it is far beyond the scope of the Agreement, (c) NAACP's claims are not ripe, (d) NAACP failed to properly invoke the Agreement's enforcement mechanisms, and (e) NAACP has engaged in improper claim splitting. Defendants will suffer irreparable harm absent a stay, and the remaining equities also tip in favor of Defendants.

- 6 -

I.    **DEFENDANTS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR APPEAL.**

**A.  This court lacks jurisdiction to enforce the Agreement by injunction.**

At the outset, this court lacked authority to compel compliance with the settlement agreement—in other words, to effectively grant specific performance of a settlement provision that, on the Court's reading, effectively subjected the Postal Service's rulemaking authority to the supervision and control of private parties.  It is well-established that a settlement agreement with a federal government entity is a contract.  *See Franklin-Mason v. Mabus*, 742 F.3d 1051, 1057-58 (D.C. Cir. 2014); *Cunningham v. United States*, 748 F.3d 1172, 1176-77 (Fed. Cir. 2014); *see also United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37 (1975).  And it is equally well-established that as a general matter, no court has jurisdiction to grant specific performance in a contract suit against the government.  Thus, in contract suits under the Tucker Act, it has long been clear that the Court of Federal Claims—which has exclusive jurisdiction over most contract suits against the government—lacks authority to order "equitable" remedies, including specific performance.  *See, e.g.*, *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Department of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007); *McLarnon v. United States*, 154 Fed. Cl. 459, 462 (2021) (explaining that "specific performance is not an available remedy" in "breach of contract claim against the United States").  The same principle holds in suits brought in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which grants district courts concurrent jurisdiction over contract actions seeking $10,000 or less in damages.  *See Richardson v. Morris*, 409 U.S. 464, 465–66 (1973) (per curiam) (explaining that the Little Tucker Act, "authoriz[es] only actions for money judgments and not suits for equitable relief against the United States" and that "the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims" (quotation omitted)).

- 7 -

The same essential principle governs here.  Although plaintiffs did not invoke it, District court jurisdiction here rested on 39 U.S.C. § 409(a), which grants the district courts "original but not exclusive jurisdiction over all actions brought by or against the Postal Service."  Neither § 409(a)—nor any other provision of the statutes governing the Postal Service, including the waiver of sovereign immunity in 39 U.S.C. § 401(1)—expressly departs from the general principles governing relief available in contract actions against the government.  Indeed, although § 409(a) grants district courts jurisdiction over actions against the Postal Service, that jurisdiction is concurrent with the Court of Federal Claims as to contract actions.  *See Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1138 (9th Cir. 2013).  Given that plaintiffs could have equally sought to enforce the settlement agreement through a suit in the Court of Federal Claims under the Tucker Act, there is no basis to infer that Congress conferred greater authority on district courts to order a remedy otherwise unavailable in federal contracting cases based on a plaintiff's choice of forum.  And that conclusion would be entirely unwarranted here, as it would imply that the Postal Service could contract away basic regulatory or ratemaking functions or otherwise hamper its operations through settlement agreements enforceable through suits for specific performance by private parties.  *See* 39 U.S.C. § 401(2) (granting Postal Service authority to adopt rules and regulations "necessary in the execution of its functions"); *id.* § 404(a)(1) (granting authority "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail").

Nor does it matter that the settlement agreement here contemplated judicial enforcement. The D.C. Circuit has rejected the notion that a settlement agreement can confer jurisdiction a district court lacks, invoking "the time-honored rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction."  *Franklin-Mason*, 742 F.3d

at 1055.  That principle governs here: the parties cannot, by consent, confer authority on the district court to grant a remedy Congress itself has not authorized.  The judicial enforcement language of the agreement thus rises or falls with the existence of some other source of authorization for the court to adjudicate plaintiffs' request for specific performance.  And for the same reason, it does not matter that Defendants did not urge this jurisdictional argument in prior briefing, as objections to the court's power to entertain a particular claim are not subject to waiver or forfeiture.  *E.g.*, *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Dep't of the Army v. FLRA*, 56 F.3d 273, 275 (D.C. Cir. 1995).  This Court should grant a stay of its Order because it lacks jurisdiction to adjudicate this matter in the first instance.

> **B. Only Paragraphs 2 and 4 of the Agreement are enforceable, neither of which is applicable to the relief Plaintiff seeks.**

Turning to the Agreement itself, NAACP's motion to enforce fundamentally fails because, by its plain terms, the contract is only judicially enforceable as to Paragraphs 2 and 4.  Agreement ¶ 6 ("The Parties agree that the court will not retain jurisdiction over other parts of this Agreement, and they agree not to bring any motion to enforce any provision other than paragraphs 2 [and 4]."); *id.* ¶ 10 ("If the NAACP believes that the Postal Service has violated the terms of paragraphs 2 [or 4] of this Agreement, it may file a motion to enforce or for other relief based on that violation.").[4] Those two Paragraphs have nothing to do with the relief NAACP seeks.

---

[4] Paragraph 5 of the Agreement states that USPS will provide to Plaintiff "weekly First-Class Mail and Marketing Mail service performance scores for the 6 weeks before and 1 week following [] national general election[s]." Agreement ¶ 5.  Unlike Paragraphs 2 and 4, USPS's obligations in Paragraph 5 are limited to "November 2022 and 2024." *Id.*  There can be no continued enforcement of Paragraph 5, since, as noted above, its provisions have already expired.  But even if it were still operative, Paragraph 5 is limited to providing Plaintiff with USPS service performance scores in the six weeks leading up to the general election in November and in the one week following the general election—which is still months away, foreclosing any reliance upon Paragraph 5 in a motion to enforce at this juncture in an election cycle.

Paragraph 2 of the Agreement concerns USPS publicly posting National Guidance Documents related to Election Mail on its website.  Agreement ¶ 2.  Specifically, for 2022, 2024, 2026, and 2028, USPS committed to publicly posting National Guidance Documents "applicable to federal primary elections no later than February 1 of each election year" and "applicable to the federal general election no later than October 1 of each election year."  *Id.*  As defined in Paragraph 1, National Guidance Documents are certain "handbooks, regulations, and/or memoranda focused on Election Mail" reflecting "the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and delivery of Election Mail."  *Id.* ¶ 1.  In sum, Paragraph 2 is an informational obligation for USPS to publicly post practices and policies.  It is an obligation to make certain practices and policies, *i.e.*, information, publicly known.  Enforcement of Paragraph 2 is thus limited to requiring USPS to continue to post on its website the handbooks, regulations, and/or memoranda pertaining to Election Mail, which USPS has done and continues to do. Indeed, Paragraph 2 specifically states that "[t]he Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement."  *Id.*[5]

Paragraph 4 of the Agreement requires certain outreach meetings between the NAACP and USPS.  Agreement ¶ 4.  Specifically, USPS must host two meetings with Plaintiff in 2022, 2024, 2026, and 2028, one no later than April and the other in August or September of those years.  *Id.*

---

[5] Furthermore, as noted above, the NPRM only applies to mail-in and absentee ballots for Federal *non-primary* elections.  *See* 91 Fed. Reg. at 32,916 ("The Postal Service is not proposing to apply these standards to primary elections or to UOCAVA ballots. Primary elections largely involve political parties selecting nominees through their chosen procedures, rather than direct election of federal officials, and thus implicate different considerations that bear on the necessity for these provisions.").  As such, the NPRM could not contravene USPS's commitment under Paragraph 2 of the Agreement to publicly post National Guidance Documents "applicable to federal primary elections no later than February 1 of each election year," Agreement ¶ 2.

These meetings are "intended to be cooperative discussions" allowing participating parties to "ask and answer questions" and "discuss" certain topics, such as "Information about Election Mail performance," "Operational efforts (e.g., training, outreach, processes)," and "Planned policies and extraordinary measures." *Id.* Similar to Paragraph 2's obligations, Paragraph 4's obligations are solely informational. USPS is required to host outreach meetings and provide information to Plaintiff, but there is no suggestion that Plaintiff would have oversight over USPS's performance and operational efforts. Just the opposite, in fact: "With respect to the obligations described in paragraph 4, only the failure to hold the meetings specified in subparagraph 4.a will be enforceable pursuant to Paragraph 10 of this Agreement." *Id.* ¶ 4(b). Enforcement of Paragraph 4 is thus limited to requiring USPS to continue hosting these election year meetings, which USPS has done and continues to do.

Plaintiff's desired declaratory and injunctive relief as to the Proposed Rule is thus incompatible with the terms of the Agreement. Nothing in the purportedly enforceable Paragraphs of the Agreement empowers Plaintiff to seek to enjoin implementation of USPS's Proposed Rule. This Court's jurisdiction to enforce the agreement is at most limited to Paragraphs 2 and 4, which impose informational obligations on USPS in the public posting of its National Guidance Documents and in hosting meetings with Plaintiff, which USPS has and continues to faithfully uphold.

Instead, Plaintiff appears to be trying to enforce one statement in Paragraph **3** of the Agreement asserting that "for 2024, 2026, and 2028, the guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail." *Id.* ¶ 3(b). *See* Pl.'s Mot. to Enforce at 11 (relying upon Paragraph 3). But this Court *explicitly* lacks jurisdiction to enforce Paragraph 3. *See id.* ¶ 6(a) ("The Parties agree that the court *will not retain jurisdiction over other parts of this Agreement, and they agree not to bring any motion to enforce*

- 11 -

*any provision other than paragraphs 2 [and 4]*." (emphasis added)).  Nor can the fact that Paragraph 2 references Paragraph 3 make Paragraph 3 itself enforceable—the Agreement is explicit that only Paragraph 2 may be judicially enforced.  *See Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015) ("Even where, as here, the Consent Decree does retain jurisdiction in the District Court to enforce its terms, the court still lacks a 'free-ranging 'ancillary' jurisdiction,' and is limited by the *explicit terms* of the parties' agreement.") (citing *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002)) (emphasis added)); *Keepseagle v. Vilsack*, 815 F.3d 28, 33 (D.C. Cir. 2016) (holding that district courts are "'constrained by the terms of the decree and related order.'") (quoting *Pigford*, 292 F.3d at 924)).

Indeed, Plaintiff's proposed reading, endorsed by this Court in its Memorandum Opinion and Order (*see* ECF No. 181 & 182)—that the Court has general jurisdiction to determine whether USPS's efforts "prioritize monitoring and timely delivery of Election Mail" is inconsistent with the repeated statements throughout the Agreement that the substance of USPS's delivery operations are outside the scope of the Agreement.  *See* Agreement ¶ 2 ("The Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted"); ¶ 6(b) ("The Stipulation will specify that nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail.").  Such careful restrictions would be rendered a nullity under Plaintiff's reading.  *See Keepseagle*, 815 F.3d at 35 (rejecting plaintiff's argument in that case to "write the finality provision out of the Agreement almost entirely" by an expansive interpretation of that agreement that would "run counter to the intent of the parties" in agreeing to "explicit terms circumscribing the Court's jurisdiction").

- 12 -

To the extent Plaintiff attempts to stretch the Court's limited jurisdiction to enforce Paragraphs 2 and 4 of the Agreement to now encompass the Proposed Rule, such attempts are meritless. Even if Plaintiff were correct that the Proposed Rule would hamper the effective monitoring and timely delivery of Election Mail, Paragraphs 2 and 4 of the Agreement supply no remedy to Plaintiff in seeking declaratory or injunctive relief as to the Proposed Rule. Under those provisions, Plaintiff is limited only to seeking relief (and the Court only has jurisdiction to provide relief) if (1) USPS no longer timely and publicly posted National Guidance Documents in October of this year or (2) if USPS no longer hosted outreach meetings with Plaintiff. Neither is the case here.

**C. Plaintiff's challenge to the Proposed Rule is unripe as the Proposed Rule has no legal effect and its impact on the future guidance documents is unclear.**

Contrary to this Court's Memorandum Opinion & Order, even if the Agreement is enforceable against the substance of the future guidance documents, such a challenge is unripe. The Proposed Rule is currently without legal effect, may never become a final rule, or may result in a final rule in a form that materially differs from the current Proposed Rule. *See In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (holding that courts "do not have authority to review proposed rules."); *In re Bluewater Network*, 234 F.3d 1305, 1313 (D.C. Cir. 2000) ("[A]n agency's pronouncement of its intent to defer or to engage in future rulemaking generally does not constitute final agency action reviewable by this court.") (citation omitted); *FDIC v. Bank of Am., N.A.*, 783 F. Supp. 3d 1, 24 (D.D.C. 2025) ("[P]roposed rules are not 'final agency actions' that this court has authority to review."). After all, "a proposed rule is just a proposal." *In re Murray Energy*, 788 F.3d at 334. Federal judicial intervention at this time would merely result in an advisory opinion as to whether the Proposed Rule is in keeping with the Agreement, in violation of Article III's requirement that federal courts resolve only "cases" and "controversies." U.S. Const. art. III, § 2.

- 13 -

Plaintiff's ripeness problem is explained more fully in Judge Nichols' Memorandum Opinion (denying Plaintiff's and others' motions for preliminary injunction in the ongoing *NAACP v. Trump* litigation) in which he explained, "'the issuance of a notice of proposed rulemaking, or other preliminary proceedings undertaken to promote a proposed rule, often will not be ripe for review because the rule may or may not be adopted or enforced.'" *DSCC v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 1487833 at *10 (D.D.C. May 28, 2026) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983)). That is because any injury Plaintiff complains of "depends on a series of contingencies," including "what changes occur through notice and comment, whether a final rule issues, and how that final rule affects" Plaintiff. *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013)). It is "not until such actions are taken that [Plaintiff's] claims might be ripe for judicial review." *Id.* at *12 (also citing *Bristol-Myers Co. v. F.T.C.*, 424 F.2d 935, 940 (D.C. Cir. 1970) for the proposition that "[c]hallenging an agency's *proposed* rule was 'not yet ripe for adjudication.'") (emphasis in original)).

Those issues are even more acute here. Paragraph 2 of the Agreement imposes only a requirement to issue National Guidance Documents by October 1, 2026. Agreement ¶ 2. That, of course, has yet to happen. And because any final rule that may (or may not) be implemented has yet to be issued (if at all), and the guidance documents that would have to be revised to reflect that rule (if it is issued) need not be promulgated for nearly three months, this dispute is doubly unripe.

### D.  Plaintiff failed to properly invoke Paragraph 10 of the Agreement.

Prior to filing a motion to enforce the Agreement, Paragraph 10 of the Agreement requires Plaintiff to "specify in writing to the Postal Service the alleged violation together with all evidence supporting such alleged violation and will provide the Postal Service at least 5 days' notice to investigate the allegations and, if appropriate, to cure the violation." *Id.* ¶ 10. Plaintiff failed to

do so.  That independently requires denial of Plaintiff's motion and supports Defendants' motion for a stay, as Defendants will likely prevail on the merits.

Plaintiff filed its motion to enforce on June 3, 2026, requesting declaratory and injunctive relief as to the Proposed Rule, which Plaintiff acknowledges was only published in the Federal Register on June 2, 2026.  *See* Pl.'s Mot. to Enforce at 2.  The required five days did not pass between the publication of the Proposed Rule in the Federal Register on June 2, 2026, and Plaintiff's motion, ECF No. 171, which was filed on June 3, 2026.  Therefore, Plaintiff did not provide the Postal Service "at least 5 days' notice" as required in Agreement ¶ 10 in order to bring a motion to enforce.

In its motion, Plaintiff states that it has satisfied its "meet-and-confer obligation of paragraph 10 of the Agreement" by reaching out to counsel for USPS on April 2 and again on April 16.  Pl.'s Mot. to Enforce at 6.  But NAACP's motion to enforce concerns the Proposed Rule, *not Executive Order 14,399*.  On both those dates, USPS was simply in receipt of the Executive Order and had not yet issued any proposed rule that USPS could investigate and cure, since the Proposed Rule was only issued a month and a half later, on June 2, 2026.  Because Plaintiff's requested relief is for declaratory and injunctive relief as to the Proposed Rule (*see* Pl.'s Mot. to Enforce at 2), Plaintiff failed to meet its Paragraph 10 obligations to "specify in writing the alleged violation" and "provide the Postal Service at least 5 days' notice to" investigate and cure.  Agreement ¶ 10.  And Plaintiff cannot bootstrap conferral about one issue (the Executive Order) into an adequate conferral about the issue it actually challenges here, the NPRM.  Plaintiff's failure is determinative because this Court's continuing *jurisdiction* over this matter (to the extent it has jurisdiction) extends only to enforcement of Paragraphs 2, 4, and 5 of the Agreement, "subject to the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and **10**." Stipulation of Settlement & Prop. Order,

ECF No. 170 ¶ 2 (emphasis added).  Since Plaintiff failed to meet its obligations under Agreement ¶ 10, this Court is without jurisdiction to consider this motion.  For this independent reason, Defendants are likely to prevail on the merits, further warranting a stay.

### E.  Plaintiff is engaging in impermissible claim splitting.

Even if the Court had jurisdiction to grant Plaintiff its desired declaratory and injunctive relief as to the Proposed Rule through enforcement of the Agreement, Plaintiff is already seeking relief in parallel litigation that Plaintiff is pursuing against USPS.  *See NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1.  Plaintiff's attempt at claim splitting should not be condoned by this Court.  To the extent that Plaintiff can invoke the Agreement to pursue its desired relief in a district court, Plaintiff should do so (if at all) as part of the ongoing *NAACP v. Trump* litigation before Judge Nichols, not through this litigation.

In *Zerilli v. Evening News Association*, the D.C. Circuit affirmed the district court's dismissal of a *Bivens* claim brought by a plaintiff, "on the ground that 'the count is precisely the same as a count pending in a related case.'"  628 F.2d 217, 222 (D.C. Cir. 1980) (citation omitted).  *Zerilli* held that "a plaintiff has 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'"  *Id.* (citation omitted).  Yet that is exactly what Plaintiff attempts to do here.

As Plaintiff concedes, it is maintaining two separate actions, for in addition to its motion in this case, "Plaintiff has separately challenged sections of the Executive Order in *NAACP v. Trump*, No. 1:26-cv-01151-CJN (D.D.C.), consolidated with *DSCC v. Trump*, No. 1:26-cv-01114-CJN (D.D.C.) (lead case)."  Pl.'s Mot. to Enforce at 6, n.2.  Plaintiff's challenge in *NAACP v. Trump* plainly involves the same subject matter, as it challenges § 3(b) of Executive Order 14,399, which directs the Postal Service to issue the Proposed Rule that Plaintiff complains of in the instant

action.  *See NAACP v. Trump*, No. 26-cv-1151, ECF No. 1, Compl. at 67-68 (Prayer for Relief ¶¶ 1-4, challenging Executive Order § 3(b)); Order § 3(b) (". . . the Postmaster General is hereby directed to initiate a proposed rulemaking . . ."); *contra* ECF No. 182 at 18.  Both of Plaintiff's actions are in the same court, namely the United States District Court for the District of Columbia.  Finally, both of Plaintiff's actions are against the same Defendant—the Postal Service.  *See NAACP v. Trump*, No. 26-cv-1151, ECF No. 1, Compl. ¶ 43 (naming "U.S. Postal Service" as a defendant).

As Plaintiff meets all *Zerilli* criteria for claim splitting, Plaintiff's motion to enforce should have been denied, and this Court should grant a stay until the matter can be resolved on appeal.

### F.  Plaintiff's motion should have been denied because the Proposed Rule does not hamper the timely and accurate delivery of Election Mail.

Even if Plaintiff could overcome all procedural impediments, Plaintiff's motion would still be without merit.  The Proposed Rule, if adopted without alteration as a final rule and then incorporated into forthcoming guidance documents—a prospect which, as noted above, is far from a forgone conclusion—would only facilitate USPS's timely and reliable delivery of Election Mail, which advances, rather than undermines, the spirit of the Agreement.

The Proposed Rule's provisions requiring the use of the official Election Mail logo would enhance rather than hamper visibility of Election Mail.  *See* 91 Fed. Reg. at 32,917-18.  And the Proposed Rule's provisions regarding barcodes on envelopes containing outgoing and return ballots for Federal elections would facilitate tracking of individual mailpieces as barcodes are scanned on the Postal Service's mail processing equipment.  *Id.* at 32,916.  Indeed, Plaintiff focuses on measures designed to track service delivery scores for ballots.  *See id.* at 5 (referencing ballots with 90% delivery scores).  But such measurement depends on USPS being able to identify ballots in the mail stream electronically (through a barcode).  Similarly, Plaintiff's motion repeatedly and

favorably mentions "Extraordinary Measures," which are USPS operational practices designed to expedite ballots in the final days before an election. *See* Pl.'s Mot. to Enforce at 5, 7. Those measures largely hinge on USPS being able to identify ballots as such through the Election Mail logo. It stands to reason that mandating these current best practice recommendations would assist with the identification (and thus delivery) of ballots.[6] *See* 91 Fed. Reg. at 32,915-16 (noting that the Proposed Rule "would identify new standards for the envelope design and review for outbound and return ballot envelopes, *which are consistent with the Postal Service's existing recommended best practices*" (emphasis added)). The Proposed Rule (if adopted as a final rule without modification) would thus facilitate the timely and reliable delivery of Election Mail. Indeed, the NPRM specifically acknowledges that the Postal Service is planning to implement Extraordinary Measures in 2026. *See* 91 Fed. Reg. at 32,917 ("[T]he Postal Service will, consistent with prior elections, continue to perform extraordinary measures to deliver completed ballots, and, as previously announced, will issue further guidance on such [E]xtraordinary [M]easures prior to the general election on November 3, 2026.").

---

[6] Indeed, as Defendants have explained, many jurisdictions already implement similar standards to those set forth in the Proposed Rule related to mail preparation consistent with measures that the Postal Service has long recommended. *See, e.g.*, *Vote-by-Mail Envelope Design for California*, available at: https://elections.cdn.sos.ca.gov/vote-by-mail/pdf/guidance.pdf (illustrating on p. 10 envelope designs that feature the USPS Election Mail logo, referring to USPS Pub 361, and Intelligent Mail Barcode); D.C. Bd. of Elections, *Frequently Asked Questions*, https://www.dcboe.org/faqs/early-voting-and-election-day (last visited June 10, 2026) ("Voters who return their mail ballot or Absentee Ballot using USPS mail or Mail Ballot Drop Box voters can track the status of their ballot by using our BallotTrax tracker."); *see also* BallotTrax, *Tracking the Vote: Insights and Analysis from the 2020 Election* 1 (2021), https://www.nass.org/sites/default/files/2021-01/ballottrax-white-paper-nass-winter21.pdf ("Each ballot's envelope is printed with a unique intelligent mail barcode that delivers complete visibility with respect to the ballot's location and status . . . .").

Plaintiff's arguments to the contrary, especially about "underinclusive" lists,[7] misapprehend the Order and the Proposed Rule. The Postal Service is proposing to require state and local election officials, or their designees, to submit lists of the names of people to whom they are mailing ballots—information fully within their ken. The Postal Service will not independently determine who should be enrolled on a State-Specific Mail-In and Absentee Participation List or edit those lists. *See id.* at 32,916. As the Proposed Rule clearly indicates, each state (and not USPS) would retain full control over which voters will be enrolled on its State-Specific Mail-In and Absentee Participation List and therefore which voters will receive (or not receive) mail-in or absentee ballots. *See id.* States have the ability to add voters to their State-Specific Mail-In and Absentee Participation Lists "until the last day that ballots may be mailed to individuals under state law." *See id.* at 32,918. Therefore, there are no plausible concerns, certainly at this stage, that the Proposed Rule would negatively impact USPS's ability to timely and reliably deliver Election Mail. Rather, this provision would, again, assist USPS in more effectively tracking (and thus delivering)

---

[7] Plaintiff's references to counsel for the government acknowledging that lists might be "underinclusive" or inaccurate (*see* Pl.'s Mot. to Enforce at 10, n.5)—which this Court credited in its Memorandum & Order, ECF No. 182 at 7-8—are factually erroneous. As is clear from the hearing transcript, counsel for the government was referring to the "State Citizenship Lists" contemplated by § 2 of the Order, *not the "Mail-In and Absentee Participation Lists" contemplated by § 3 of the Order and included in the Proposed Rule. See* 91 Fed. Reg. 32,918 ("State-Specific Mail-In and Absentee Participation Lists."). Unlike the State Citizenship Lists (which may be underinclusive), the Mail-In and Absentee Participation Lists will consist of "the name and address of each individual . . . who was enrolled" by that state's election officials. *Id.* Or, in other words, the list of people to whom the state and local election officials mail ballots. Therefore, there is no comparable danger of an underinclusive list, since the list is simply the list of people that were mailed ballots. And as the NPRM itself makes clear, that list remains entirely within the control of State and Local officials. *See id.* at 32,916 (USPS "would not verify whether individuals should or should not be included on a State's Mail-In and Absentee Participation List. States will retain full control over the content of that list."); *see also id.* ("The Postal Service would not change the information provided by the state when compiling the lists.").

such important mail.  This is another ground on which Defendants are likely to prevail in their appeal and another reason to support Defendants' instant motion for a stay pending that appeal.

## II.    DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

Defendants respectfully understand this Court's Order to enjoin the Postal Service "from implementing the standards and procedures described in the Proposed Rule," *see* ECF No. 181 at 2, to mean that USPS is enjoined—without evident qualification—from issuing a final rule implementing the Proposed Rule as to any party, apparently at any time, and not merely as to Plaintiff NAACP.  Absent a stay, this Court's sweeping injunction would thus severely disrupt USPS's efforts to potentially promulgate a final rule that would "improve the visibility of ballots in the mailstream" and "facilitate the enforcement of federal law," USPS Proposed Rule, 91 Fed. Reg. 32,915-16, in time for the upcoming general election.  Without a stay, even if Defendants ultimately prevail in dissolving or limiting this Court's injunction on appeal, valuable and irreplaceable time will have been lost in enjoining preparatory steps.  These steps include the work USPS needs to build and deploy the Postal Service's new portal that would allow election officials to provide their lists to the Postal Service of voters who are mailed ballots for Federal elections. *See id.* at 32,916 ("States would provide the Postal Service with this information via the Federal Ballot Mail Portal.").  Moreover, "the Postal Service intends to provide further technical instructions regarding barcode creation, service type identifiers, acceptance processes, file preparation, documentation submission, and entry of data into the proposed portal." *Id.* at 32,917.  All such efforts would necessarily be delayed absent a stay.

That these efforts would not be complete in time for deployment as to the upcoming general election is especially harmful for Defendants because these preparatory steps themselves do not impose any harm on Plaintiff.

### III.    THE REMAINING STAY FACTORS TIP IN FAVOR OF DEFENDANTS.

The remaining stay factors of balance of equities and public interest also favor granting a stay. The public interest is injured when a federal court adjudicates a matter outside of its jurisdiction. Respectfully, even if this Court has jurisdiction to hear a contract dispute against the government, the Court's Order ignores the carefully negotiated bounds of the Court's jurisdiction in enforcing the Agreement, limited only to Defendants' informational duties under Paragraphs 2 and 4, by manufacturing jurisdiction to grant Plaintiff's requested relief, where no such jurisdiction exists. The public interest strongly favors the sound judicial interpretation of contractual terms in settlement agreements, as to do otherwise would both undermine the viability of alternative dispute resolution methods and upset parties' bargained-for expectations. The need to proceed through long and potentially costly litigation, rather than resolve disputes through settlement agreements that are carefully enforced according to their terms would deplete finite judicial resources, which is contrary to the public interest.

These harms are even more acute in this case, where a settlement agreement of limited scope between one private party (NAACP) and the Postal Service, would bind the implementation of a Proposed Rule with nationwide effects. The rulemaking process allows for any person, including Plaintiff's members, to submit comments which the Postal Service must consider and reply to in formulating its ultimate policy in a final rule. That entire process is short-circuited on the basis of an Agreement that never mentions let alone contemplates a veto by a private party over the public policy of the Postal Service. The public interest is manifestly injured by this injunction.

On the other side of the balance, Plaintiff's interest is slight. At least at this time, NAACP merely seeks to prevent hypothesized harm based on their erroneous interpretation of the Agreement. Plaintiff has already sued (and lost a preliminary injunction motion) in another court in this

- 21 -

District for similar relief.  The balance of equities tips against Plaintiff's efforts to harness the Agreement to obtain relief that has been duly foreclosed by a court of competent jurisdiction.

## **<u>CONCLUSION</u>**

Respectfully and for the foregoing reasons, this Court should grant a stay of its Order (ECF No. 181) pending appeal.  Defendants respectfully request a ruling by July 8, 2026, to allow the Government to seek relief, if necessary, from the United States Court of Appeals for the District of Columbia Circuit.

Dated: July 6, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

JOSEPH E. BORSON
*Assistant Branch Director*

/s/ *Esam K. Al-Shareffi*
STEPHEN M. PEZZI
D.C. Bar. No. 995500
 *Chief Litigation Counsel*
ESAM K. AL-SHAREFFI
D.C. Bar No. 90010174
 *Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 598-7367
E-mail: esam.k.al-shareffi@usdoj.gov

*Counsel for Defendants*