**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

National Association for the Advancement of
Colored People,

*Plaintiff*,

v.

United States Postal Service, et al.,

*Defendants*.

Civil Action No. 20-cv-2295 (EGS)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO STAY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................ i

INTRODUCTION .............................................................................................................1

ARGUMENT .....................................................................................................................1

I.      This Court properly exercised jurisdiction over Plaintiff's Motion to Enforce. ..................1

      A.      Courts have jurisdiction to enforce compliance with settlement agreements incorporated as court orders. ...................................................................1

      B.      Defendants' jurisdictional arguments lack merit. ....................................................3

II.      This Court correctly rejected Defendants' merits arguments...............................................6

      A.      This Court correctly enforced paragraph 2 of the Settlement Agreement. .............6

      B.      Plaintiff's motion was ripe. ...................................................................................7

      C.      Plaintiff complied with paragraph 10 of the parties' agreement. ..........................10

      D.      Defendants' claim-splitting argument lacks merit. ...............................................10

      E.      Defendants' rule is incompatible with the commitment to timely deliver Election Mail....................................................................................................11

III.      Defendants will suffer no irreparable harm absent a stay. ................................................12

IV.      The balance of harms and the public interest weigh decisively against a stay. .................14

CONCLUSION.................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Pages**

*Asylumworks v. Mayorkas*,
No. 20-CV-3815 (BAH), 2023 WL 2733722 (D.D.C. Mar. 31, 2023) ............................... 2

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006).................................................................................. 12

*DSCC v. Trump*,
No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026)............................. 9

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ................................................................................. 14

*Franklin-Mason v. Mabus*,
742 F.3d 1051 (D.C. Cir. 2014).................................................................................. 5

*Frew v. Hawkins*,
540 U.S. 431 (2004).................................................................................................. 2

*Glidden Co. v. Zdanok*,
370 U.S. 530 (1962).................................................................................................. 4

*International Ladies' Garment Workers' Union v. Donovan*,
733 F.2d 920 (D.C. Cir. 1984).................................................................................... 2

*Jules v. Andre Balazs Properties*,
146 S. Ct. 1209 (2026).............................................................................................. 2

*Keepseagle v. Vilsack*,
815 F.3d 28 (D.C. Cir. 2016)................................................................................. 3, 7

*Kokkonen v. Guardian Life Insurance Co. of America*,
511 U.S. 375 (1994)......................................................................................... 2, 3, 4

*Lackey v. Stinnie*,
604 U.S. 192 (2025).................................................................................................. 6

*League of United Latin American Citizens v. Executive Office of the President*,
808 F. Supp. 3d 29 (D.D.C. 2025) ...................................................................... 13, 15

*League of Women Voters of United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)..................................................................................... 14

*National Ass'n of Regulatory Utility Commissioners v. Department of Energy*,
736 F.3d 517 (D.C. Cir. 2013).................................................................................. 13

*Nken v. Holder*,
556 U.S. 418 (2009)............................................................................... 1, 13, 14

*Obama for America v. Husted*,
697 F.3d 423 (6th Cir. 2012) .................................................................. 14

*Page v. Pension Benefit Guaranty Corp.*,
213 F. Supp. 3d 200 (D.D.C. 2016) .......................................................... 3

*Pigford v. Vilsack*,
777 F.3d 509 (D.C. Cir. 2015)............................................................. 2, 3, 7

*Potter v. District of Columbia*,
126 F.4th 720 (D.C. Cir. 2025) ................................................................ 2

*Richardson v. Morris*,
409 U.S. 464 (1973)................................................................................. 4

*Shaffer v. Veneman*,
325 F.3d 370 (D.C. Cir. 2003)................................................................. 3

*State of California v. Trump*,
No.1:26-CV-11581-IT, 2026 WL 1826490 (D. Mass. June 25, 2026).............................. 14

*State of California v. Trump*,
No. 26-cv-11581, Mem. & Order (D. Mass. July 7, 2026), available at
https://www.courtlistener.com/docket/73141063/208/state-of-california-v-trump/ ......... 13

*Tritz v. U.S. Postal Service*,
721 F.3d 1133 (9th Cir. 2013) ................................................................ 5

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)............................................................................... 15

*United States v. Facebook, Inc.*,
136 F.4th 1129 (D.C. Cir. 2025)............................................................. 3, 4

*United States v. Western Electric Co.*,
907 F.2d 160 (D.C. Cir. 1990)............................................................. 2, 8

*Volvo North America Corp. v. Men's International Professional Tennis Council*,
857 F.2d 55 (2d Cir. 1988) ................................................................. 8, 9

iii

**Statutes**

28 U.S.C. § 1331...................................................................................................................... 6

28 U.S.C. § 1361...................................................................................................................... 6

39 U.S.C. § 101(a) ................................................................................................................ 12

39 U.S.C. § 101(e) ................................................................................................................ 12

39 U.S.C. § 403(c) ................................................................................................................ 12

39 U.S.C. § 409(a) .................................................................................................................. 5

**Other Authorities**

USPS, Ballot Mail for Federal Elections,
    91 Fed. Reg. 32915 (June 2, 2026) .................................................................................. 11

Executive Order 14399,
    91 Fed. Reg. 17125 (Mar. 31, 2026).................................................................................. 8

Tierney Sneed, Jeremy Herb, & Gabe Cohen, *Postal Service Won't Deliver Mail Ballots for
    States That Don't Hand Over Voter Lists, Under Plan for Trump Directive*,
    CNN (June 10, 2026), https://www.cnn.com/2026/06/10/politics/postal-service-deliver-
    mail-in-ballots .................................................................................................................. 8

## INTRODUCTION

A stay pending appeal is "an intrusion into the ordinary processes of administration and judicial review," and is "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted). In evaluating a motion for a stay pending appeal, courts consider: (1) the movant's likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable harm absent a stay; (3) the harm a stay would cause other parties; and (4) the public interest. *Id*. at 434. The first two factors are "the most critical." *Id*. A stay is "an exercise of judicial discretion," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34 (citations omitted). Defendants fail to carry their burden here.

## ARGUMENT

**I.    This Court properly exercised jurisdiction over Plaintiff's Motion to Enforce.**

**A. Courts have jurisdiction to enforce compliance with settlement agreements incorporated as court orders.**

On December 17, 2021, the parties jointly filed a stipulation of settlement and proposed order. *See* Stipulation, ECF No. 170. That Stipulation stated: "The Court shall have jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement, subject to the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and 10 of the Settlement Agreement, which are incorporated into this Stipulation and Order as if fully set forth herein." *Id*. ¶ 2. This Court then entered an Order stating: "The terms presented in the stipulation and order are hereby incorporated by reference into this Court's Order." Minute Order (Dec. 20, 2021). Thus, not surprisingly, in Defendants' response to Plaintiff's Motion to Enforce Compliance with Settlement Agreement and Court Order, Defendants expressly stated that this Court retains jurisdiction to enforce paragraph 2 of the Settlement Agreement. *See* Defs. Opp., ECF No. 175 at 4, 10.

1

As Plaintiff noted in its motion to enforce, a court's jurisdiction to enforce the terms of its orders is well-established. *See* Pl. Motion, ECF No. 171 at 8 (citing *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (stating that, when a judicial decree is based on an agreement between the parties, it is "enforceable as … a judicial decree that is subject to the rules generally applicable to other judgments and decrees" (cleaned up)), and *Potter v. Dist. of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (recognizing courts' "inherent power to enforce compliance with their lawful orders" (cleaned up))); *see also United States v. W. Elect. Co.*, 907 F.2d 160, 161 (D.C. Cir. 1990) (affirming district court's declaratory ruling that a party's proposal would violate a consent decree). "A district court's exercise of its authority to enforce its judgments 'is particularly appropriate in a case ... where an administrative agency plainly neglects the terms of a mandate, and the case then returns to the court—under the same docket number and involving the same parties—on a motion to enforce the original mandate.'" *Asylumworks v. Mayorkas*, No. 20-CV-3815 (BAH), 2023 WL 2733722, at *4 (D.D.C. Mar. 31, 2023) (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)).

This basic principle is no different where the court's order incorporates terms of a settlement agreement. As the Supreme Court has expressly recognized, where a breach of a settlement agreement is a violation of a court order because "the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order"—the court has "ancillary jurisdiction to enforce the agreement." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *see Jules v. Andre Balazs Props.*, 146 S. Ct. 1209, 1219 (2026) (citing *Kokkonen* for this point); *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015) (same). Thus, "a party that wants the court to retain

2

jurisdiction over its settlement agreement should request that the district court do so in its order of dismissal." *Shaffer v. Veneman*, 325 F.3d 370, 373–74 (D.C. Cir. 2003). That is precisely what the parties jointly did in this case.

Further, the principle that a court retains ancillary jurisdiction to enforce "court orders containing a provision retaining jurisdiction over the settlement agreement or incorporating the terms of the settlement agreement in the order" applies in cases where the government is the non-complying party. *United States v. Facebook, Inc.*, 136 F.4th 1129, 1132 (D.C. Cir. 2025) (internal quotation marks omitted) (citing *Kokkonen*, 511 U.S. at 381, and applying this principle to a motion to enforce an agreement with a federal agency); *Keepseagle v. Vilsack*, 815 F.3d 28, 34 (D.C. Cir. 2016) (same); *Pigford*, 777 F.3d at 514 (same).

## B.    Defendants' jurisdictional arguments lack merit.

Although Defendants expressly agreed to this Court's retention of jurisdiction to enforce provisions of the settlement agreement, and expressly acknowledged this Court's jurisdiction to enforce paragraph 2 in their opposition to Plaintiff's motion to enforce, they now make a remarkable about-face: Defendants now argue that the Court cannot enforce its own Order (and thus paragraph 2 of the settlement agreement).

Defendants' argument starts from the premise that "no court has jurisdiction to grant specific performance in a contract suit against the government." Defs. Stay Motion, ECF No. 184-1. They then argue that a settlement agreement is a contract, and thus unenforceable against the government—even when the agreement is incorporated into a court order. *Id*. at 7–8. That is a breathtaking position for the federal government to take. If correct, *the federal government's non-monetary promises in a consent decree would never be enforceable*.[1] Fortunately, Defendants'

---

[1] When a settlement agreement is incorporated into a judicial order, the incorporated portions of "[t]he agreement [are] then treated as a consent decree." *Page v. Pension Benefit Guar. Corp.*, 213

theory is foreclosed by Supreme Court and D.C. Circuit cases recognizing district courts' authority to enforce court orders containing a provision retaining jurisdiction over a settlement agreement or incorporating the terms of settlement agreements, including when the federal government is the non-complying party. *See supra* pp. 1–3.

Without acknowledging those cases, Defendants point out that, when the Tucker Act is the basis for jurisdiction in a contract suit against the federal government, the Court of Federal Claims is generally authorized to award damages but not equitable remedies. *See* Defs. Stay Motion, ECF No. 184-1 at 7 (citing cases). That limitation is not pertinent here, where Defendants acknowledge that the Tucker Act is *not* the basis for this Court's jurisdiction. *See id.* at 8; *see also* Amended Complaint, ECF No. 149 at 6 (citing 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (jurisdiction to compel a federal officer to perform his duty) as the basis for jurisdiction). And the law is clear that a district court has ancillary jurisdiction to "effectuate its decrees." *Facebook*, 136 F.4th at 1132 (quoting *Kokkonen*, 511 U.S. at 380).

In any event, Defendants' discussion of the limitation of review under the Tucker Act reflects the unique role of the Court of Federal Claims, which has "been given jurisdiction only to award damages." *Glidden Co. v. Zdanok*, 370 U.S. 530, 557 (1962). That limitation applies to district courts only when, under the Tucker Act, they "sit as a court of claims" with respect to certain contract actions for monetary damages against the government. *Richardson v. Morris*, 409 U.S. 464, 465–66 (1973) (citation omitted). Again, the parties here agree that jurisdiction is *not* based on the Tucker Act.[2]

---

F. Supp. 3d 200, 206 (D.D.C. 2016), *aff'd sub nom. Collins v. Pension Benefit Guar. Corp.*, 881 F.3d 69 (D.C. Cir. 2018).

[2] Contrary to Defendants' assertion, Plaintiff could *not* have moved to enforce the agreement and this Court's Order "through a suit in the Court of Federal Claims under the Tucker Act." Defs. Stay

The one case that Defendants cite outside the Tucker Act context further refutes their argument. Asserting that 39 U.S.C. § 409(a) provided the basis for jurisdiction in this case, Defendants cite *Tritz v. U.S. Postal Service*, 721 F.3d 1133, 1138 (9th Cir. 2013), for the proposition that section 409(a) grants to district courts jurisdiction over contract claims against USPS, concurrent with the jurisdiction of the Court of Federal Claims under the Tucker Act. To start, Defendants are wrong that 39 U.S.C. § 409(a) is the sole basis for this Court's jurisdiction or that jurisdiction here is concurrent with that of the Court of Federal Claims. *See supra* p. 4 & n.2. Moreover, *Tritz* does not support the assertion that a settlement agreement is not enforceable against the government—it shows the opposite. In *Tritz*, although the court ruled in favor of USPS, it addressed, *on the merits*, the plaintiff's claim that USPS had breached non-monetary provisions of a settlement agreement. *See id.* at 1140 (holding that documents attached to the complaint failed to support the breach of contract claim). Thus, *Tritz* stands for the proposition that a federal district court exercising jurisdiction under 39 U.S.C. § 409(a) can award specific performance against the government for breaching a settlement agreement, even one that (the opinion suggests) had not been adopted in a court order.

---

Motion, ECF 184-1 at 8. As Defendants themselves explain, the Court of Federal Claims can award only damages, not equitable relief. *See id*. at 7.

By contrast, in *Franklin-Mason v. Mabus*, 742 F.3d 1051 (D.C. Cir. 2014), cited by Defendants, the plaintiff had determined that specific performance of a settlement agreement with the federal government was "no longer practicable" and was seeking monetary damages for breach of the agreement. *Id*. at 1052. This Court therefore transferred the suit to the Court of Federal Claims, explaining that the plaintiff's claim to damages had "no independent statutory grant of authority" other than the Tucker Act. Id. at 1055. Here, by contrast, Plaintiff's motion sought to enforce compliance with the terms of the Agreement and Order; it did not seek damages, and Defendants concede, *see* Defs. Stay Motion, ECF No. 184-1 at 8, that there is an independent statutory grant of authority.

Here, of course, the relevant provisions of the parties' settlement agreement are *expressly* judicially enforceable and expressly "incorporated by reference" in a court order. *See* Minute Order (Dec. 20, 2021). Thus, unlike an ordinary contract, those provisions were "approved and given force of law by the court" and "enforceable by" it. *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025). Defendants offer no authority for the proposition that district courts presiding over cases under section 409(a)—or 28 U.S.C. § 1331 or § 1361—lack jurisdiction to enforce their own orders.

## II.    This Court correctly rejected Defendants' merits arguments.

### A.  This Court correctly enforced paragraph 2 of the Settlement Agreement.

Plaintiff's motion sought to enforce obligations under paragraph 2 of the parties' Settlement Agreement, which Defendants agreed was judicially enforceable. Paragraph 2 requires USPS to publicly disseminate "National Guidance Documents," which the Agreement defines as "official materials … that will reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Mem. Op., ECF No. 182 at 9 (quoting Agreement ¶ 1). "Election Mail" expressly includes "ballots." *Id*. at 9 n.5 (quoting Agreement ¶ 1). As this Court already explained, USPS's commitment that its nationwide policies will prioritize the monitoring and timely delivery of ballots is therefore a necessary element of paragraph 2 itself, which is more than merely an "informational obligation" for USPS. *Id*. at 9. USPS cannot meet its obligation to disseminate documents reflecting practices for prioritizing the monitoring and timely delivery of ballots if it refuses to deliver ballots of its choosing based on newly invented criteria for Election Mail under the Proposed Rule.

As this Court has explained, Defendants' reliance on paragraph 2's discretionary language is unavailing. Paragraph 2 states that USPS "retains discretion over … the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement." But USPS's discretion must be exercised reasonably and consistent with the agreement as a whole,

including USPS's "practices and policies for prioritizing the monitoring and timely delivery of Election Mail." *Id*. at 10–11. While paragraph 2 confers on USPS discretion over the "specific manner and method of posting" and the particular content of guidance documents, it does not confer discretion *not* to prioritize the timely delivery of Election Mail. Agreement ¶ 1. As this Court explained, the "substantive contents of the postings must be consistent with its practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Mem. Op., ECF No. 182 at 11 (quotations omitted). Although USPS retains latitude over the means, *see* Agreement, ECF No. 170 ¶ 6, that latitude is not a license to "put in place a policy of refusing to accept and deliver certain ballots." Mem. Op., ECF No. 182 at 11.

Neither *Pigford* nor *Keepseagle*, on which Defendants rely, *see* Defs. Stay Motion, ECF No. 184-1 at 12, advances Defendants' argument. Those cases stand for the proposition that a court's enforcement of an agreement must stay within the bounds of that agreement and the related order. This Court's Order does exactly that: It enforces paragraph 2, as the parties agreed it could. *See* Agreement, ECF No. 170 ¶ 10. As this Court explained: "The Proposed Rule violates paragraph 2 of the Agreement because the Postal Service cannot post documents reflecting 'practices and policies for prioritizing the monitoring and timely delivery of Election Mail,' if its policies provide that it will not accept 'noncompliant mailings' and therefore will not deliver mail-in or absentee ballots to some voters, and if it will not mail ballots to *any* voters in a state where the state 'declines or fails to certify a list.'" Mem. Op., ECF No. 182 at 10 (first quoting ¶ 2 and then quoting Proposed Rule).

### B. Plaintiff's motion was ripe.

Defendants' ripeness argument likewise repeats contentions that this Court has already rejected. As a threshold matter, Defendants do not dispute Plaintiff's standing. And aside from a

passing reference to Article III, they do not seem to argue that the Court's consideration of the motion to stay was not constitutionally ripe.

Prudential ripeness poses no obstacle either. First, as to fitness for review, as this Court has explained, Plaintiff's motion presented a purely legal question about how to interpret the parties' agreement and whether paragraph 2 allows USPS to refuse to deliver certain ballots. *See* Mem. Op., ECF No. 182 at 10. Second, "[a]s to hardship, NAACP has plausibly suggested—and the Postal Service has not disputed—that the Proposed Rule is already having a 'real impact on present day affairs.'" *Id.* at 13 (quoting *Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 64 (2d Cir. 1988)). And while Defendants continue to point to authority on the reviewability under the Administrative Procedure Act (APA) of proposed rules, Defs. Stay Motion, ECF No. 184-1 at 13, this Court correctly recognized that Plaintiff asserts no APA claim. Mem. Op., ECF No. 182 at 12. *See also W. Elect. Co.*, 907 F.2d at 161 (considering whether a party's proposal would violate its agreement).

Importantly, there is nothing speculative about the trajectory of USPS's Proposed Rule. The Executive Order directed USPS to initiate a rulemaking within sixty days and to issue any final rule within 120 days of the Executive Order. *See* Exec. Order 14399 § 3(b), (d), 91 Fed. Reg. 17125 (Mar. 31, 2026). USPS then published the Proposed Rule, which, as this Court found, "tracks the directives of the EO," Mem. Op., ECF No. 182 at 4, with a comment period timed to permit finalization by the Executive Order's deadline. The Administration has publicly stated that it "remains confident that the Executive Order will be implemented by the November election."[3]

---

[3] Tierney Sneed, Jeremy Herb, & Gabe Cohen, *Postal Service Won't Deliver Mail Ballots for States That Don't Hand Over Voter Lists, Under Plan for Trump Directive*, CNN (June 10, 2026), https://www.cnn.com/2026/06/10/politics/postal-service-deliver-mail-in-ballots (quoting a White House spokesperson).

And USPS has stated that it "has been taking steps to" implement the proposal. Monteith Decl., *State of Calif. v. Trump*, No. 1:26-CV-11581-IT, ECF No. 194-2 ¶ 7 (July 1, 2026).[4] Consistent with those facts, Defendants state in their motion that, absent a stay, they will lose "valuable and irreplaceable time" on portal construction, technical instructions and assistance, file preparation, document submission, and other implementation steps needed "in time for the upcoming general election." Defs. Stay Mot., ECF No. 184-1 at 20. Their representation that the Court's injunction is delaying steps to implement their proposal makes clear that the proposal is not too contingent to adjudicate.

Defendants' continued reliance on *DSCC v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026), where Judge Nichols held that a challenge to the Executive Order was not ripe, remains inapposite. That decision was issued before USPS published the Proposed Rule, assessed constitutional and statutory challenges to the Executive Order itself, and did not involve—because that court could not enforce—the parties' Agreement. *See* Mem. Op., ECF No. 182 at 17–18. But numerous states and other stakeholders have attested that USPS's proposal is harming their interests. *See, e.g.*, Pl. Reply, ECF No. 177 at 11. This evidence, undisputed by Defendants, establishes that the proposal has a "real impact on present affairs" and that Plaintiff's challenge is ripe. *Volvo N. Am.*, 857 F.2d at 64.

Finally, Defendants' claim that paragraph 2 cannot be violated before October 1, 2026, *see* Defs. Stay Motion, ECF No. 184-1 at 14, is a merits question, not a ripeness question. In any event, Defendants misread the provision. October 1 is the deadline for posting guidance documents applicable to the general election—documents that must reflect "the Postal Service's formal

---

[4] Available at https://storage.courtlistener.com/recap/gov.uscourts.mad.298518/gov.uscourts. mad.298518.194.2.pdf.

nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Agreement, ECF No. 170 ¶ 1. When, as here, the Postal Service is proposing to abandon its commitment to prioritizing the monitoring and timely delivery of Election Mail, such that it could not possibly issue the National Guidance Documents required by the parties' Agreement, Plaintiff's motion to enforce need not wait until October 1.

### C. Plaintiff complied with paragraph 10 of the parties' agreement.

In their assertion that Plaintiff did not provide proper notice in accordance with Paragraph 10 of the Agreement, Defendants mischaracterize the notice that Plaintiff provided a full two months before filing its motion to enforce. They argue that, when Plaintiff's counsel reached out to counsel for USPS on April 2 and again on April 16, USPS had not yet issued any proposed rule, and that Plaintiff's notice was about the Executive Order and not the Proposed Rule. *See* Defs. Stay Motion, ECF No. 184-1 at 15. However, in its writing to counsel for USPS, Plaintiff's counsel expressly informed Defendants' counsel "that *the rulemaking* directed by the EO would cause the Postal Service to violate the Agreement." Mem. Op., ECF No. 182 at 15 (emphasis added, citing Exhibit A to Plaintiff's Reply in Support of Motion to Enforce, ECF No. 177-1 at 7–8). This Court therefore correctly rejected Defendants' argument as to paragraph 10.

### D. Defendants' claim-splitting argument lacks merit.

Defendants next reprise their argument that Plaintiff's challenge is impermissible claim splitting. *See* Defs. Stay Mot., ECF No. 184-1 at 16–17. As this Court explained, that two actions "both involve the EO in some way does not turn the claims into the same 'subject matter.'" Mem. Op., ECF No. 182 at 18. The instant case seeks relief based on the settlement agreement and the Proposed Rule. It is thus distinct from *NAACP v. Trump*, No. 26-1151 (CJN) (D.D.C.), which seeks relief based on allegations that the Executive Order is unlawful. *See* Mem. Op., ECF No. 182 at

18. Moreover, Plaintiff has no mechanism other than a motion to enforce in this Court to seek enforcement of the terms of the Agreement.

### E. Defendants' rule is incompatible with the commitment to timely deliver Election Mail.

Defendants end their argument with the claim that a rule under which "[m]ailings that do not comply with [new list and ballot requirements] will not be accepted" and under which it would refuse to transmit any outbound federal ballot mail to voters in states that decline or fail to certify lists requested by USPS, 91 Fed. Reg. 32915, 32918 (June 2, 2026) (24.5.3(a), (b)), "facilitate[s] the timely delivery of Election Mail." Defs. Stay Mot., ECF No. 184-1 at 18. As this Court recognized, though, *see* Mem. Op., ECF No. 182 at 8 n.4, Plaintiff's motion did not concern measures to track service delivery generally. Rather, the motion challenged USPS's refusal to deliver ballots in states where elections officials did not adopt the features set forth in the Proposed Rule. Refusing to transmit ballots is not "prioritiz[ing] … timely delivery of Election Mail." As this Court put it, "the Postal Service cannot post documents reflecting 'practices and policies for prioritizing the monitoring and timely delivery of Election Mail' if its policies provide that it will not accept 'noncompliant mailings' and therefore will not deliver mail-in or absentee ballots to some voters, and if it will not mail ballots to *any* voters in a state where the state 'declines or fails to certify a list.'" *See* Mem. Op., ECF No. 182 at 10.

Defendants' invocation of "Extraordinary Measures," *see* Defs. Stay Mot., ECF No. 184-1 at 18, underscores the problem. Extraordinary Measures expedite completed ballots already in the mail stream. The Proposed Rule operates one step earlier, determining whether an outbound ballot enters the mail stream *at all*. A ballot that USPS refuses to accept from the state election officials will never reach the voter, who will therefore not have the opportunity to submit a "completed ballot" for USPS to expedite and deliver in time to be counted. This Court agreed: USPS's

11

assurance about Extraordinary Measures "does not address the issue since the Proposed Rule would allow the Postal Service to reject non-compliant ballots and so they would not be mailed in the first place." Mem. Op., ECF No. 182 at 8 n.4.

Defendants' refrain that states retain "full control" over "State-Specific Mail-in and Absentee Participation List[s]," Defs. Stay Mot., ECF No. 184-1 at 19, is no answer. State and county officials have catalogued, under oath, the administrative, financial, and technical obstacles to keeping the lists current within the Proposed Rule's timeframe. *See* Statement of Material Facts, *State of Calif. v. Trump*, No. 1:26-cv-11581-IT (D. Mass. Apr. 23, 2026), Dkt. No. 105 (compiling statements from declarations submitted by election officials from twenty-one states, D.C., and three localities). And if a state—for resource, technology, or policy reasons—cannot or will not certify a list, the Proposed Rule's penalties fall not on the state but on the state's voters, because USPS will refuse to deliver ballots to them. The proposed system thus cannot be reconciled with the Agreement, with USPS's February 2026 reaffirmation of its commitments, or with the Postal Reorganization Act of 1970's command that USPS provide "prompt, reliable, and efficient services to patrons in all areas and [to] render postal services to all communities," give "the highest consideration" to expeditious delivery of important letter mail, and refrain from "undue or unreasonable discrimination among users of the mails." Pls.' Mot., ECF No. 171 at 12 (quoting 39 U.S.C. §§ 101(a), (e), 403(c)).

### III.    Defendants will suffer no irreparable harm absent a stay.

To justify a stay, Defendants' claimed injury "must be both certain and great," "actual and not theoretical," and "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted). "[S]imply showing some 'possibility of

12

irreparable injury' fails to satisfy" the irreparable harm factor. *Nken*, 556 U.S. at 434–35. Defendants do not come close to meeting their high burden.

To start, Defendants' irreparable-harm theory cannot be squared with their merits theory. In arguing about ripeness, Defendants proclaim that the Proposed Rule is "currently without legal effect, may never become a final rule, or may result in a final rule in a form that materially differs from the current Proposed Rule." Defs. Stay Motion, ECF No. 184-1 at 13. But in addressing irreparable harm, they insist that an injunction against implementing the same Proposed Rule inflicts immediate, irreparable injury by delaying "preparatory steps" for a system that, they make clear, they fully plan to implement. *Id.* at 20. In any event, Defendants' decision to make consequential changes so soon before the election was entirely their own, and, thus, "the government's problem is of its own making." *Nat'l Ass'n of Regul. Util. Comm'rs v. Dep't of Energy*, 736 F.3d 517, 520 (D.C. Cir. 2013). This Court should not now rescue Defendants from the compressed timeline on which they chose to act. *See also State of Calif. v. Trump*, No. 26-cv-11581, Mem. & Order at 6 (D. Mass. July 7, 2026)[5] (finding that "Defendants have made no showing that 'delay' of the EO's deadlines for USPS' implementation constitutes irreparable injury").

In any event, the "preparatory steps" Defendants seek to resume are steps toward implementing a Proposed Rule that would violate the parties' agreement, as this Court held. *See* Mem. Op., ECF No. 182 at 7–11. Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 808 F. Supp. 3d 29, 83 (D.D.C. 2025) (cleaned up).

---

[5] Available at https://www.courtlistener.com/docket/73141063/208/state-of-california-v-trump/.

13

**IV.    The balance of harms and the public interest weigh decisively against a stay.**

Because the federal government is the moving party, the third and fourth factors merge, *Nken*, 556 U.S. at 435, and both favor Plaintiff. The public interest lies "in ensuring that unlawful agency decisionmaking does not strip citizens of the right to vote," *League of Women Voters of United States v. Newby*, 838 F.3d 1, 14 (D.C. Cir. 2016), and "favors permitting as many qualified voters to vote as possible," *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012). A stay would provide free rein for USPS to move forward—in the middle of an election, with primaries ongoing and preparation work already underway for the general election less than four months away—with an unlawful system permitting USPS to refuse to deliver mail-in ballots. As discussed above, the uncontested evidence demonstrates the confusion and disruption that the Proposed Rule is already causing among voters, Plaintiff's members, and election officials nationwide. A stay would further compound those harms at a moment when stability in election administration and robust training matters most. If the Proposed Rule takes effect and ballots go undelivered, the injury is irreversible: "[T]here can be no 'do-over' or redress of a denial of the right to vote after an election." *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Nor is there any public interest in accelerating implementation of a Proposed Rule commanded by an Executive Order that a federal court has declared "legally void" as ultra vires and unconstitutional. *State of Calif. v. Trump*, No. 1:26-CV-11581-IT, 2026 WL 1826490, at *17 (D. Mass. June 25, 2026).

Defendants' appeal to the sanctity of settlement agreements, Defs. Stay Mot., ECF No. 184-1 at 21, inverts the interest it invokes. The public interest in settlement is served by holding parties, including the government, to their bargains. Nothing would more surely "undermine the viability of alternative dispute resolution" with the federal government, *id.*, than the rule Defendants advocate. Nor is there anything untoward about the Order's reach: USPS's obligations

14

under the Agreement are nationwide by the parties' own definition—the National Guidance Documents reflect USPS's "formal nationwide" policies, and the relief provided by the Court in response to the motion to enforce is accordingly coextensive with those obligations.

In addition, this Court's order is appropriately tailored for two additional reasons. First, Defendants themselves have stated that the rule must be implemented nationwide or not at all. *See* Monteith Decl., *supra* p. 8, ¶ 4 ("It is not feasible for the Postal Service to implement a final rule with respect to states other than the Plaintiff States."). Second, because Plaintiff carries out voter registration and education activities in jurisdictions in every state and has members who are registered voters across the country, *see* Exhibit F to Pl. Motion, ECF No. 171-6 ¶¶ 6, 8–12, "awarding narrower relief—such as by enjoining the named Defendants from implementing [the proposed procedures] only in certain States, under certain circumstances, or with respect to certain categories of individuals—would not 'offer complete relief'" to Plaintiff. *League of United Latin Am. Citizens*, 808 F. Supp. 3d at 85 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025)). Under these circumstances, where "no other remedy would afford complete relief," *id.*, enjoining implementation of the procedures described in the Proposed Rule is appropriate.

Finally, contrary to Defendants' representation, Plaintiff's interest is not "slight." Defs. Stay Mot., ECF No. 184-1 at 21. Plaintiff litigated this case because "the changes the Postal Service implemented lead to significant and nationwide mail delays." Mem. Op., ECF No. 182 at 2. Plaintiff secured emergency relief from this Court that restored the prompt and reliable delivery and prioritization of mail-in ballots so that they would be delivered in time to be counted. Plaintiff then bargained for enforceable commitments extending through "every national election cycle through 2028." *Id.* at 3. As this Court's opinion recognizes, implementing the standards and practices of the Proposed Rule would violate these consequential commitments. *See id*. at 11.

**CONCLUSION**

For the foregoing reasons, those set forth in Plaintiff's Motion to Enforce, and this Court's

July 1 Memorandum Opinion, Defendants' motion for a stay should be denied.

Date: July 13, 2026                         Respectfully submitted,

|  |  |
|---|---|
| | /s/ Allison M. Zieve |
| Sam Spital (D.D.C. Bar No. SS4839) | Allison M. Zieve (DC Bar No. 424786) |
| John S. Cusick (admitted pro hac vice) | Wendy Liu (DC Bar No. 1600942) |
| Brittany Carter (admitted pro hac vice) | PUBLIC CITIZEN LITIGATION GROUP |
| NAACP LEGAL DEFENSE AND EDUCATIONAL | 1600 20th Street NW |
| FUND, INC. | Washington, DC 20009 |
| 40 Rector Street, 5th Floor | (202) 588-1000 |
| New York, NY 10006 | azieve@citizen.org |
| (212) 965-2200 | |
| sspital@naacpldf.org | |

Counsel for Plaintiff NAACP

16