## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

National Association for the Advancement of Colored People,

      *Plaintiff*,

  v.

United States Postal Service, *et al.*,

      *Defendants*.

Case No. 1:20-cv-02295-EGS

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY

# TABLE OF CONTENTS

INTRODUCTION..............................................................................................................................1

ARGUMENT....................................................................................................................................2

I. DEFENDANTS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR APPEAL....................2

    A. This Court lacks jurisdiction to enforce the Agreement by injunction. ..................2

    B. Only Paragraphs 2 and 4 of the Agreement are enforceable, neither of which are applicable to the relief the NAACP seeks............................................................4

    C. The NAACP's challenge to the Proposed Rule is unripe as the Proposed Rule has no legal effect and its impact on the future guidance documents is unclear.......................................................................................................................6

    D. The NAACP failed to properly invoke Paragraph 10 of the Agreement. ...............7

    E. The NAACP engaged in impermissible claim splitting.........................................7

    F. The Proposed Rule does not hamper the prioritization of monitoring and timely delivery of Election Mail. ...........................................................................8

II. DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY.. ..............................9

III. THE REMAINING STAY FACTORS TIP IN FAVOR OF DEFENDANTS. .................................10

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*DSCC v. Trump*,
   No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026) ...................................... 5

*FDIC v. Bank of Am., N.A.*,
   783 F. Supp. 3d 1 (D.D.C. 2025) ..................................................................................... 6

*Firefighters v. Cleveland*,
   478 U.S. 501 (1986) ........................................................................................................ 3

*Franklin-Mason v. Mabus*,
   742 F.3d 1051 (D.C. Cir. 2014) ................................................................................... 2, 4

*In re Bluewater Network*,
   234 F.3d 1305 (D.C. Cir. 2000) ...................................................................................... 6

*In re Murray Energy Corp.*,
   788 F.3d 330 (D.C. Cir. 2015) ........................................................................................ 6

*Kingdom v. Trump*,
   No. 26-5181, 2026 WL 1905418 (D.C. Cir. June 17, 2026) ........................................ 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ..................................................................................................... 2, 4

*Lackey v. Stinnie*,
   604 U.S. 192 (2025) ........................................................................................................ 3

*NAACP v. Trump*,
   No. 26-cv-1151 (D.D.C. Apr. 3, 2026) ....................................................................... 7, 8

*Rufo v. Inmates of Suffolk Cty. Jail*,
   502 U.S. 367 (1992) ........................................................................................................ 3

*System Fed'n No. 91, Ry. Emp. Dep't v. Wright*,
   364 U.S. 642 (1961) ........................................................................................................ 3

*United States v. Facebook*,
   136 F.4th 1129 (D.C. Cir. 2025) ..................................................................................... 3

*U.S. Indus., Inc. v. Blake Const. Co.*,
   765 F.2d 195 (D.C. Cir. 1985) ........................................................................................ 8

*Zerilli v. Evening News Association*,
   628 F.2d 217 (D.C. Cir. 1980)........................................................................................ 8

**CONSTITUTION**

U.S. Const. art. III, § 2 ................................................................................................... 6

**REGULATIONS**

*Ballot Mail for Federal Elections*,
   91 Fed. Reg. 32,915 (June 2, 2026) ..................................................................... *passim*

*Ensuring Citizenship Verification and Integrity in Federal Elections*,
   Exec. Order No. 14,399, 91 Fed. Reg. 17,125 (Mar. 31, 2026).................................... 8

## **INTRODUCTION**

The NAACP and Defendants entered into a settlement agreement in December 2021 ("Agreement") that, in relevant part, requires the United States Postal Service ("USPS" or "Postal Service") to undertake certain informational obligations, specifically: (1) to engage in outreach meetings with the NAACP and (2) to publicly disclose its policies regarding the delivery of election mail applicable to the 2026 general election no later than October 1, 2026. The Agreement did not (and cannot) give the NAACP the power to veto USPS proposed rules. This Court lacks jurisdiction to grant the NAACP such relief because there is no waiver of sovereign immunity that would allow for specific performance of the agreement to be awarded against the government. But even if this Court had jurisdiction to enforce the Agreement, the very terms of the Agreement limit the Court's jurisdiction to enforcement of Paragraphs 2 and 4 only, which impose only the aforesaid informational obligations on USPS, which USPS has not violated, and which in any case do not encompass USPS's Proposed Rule.

Defendants respectfully request that this Court stay its injunctive relief because Defendants are correct on the merits concerning the Court's lack of jurisdiction to issue injunctive relief in this contract dispute against a government entity and the Court's lack of jurisdiction to issue the injunction as outside the scope and enforcement provisions of the Agreement. Defendants will be irreparably harmed absent a stay, and the equities favor the government.

## ARGUMENT

**I.    DEFENDANTS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR APPEAL.**

### A.  This Court lacks jurisdiction to enforce the Agreement by injunction.

The NAACP's arguments in favor of this Court's jurisdiction proceed from premises already rejected by the D.C. Circuit and are irreconcilable with the settlement agreement itself.  Perhaps recognizing that no statute confers jurisdiction on this Court or waives the government's sovereign immunity as to claims for specific performance of a contract, the NAACP rests its jurisdictional argument solely on the claim that because "the terms of the settlement agreement had been made part of the order of dismissal" the Court has "ancillary jurisdiction to enforce the agreement." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); Pl. Opp'n Br. at 2.

The NAACP does not acknowledge nor address, however, the D.C. Circuit's explanation that "*Kokkonen* is easily distinguishable because, unlike here, no governmental entity was involved." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014).  And *Franklin-Mason* reached that conclusion even though the district court there had both "incorporate[d] the settlement agreement into the dismissal order" and "specifically include[d] a clause in the dismissal order retaining jurisdiction." *Id.*  Instead, *Franklin-Mason* makes clear that a district court cannot alter the jurisdictional regime Congress has established by invoking "ancillary jurisdiction" over an agreement: "neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction." *Id.*

The NAACP thus must identify some source of jurisdiction and waiver of sovereign immunity that allows specific performance here, but it has not attempted to do so.  Nor does the NAACP explain why Congress would authorize a dramatic departure from the background principles precluding specific performance as a remedy in actions against the government, or grapple

with the perverse consequences that would have: the NAACP never disputes that on its view, government agencies could contract away rulemaking discretion or other functions to the supervision and veto power of private parties.

The NAACP only underscores the lack of authority for its position by relying on cases involving judicial orders entering, as a judgment, an agreement between the parties that includes some sort of injunctive or other compulsive relief (commonly termed "consent decrees"). "A consent decree reflects the parties' own resolution of the merits, but it is approved and given force of law by the court." *See Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) (citing *Firefighters v. Cleveland*, 478 U.S. 501, 523 (1986)). A violation of a consent decree is enforceable through contempt. *Id.*; *see System Fed'n No. 91, Ry. Emp. Dep't v. Wright*, 364 U.S. 642, 647 (1961) (referring to consent decree as "injunctive decree"). A consent decree thus "conclusively resolves the claim, bears a judicial *imprimatur*, and may grant enduring relief that materially alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207 (emphasis in original); *see Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992) (explaining that consent decree is "enforceable as[] a judicial decree that is subject to the rules generally applicable to other judgments and decrees"). The NAACP does not suggest that the Agreement here was embodied in a judgment imposing any injunctive relief enforceable by contempt, and indeed the judgment here dismissed the case rather than entering any kind of compulsive relief (whether obtained through adjudication or a consent judgment). The NAACP's reliance on cases involving such consent judgments—such as *United States v. Facebook, Inc.*, 136 F.4th 1129, 1132, 1134 (D.C. Cir. 2025) (addressing "stipulated order" entered by district court, which was a "consent decree" and "directly imposed the injunctive relief" at issue)—is thus misplaced. And for the same reason, the NAACP errs in asserting that

- 3 -

recognizing the limitations applicable to settlements would render "*the federal government's non-monetary promises in a consent decree*" unenforceable.  Pl.'s Opp'n Br. at 3 (emphasis in original).

At bottom, the NAACP cannot simply rely on *Kokkonen*'s discussion of ancillary jurisdiction (distinguished by *Franklin-Mason* since this Agreement involves a governmental entity, USPS) to show both a source of jurisdiction and a waiver of sovereign immunity that allows the remedy of specific performance in a contract dispute with a government entity.  This Court thus lacks jurisdiction to grant the relief the NAACP requests and a stay of this Court's order is merited pending the outcome of Defendants' appeal.

**B.  Only Paragraphs 2 and 4 of the Agreement are enforceable, neither of which are applicable to the relief the NAACP seeks.**

Turning to the Agreement itself, the NAACP's motion to enforce fundamentally fails because, by its plain terms, the contract is judicially enforceable (if at all) only as to Paragraphs 2 and 4, and there is no basis to conclude USPS has violated either informational provision.

Paragraph 2 obligates USPS to publicly post practices and policies by a certain date in advance of a general federal election.  Agreement ¶ 2.  Paragraph 4 of the Agreement requires certain outreach meetings between the NAACP and USPS.  Agreement ¶ 4.  Similar to Paragraph 2's obligations, Paragraph 4's obligations are solely informational.

Taken together, these paragraphs of the Agreement require USPS to keep the NAACP informed as to its practices and policies.  But USPS expressly and repeatedly reserved its ability to control the *content* of the various practices and policies in question.  *See* Agreement ¶ 2 ("The Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted"); ¶ 6(b) ("The Stipulation will specify that nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the

treatment of Election Mail."). Thus, the plain terms of these paragraphs do not provide the NAACP with supervisory or veto power over USPS's practices and policies, including new proposed rules. If the NAACP is dissatisfied with USPS's practices (and has Article III standing to challenge them), its recourse is to file a suit seeking to enjoin their implementation or other appropriate relief. In fact, the NAACP did just that, and Judge Nichols denied their motion for a preliminary injunction. *See DSCC v. Trump*, No. 26-cv-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026). Only after losing in a separate suit, the NAACP sought to "enforce" this Agreement. But nothing in the text of Paragraphs 2 or 4, which impose only informational obligations, grants this Court jurisdiction to provide the NAACP with the relief it seeks here.

The NAACP retorts that "USPS cannot meet its obligation to disseminate documents reflecting practices for prioritizing the monitoring and timely delivery of ballots if it refuses to deliver ballots of its choosing based on newly invented criteria for Election Mail under the Proposed Rule." Pl.'s Opp'n Br. at 6. That argument is meritless. First, USPS can publicly disseminate its policy documents, in keeping with Paragraph 2 of the Agreement, regardless of their substantive content. Nothing in the text of Paragraph 2 requires that the NAACP be satisfied with USPS's policies, merely that they be informed. Second, the USPS Proposed Rule, even if implemented as a final rule without any modification, would not hamper the prioritization of monitoring and timely delivery of ballots. *See infra*, Section F. The scope of the Agreement in this case does not encompass acceptance of ballots in the first place, which occurs before prioritization and delivery of ballots. Most of USPS's reforms "are consistent with the Postal Service's existing recommended best practices." 91 Fed. Reg. 32,916. Use of the Election Mail Logo, for example, "is an important tool for mailpiece visibility" and ensuring that ballot mail is automation compatible would allow the efficient processing of ballot mail "without unexpected complications or delays in operations."

*Id.* Thus, these potential reforms, consistent with the Agreement, would likely enhance, not hamper, the *prioritized monitoring* and *timely delivery* of ballots.

### C. The NAACP's challenge to the Proposed Rule is unripe as the Proposed Rule has no legal effect and its impact on the future guidance documents is unclear.

The NAACP's challenge to the Proposed Rule is unripe. The Proposed Rule is currently without legal effect, may never become a final rule, or may result in a final rule in a form that materially differs from the Proposed Rule. *See In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (holding that courts "do not have authority to review proposed rules."); *In re Bluewater Network*, 234 F.3d 1305, 1313 (D.C. Cir. 2000) ("[A]n agency's pronouncement of its intent to defer or to engage in future rulemaking generally does not constitute final agency action reviewable by this court.") (citation omitted); *FDIC v. Bank of Am., N.A.*, 783 F. Supp. 3d 1, 24 (D.D.C. 2025) ("[P]roposed rules are not 'final agency actions' that this court has authority to review."). After all, "a proposed rule is just a proposal." *In re Murray Energy*, 788 F.3d at 334. Federal judicial intervention at this time would merely result in an advisory opinion as to whether the Proposed Rule is in keeping with the Agreement, in violation of Article III's requirement that federal courts resolve only "cases" and "controversies." U.S. Const. art. III, § 2.

Before the Proposed Rule has legal effect as a final rule, it is speculative to assume that it will impact USPS's future guidance documents in a way that violates Paragraphs 2 or 4 of the Agreement, especially since those paragraphs only require that USPS publish its policies and hold outreach meetings with the NAACP. The NAACP can point to nothing in the Proposed Rule that would undermine USPS's informational obligations in the Agreement, such as posting its guidance documents by the October 1, 2026 deadline. The NAACP retorts that the "Postal Service is proposing to abandon its commitment to prioritizing the monitoring and timely delivery of Election Mail." Pl.'s Opp'n Br. at 9-10. Not so. As explained, *infra*, Section F, nothing in the Proposed

Rule impacts the *prioritized monitoring* and *timely delivery* of ballots—if anything, implementation of a final rule would likely enhance USPS's ability to do so. The NAACP's issue is with the acceptance for delivery of ballots, an antecedent step not within the scope of the Agreement.

### D. The NAACP failed to properly invoke Paragraph 10 of the Agreement.

Prior to filing a motion to enforce the Agreement, Paragraph 10 of the Agreement requires the NAACP to "specify in writing to the Postal Service the alleged violation together with all evidence supporting such alleged violation and will provide the Postal Service at least 5 days' notice to investigate the allegations and, if appropriate, to cure the violation." Agreement ¶ 10. The NAACP failed to do so. The required five days did not pass between the publication of the Proposed Rule in the Federal Register on June 2, 2026, and the NAACP's motion, ECF No. 171, which was filed on June 3, 2026. Therefore, the NAACP did not provide the Postal Service "at least 5 days' notice" as required in Agreement ¶ 10 in order to bring a motion to enforce.

The NAACP responds that in its April communications to counsel for USPS, Defendants were "expressly informed" that "*the rulemaking* directed by the [Executive Order] would cause the Postal Service to violate the Agreement." Pl.'s Opp'n Br. at 10 (emphasis in original). But such a passing reference to rulemaking in April, well before publication of the Proposed Rule on June 2, can hardly satisfy Paragraph 10's requirement that the NAACP specify "all evidence supporting such alleged violation," when the NAACP's communication did not (and could not) even cite the published Proposed Rule.

### E. The NAACP is engaged in impermissible claim splitting.

The NAACP already sought (and failed to obtain) relief in parallel litigation directly challenging USPS's Proposed Rule. *See NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), ECF No. 1. To the extent that the NAACP can invoke the Agreement to pursue its desired relief

in a district court, the NAACP should have done so (if at all) as part of the ongoing *NAACP v. Trump* litigation before Judge Nichols, not through this litigation.

In *Zerilli v. Evening News Association*, the D.C. Circuit affirmed the district court's dismissal of a *Bivens* claim brought by a plaintiff, "on the ground that 'the count is precisely the same as a count pending in a related case.'"  628 F.2d 217, 222 (D.C. Cir. 1980) (citation omitted). *Zerilli* held that "a plaintiff has 'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'"  *Id.* (citation omitted).

The NAACP's motion to enforce in this litigation and its complaint in the parallel litigation involve the same plaintiff (the NAACP), at the same time (both pending concurrently), in the same court (the United States District Court for the District of Columbia), and against the same defendant (USPS).  The NAACP argues that the subject matter of its motion to enforce before this Court and its suit in the parallel litigation are not the same, however, because this case concerns USPS's Proposed Rule while the parallel litigation concerns Executive Order 14,399.  *See* Pl.'s Opp'n Br. at 10-11.  But this parsing ignores the fundamental reality that both actions overlap in seeking to enjoin USPS's Proposed Rule, whether by challenging Section 3 of Executive Order 14,399 or by seeking to enforce the Agreement in this litigation.  This Court should not reward the NAACP's attempts to "Balkanize the cases into separate and distinct causes of action." *Cf. U.S. Indus., Inc. v. Blake Const. Co.*, 765 F.2d 195, 206 (D.C. Cir. 1985).

### F.  The Proposed Rule does not hamper the prioritization of monitoring and timely delivery of Election Mail.

Finally, although the Court should not need to reach this question for the reasons above, the Proposed Rule's provisions requiring the use of the official Election Mail logo would likely enhance rather than hamper visibility of Election Mail.  *See* 91 Fed. Reg. at 32,917-18.  And the

Proposed Rule's provisions regarding barcodes on envelopes containing outgoing and return ballots for Federal elections would facilitate tracking of individual mailpieces as barcodes are scanned on the Postal Service's mail processing equipment. *Id.* at 32,916.

Fundamentally, whatever the NAACP's concerns with the Proposed Rule, none of its provisions affect the *prioritized monitoring* and *timely delivery* of Election Mail. The NAACP concedes as much when it states: "Plaintiff's motion did not concern measures to track service delivery generally." Pl.'s Opp'n Br. at 11. The NAACP's concern, shared by this Court, is that the Proposed Rule, assuming it is implemented as a final rule without modification, would ultimately result in USPS "not deliver[ing] mail-in or absentee ballots to some voters." *Id.* Even if that happens, however, that is not an issue of prioritized monitoring or timely delivery of Election Mail within the scope of the Agreement. The course of action to address any such perceived harm is not a motion seeking to enforce this Agreement well beyond the scope of its enforceable paragraphs, but rather a suit challenging any such final rule by a party or parties with Article III standing.

## II.    DEFENDANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

Without a stay, even if Defendants ultimately prevail in dissolving or limiting this Court's injunction on appeal, valuable and irreplaceable time will have been lost. For instance, "the Postal Service intends to provide further technical instructions regarding barcode creation, service type identifiers, acceptance processes, file preparation, documentation submission, and entry of data into the proposed portal." 91 Fed. Reg. at 32,917. The Postal Service would also need time to deploy its new Portal that would allow election officials to provide their lists to the Postal Service of voters who are mailed ballots for Federal elections, and to train its employees and coordinate with election officials to ensure that the Portal is usable. *See id.* at 32,916 ("States would provide the Postal Service with this information via the Federal Ballot Mail Portal."). Absent a stay, even if USPS is successful in dissolving the injunction on appeal, it may be too late to issue a final rule

and have enough time subsequently for USPS to issue new technical instructions and guidance to states for the smooth implementation of any final rule in time for the November 2026 general election. In any event, as the D.C. Circuit recently reiterated, the United States is always "irreparably harmed by an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418, at *2 (D.C. Cir. June 17, 2026) (per curiam) (citations omitted).

### III. THE REMAINING STAY FACTORS TIP IN FAVOR OF DEFENDANTS.

The remaining stay factors—the balance of equities and the public interest—also favor a stay. The public interest is harmed by this Court interfering with an ongoing rulemaking rather than allowing agency policymaking to be finalized in a final rule prior to adjudication. Respectfully, even assuming that this Court has jurisdiction to hear this contract dispute against a government entity, it has no jurisdiction to order specific performance, nor does the Court have jurisdiction to ignore the carefully negotiated bounds of the Agreement, which is limited only to enforcing Defendants' informational duties under Paragraphs 2 and 4. The public interest strongly favors the sound judicial interpretation of contractual terms in settlement agreements, as to do otherwise would both undermine the viability of alternative dispute resolution methods and upset parties' bargained-for expectations. The need to proceed through long and potentially costly litigation, rather than resolve disputes through settlement agreements that are carefully enforced according to their terms would deplete finite judicial resources, which is contrary to the public interest.

These harms are even more acute in this case, where a settlement agreement of limited scope between one private party (the NAACP) and the Postal Service would bind the implementation of a Proposed Rule with nationwide effects. The rulemaking process allows any person, including the NAACP's members, to submit comments which the Postal Service must consider

and reply to in formulating its ultimate policy in a final rule.  Interfering with that process on the

basis of an Agreement that never mentions let alone contemplates a veto by a private party over

the public policy of the Postal Service harms the public interest.

On the other side of the balance, the NAACP's interest is slight.  At least at this time, the

NAACP merely seeks to prevent hypothesized harm based on their erroneous interpretation of the

Agreement.  The NAACP has already sued (and lost a preliminary injunction motion) in another

court in this District for similar relief.  The balance of equities tips against the NAACP's efforts

to harness the Agreement to obtain relief that has already been rejected by a court of competent

jurisdiction.

## CONCLUSION

Respectfully and for the foregoing reasons, this Court should grant a stay of its Order (ECF

No. 181) pending appeal.

- 11 -

Dated: July 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

JOSEPH E. BORSON
*Assistant Branch Director*

/s/ *Esam K. Al-Shareffi*
STEPHEN M. PEZZI
D.C. Bar. No. 995500
 *Chief Litigation Counsel*
ESAM K. AL-SHAREFFI
D.C. Bar No. 90010174
 *Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 598-7367
E-mail: esam.k.al-shareffi@usdoj.gov

*Counsel for Defendants*

- 12 -